Jeffrey S. Sabin
Rishi Kapoor
VENABLE LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 307-5500
Facsimile:    (212) 307-5598

Andrew J. Currie (to be admitted *pro hac vice*)
VENABLE LLP
575 7th Street, NW
Washington, DC 20004
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re:                                                     :     Chapter 11
                                                           :
ADVANCE WATCH COMPANY LTD., <u>et al.</u>                  :     Case No. 15-12690 (___)
                                                           :
            Debtors.[1]                                    :     (Joint Administration Requested)
                                                           :
------------------------------------------------------------ x

### DEBTORS' MOTION FOR (I) AUTHORITY TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (II) RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file this motion (the "**Motion**") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "**Interim Order**" and "**Final Order**", respectively, and collectively, the "**Orders**"), granting Debtors authority to maintain existing cash management systems, bank accounts, and forms, granting related relief, and in support, state as follows:

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972), and GWG International, Ltd. (2468).

## Jurisdiction

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are §§ 105(a), 363(b), 363(c), and 364(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 6003 and 6004 and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

## Background[2]

3.       On September 30, 2015 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Relief Requested

4.       The Debtors respectfully request entry of the Interim Order, (a) authorizing them to (i) continue to operate their existing cash management system (the "**Cash Management System**"), as described herein, including the maintenance of existing bank accounts (the "**Bank Accounts**") at the banks at which they are currently maintained (the "**Banks**") consistent with their

---

[2]       A detailed description of the Debtors' businesses and the reasons for the filing of these chapter 11 cases and for the relief sought in this Motion are set forth in the Declaration of Jeffrey L. Gregg, Chief Restructuring Officer of the Debtors (I) in Support of Debtors' Chapter 11 Petitions and First-Day Filings and (II) Pursuant to Local Bankruptcy Rule 1007-2 (the "**First-Day Declaration**"), being filed contemporaneously with this Motion.

prepetition practices, and (ii) maintain existing business forms, (ii) scheduling a final hearing to consider entry of the Final Order, and (iii) granting related relief.

<u>**The Debtors' Cash Management System**</u>

**A.    Overview of the Debtors' Current Cash Management System**

5.     The Debtors utilize an integrated, centralized Cash Management System in the ordinary course of business to collect, manage, disburse, and invest funds used in their operations. A chart depicting the Debtors' existing Cash Management System is annexed hereto as <u>**Exhibit C**</u>.

6.     As discussed in greater detail below, the Debtors maintain a master operating account (the "**Operating Account**") with Wells Fargo Bank, N.A. ("**Wells Fargo**").   The Operating Account is owned and maintained directly by debtor Advance Watch Company Ltd. ("**Advance Watch**") and was formerly funded from funds received through Advance Watch's depository account (the "**Lockbox Account**") with Wells Fargo.   The Operating Account holds funds for disbursement to (i) a controlled disbursement account (the "**Checking Account**"), (ii) a payroll and benefits account (the "**Payroll and Benefits Account**"), and (iii) a separate controlled disbursement account (the "**Professional Fee Carve Out Account**").   All bank fees incurred from the various Bank Accounts are billed to the Operating Account.

**B.    The Bank Accounts**

7.     In connection with the Cash Management System, the Debtors maintain five Bank Accounts: the Operating Account, the Lockbox Account, the Checking Account, the Payroll and Benefits Account, and the Professional Fee Carve Out Account.   Advance Watch owns and maintains these Cash Management System accounts, and funds are routinely transferred between and among four of the five Bank Accounts in the ordinary course of business.   The Debtors do not own or maintain any other bank accounts.

3

8.      As of the Petition Date the Debtors maintained the following Bank Accounts:

a.      **Lockbox Account**: The Debtors maintain a depository account, a/k/a the Lockbox Account, with Wells Fargo ending in -8884. The Lockbox Account receives all check deposits on behalf of the Debtors. Funds deposited in the Lockbox Account are received from or due to payments from retailers and customers. Funds held in the Lockbox Account were formerly swept into the Operating Account by daily automated transfer. The Lockbox Account balance was approximately $25,756.71 as of the Petition Date.

The Lockbox Account is subject to a Deposit Account Control Agreement between the Debtors and Wells Fargo (the "**Lockbox Account Agreement**"). Pursuant to the Lockbox Account Agreement, Wells Fargo holds a security interest in the funds transferred into the Lockbox Account. The Lockbox Account Agreement grants Wells Fargo the primary authority to control disposition of the funds held in the Bank Accounts and restricts the Debtors' access to the Bank Accounts. Currently, under the terms of the Lockbox Account Agreement, Wells Fargo sweeps all cash receipts deposited into the Lockbox Account on a daily basis.[3]

b.      **Operating Account**: The Debtors maintain an Operating Account with Wells Fargo ending in -8892. The Operating Account is the Debtors' primary concentration account from which the Debtors disburse funds necessary for operations. The Operating Account funds the monthly service fees of approximately $7,000 per month for the three other Bank Accounts (other than the Professional Fee Carve Out Account). The Operating Account is funded by the Debtors' Wells Fargo credit facility. Typically, the Debtors make weekly disbursement requests from the Wells Fargo credit facility. Funds are disbursed into the Operating Account according to a complex formula. Funds are disbursed to the Payroll and Benefits Account and Checking Account from the Operating Account. The Operating Account balance was approximately $346,176.94 as of the Petition Date.

The Operating Account is subject to a Deposit Account Control Agreement between the Debtors and Wells Fargo (the "**Operating Account Agreement**"). Pursuant to the Operating Account Agreement, Wells Fargo holds a security interest in the funds transferred into the Operating Account. The Operating Account Agreement grants Wells Fargo the primary authority to control disposition of the funds held in the Bank Accounts including the ability to restrict the Debtors' access to the Bank Accounts.

---

[3]    The cash sweeps occur on a daily basis in the morning. Accordingly, at the close of each day, the Lockbox Account holds a balance; however, such funds are not available to the Debtors under the Lockbox Account Agreement. As described herein, the balance of the Lockbox Account is used to reduce the amount owing under the Wells Fargo credit facility.

9923012

c.  **Payroll and Benefits Account**:  The Debtors maintain a Payroll and Benefits Account with Wells Fargo ending in -8900.  The Payroll and Benefits Account is the Debtors' primary disbursement account for the payment of employee wages, salaries, and other compensation owed to employees.  Employees are generally paid bi-weekly on Wednesdays, four days in arrears (i.e., payments distributed on Wednesday, September 23, 2015, were for wages earned between Sunday, September 6, 2015, through Saturday, September 19, 2015).  Prior to the applicable payday, the Debtors transfer to Automatic Data Processing, Inc. ("**ADP**") the amounts necessary to satisfy their wages, payroll taxes, and garnishment obligations from the Payroll and Benefits Account.  ADP then processes direct deposit transfers for the wages to each employee into the respective employee's bank account or issues an actual paycheck (a "**Paycheck**") if an employee has not elected for direct deposit.  The Payroll and Benefits Account had a negative balance of approximately ($126.50) as of the Petition Date.

d.  **Checking Account**:  The Debtors maintain a Checking Account with Wells Fargo ending in -2738.  The Checking Account is the Debtors' primary disbursement account used for the payment of expenses not related to payroll and benefits.  The Debtors typically utilize the Checking Account for the issuance of checks to suppliers.  Such check disbursements occur on a weekly basis.  The Checking Account had a balance of approximately $0.00 as of the Petition Date.

e.  **Professional Fee Carve Out Account**:  The Debtors maintain a checking account with Wells Fargo ending in -0114.  The checking account is the Debtors' disbursement account for the payment of professional fees at the conclusion of the bankruptcy proceedings and is not related to general operating expenses and payroll and benefits.  The Professional Fee Carve Out Account balance was approximately $0.00 as of the Petition Date.  The Professional Fee Carve Out Account will disburse funds at the conclusion of the bankruptcy proceedings.

## Basis for Relief

A.  **The Court Should Grant Debtors' Request to Continue Use of the Cash Management System and the Bank Accounts in the Ordinary Course**

9.  The Bankruptcy Code grants the Court broad authority to approve the continued use of the Cash Management System and the Bank Accounts.  Pursuant to 11 U.S.C. § 363(c)(1), a debtor in possession "may use property of the estate in the ordinary course of business without notice or a hearing."  The purpose of § 363(c)(1) of the Bankruptcy Code is to provide a debtor in

9923012

possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. Med. Malpractice Ins. Ass'n v. Hirsh (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997); In re Enron Corp., No. 01-16034 (AJG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003). Courts acknowledge that § 363(c)(1) of the Bankruptcy Code provides for a debtor's "routine transactions" necessitated by a debtor's cash management system. Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996). Additionally, a bankruptcy court may grant authority to use estate property other than in the ordinary course of business under §§ 363(b) and 105(a). See 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate."). Section 105(a) also empowers a bankruptcy court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

10.    An integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." Matter of Colombia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part, rev'd in part sub nom.; Official Comm. of Unsecured Creditors of Colombia Gas Sys., Inc. (Matter of Colombia Gas Sys., Inc.), Nos. 91-803, 91-804, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), aff'd in part, rev'd in part, 997 F.2d 1039 (3d Cir. 1993). Segregating and maintaining numerous accounts "would be a huge administrative burden and economically inefficient." Colombia Gas, 997 F.2d at 1061; see also Southmark Corp. v. Grosz (Matter of Southmark Corp.), 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows a debtor to "administer more efficiently and effectively its financial operations and assets.").

11.     Accordingly, bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a "simple matter."  See Matter of Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In In re Charter Co., 778 F.2d 617 (11th Cir. 1985), the bankruptcy court granted the debtor and its 43 subsidiaries authority "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, *including operating entities that are not debtors*."  Id. at 620 (emphasis added).   The Eleventh Circuit Court of Appeals also affirmed the district court's decision to deny a motion for leave to appeal the cash management order, because authorization to use a prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code.  Id. at 621.

1.     The Debtors' Continued Use of the Cash Management System and the
Bank Accounts in the Ordinary Course of Business Is Critical to Preserve
Debtors' Operations and Going-Concern Value

12.     The Debtors have utilized the Cash Management System as a part of their ordinary and usual business practices.  The Debtors believe their continued use of the Cash Management System is an ordinary course transaction permitted under § 363(c)(1).  Moreover, appropriate circumstances exist to authorize the Debtors' continued use of the Cash Management system under §§ 363(b)(1) and 105(a).

13.     The Debtors' continued use of the Cash Management System will minimize disruptions to the Debtors' business operations and will preserve estate value.   The Cash Management System provides significant benefits to the Debtors, including the ability to control and centrally manage corporate funds, ensure the availability of funds when necessary, reduce administrative costs by facilitating the movement of funds, and develop more timely and accurate balance and presentment information.

9923012

    2.    <u>The Court Should Waive Compliance with any United States Trustee
Guideline or Operating Requirement that Would Interfere with the
Continued Use of the Cash Management System or the Bank Accounts</u>

14.    The Office of the United States Trustee for Region 2 (the "**United States Trustee**") has established "Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees" (the "**Guidelines**").  The Guidelines are promulgated through the authority vested in the United States Trustee pursuant to 28 U.S.C. § 586(a)(3).  The Guidelines instruct that "[a]ll pre-petition bank accounts controlled by the debtor must be closed immediately upon the filing of the [bankruptcy] petition, and the debtor shall immediately open new debtor-in possession operating, payroll, and tax accounts at a United States Trustee Authorized Depository."  The Guidelines also limit Debtor's ability to conduct transactions in the ordinary course of business by debit, wire, automated clearing house ("**ACH**") transfers, ACH credit, ACH debit, and other similar methods of electronic transfers.  <u>See</u> <u>id.</u> ("Disbursements other than by numbered check are prohibited.").  Additionally, "[r]equests to use, create or maintain petty cash accounts must be submitted to the United States Trustee in writing."  <u>Id.</u>

15.    Strict adherence to the Guidelines regarding the creation of postpetition bank accounts, payment limitations, and limits on the use of petty cash would significantly impair the Debtors' reorganization efforts.  The United States Trustee's Guidelines require the Debtors (i) to close all existing bank accounts and open new debtor-in-possession accounts, (ii) to maintain a separate debtor-in-possession account for cash collateral, and (iii) create new systems for manually issuing checks and paying postpetition obligations.  The maintenance of separate, segregated bank accounts will decentralize the Cash Management System.  The Debtors will require significant time and resources to modify the Cash Management System to one consistent with the United States Trustee's Guidelines, particularly in light of the Debtors' complex corporate and financial

9923012

structure.  The Debtors' business operations will be significantly impaired during this critical time

if the Debtors are required to open new accounts, revise cash management procedures, and instruct

customers to redirect payments.  Accordingly, the Court should authorize the Debtor to continue

utilizing the Cash Management System consistent with its historical practices notwithstanding the

Guidelines.

        3.     <u>The Court Should Expressly Authorize the Banks to Continue to
Administer the Bank Accounts Postpetition</u>

    16.    The Debtors request that the Court authorize all Banks at which the Bank Accounts

are maintained to continue to administer the Bank Accounts as they were maintained before the

Petition Date.  An order expressly granting the Banks authority to continue administering the Bank

Accounts without interruption and in the ordinary course of business will ensure that all

postpetition checks, drafts, or wires issued from the Bank Accounts will not be delayed or

otherwise negatively impact the Debtors' postpetition operations.  Additionally, in the interest of

clarity, the Debtors respectfully request that the Court (i) prohibit the Banks from clearing checks

issued or dated prior to the Petition Date absent prior order of the Court, (ii) authorize and direct

the Banks to clear all checks, drafts, wires, and ACH transfers issued on the Bank Accounts for

payment of any claims arising on or after the Petition Date so long as sufficient funds exist in the

Bank Accounts, (iii) authorize the Banks to rely, in good faith, on the Debtors' representations

regarding which checks should be honored or dishonored, and (iv) waive any liability on part of

the Banks regarding the honoring of such checks absent gross negligence or bad faith.  As soon as

practicable, the Debtors will provide written direction to the Banks identifying which checks

9923012

should and should not be honored and informing the Banks that they should continue to administer the Bank Accounts postpetition.

>    4.    The Court Should Authorize Debtors to Pay Ordinary Course, Prepetition Bank Service Fees

17.    The Debtors do not believe that any Bank asserts a prepetition claim against the Debtors subject to a right of setoff.  If any Bank establishes that it holds a valid, prepetition claim against the Debtors subject to a right of setoff, funds held in a Bank Account with such Bank may constitute cash collateral under § 363(c)(2).  The Debtors seek authority to pay any ordinary course prepetition service fee normally deducted from the Bank Accounts pursuant to §§ 105(a) and 363(b) and Bankruptcy Rules 6003 and 6004.  Such payment of a prepetition fee should not alter the rights of unsecured creditors if such fee is subject to a right of setoff.  Additionally, the Debtors propose adequate protection to any Bank with an allowed prepetition claim against the Debtors not arising from the operation of a Bank Account in the form of a first-priority postpetition replacement lien on the applicable Bank Account if the Bank continues to honor checks and drafts on the Bank Account postpetition.  The Debtors request the foregoing to prevent any disruption to the Cash Management System and to maintain the Debtors' ordinary course operations in the best interest of the Debtors and all other interested parties.

>    5.    The Court Should Grant Administrative Expense Priority to Postpetition Intercompany Claims to Protect the Debtors' Claims

18.    The Debtors' funds are commingled in the Cash Management System, and each Debtor's rights with respect to funds placed into the Cash Management System is documented in the ordinary course of business by intercompany book entries reflecting intercompany claims, dividends, and investments among the participants in the Cash Management System (the "**Intercompany Transactions**").  The Debtors do not believe that they currently engage in

10

Intercompany Transactions. The Debtors track all fund transfers electronically in their accounting system and have the ability to ascertain, trace, and account for all Intercompany Transactions to the extent any exist. If an Intercompany Transaction necessary for use of the Cash Management System is discontinued, the system and related administrative controls would be disrupted to the Debtors' detriment. Furthermore, maintenance of the *status quo* in ordinary course Cash Management System operations will facilitate the Debtors' reorganization efforts. Accordingly, out of an abundance of caution, the Debtors request an order authorizing, but not directing, the Debtors[4] to continue to engage in the Intercompany Transactions in the ordinary course.

### B. The Court Should Grant the Debtors' Request to Continue Using Existing Business Forms and Checks

19. The Court should waive the requirements that the Debtors make additional, unnecessarily burdensome modifications to the documents with which Debtors conduct ordinary course business operations. The Debtors utilize a multitude of check types, including electronic checks (the "**Checks**"). Additionally, the Debtors use a variety of correspondence and business forms, including, but not limited to, purchase orders, and other business forms (collectively, the "**Business Forms**"). The Guidelines require Debtors to modify the Checks and Business Forms such that "[t]he checks for each [postpetition] account must bear the case name, case number, the words "Debtor-In Possession", and the type of account (operating, payroll or tax) imprinted on the face of each check . . . ." To minimize the expense to the Debtors' estates associated with developing or purchasing entirely new Checks and Business Forms, the delay in conducting business prior to obtaining such forms, and the associated confusion of supplier and other vendors, the Debtors seek authority to continue to use their Checks and Business Forms as such forms

---

[4]    The Debtors' request authority to continue Intercompany Transactions only between the Debtors. The Debtors do not seek authority to engage in Intercompany Transactions with other non-Debtor affiliates, including, but not limited to Advance Watch Company (Far East) Limited and its subsidiaries.

11

existed immediately prior to the Petition Date, without reference therein to the Debtors' status as debtors in possession.  The Debtors will use their reasonable best efforts to mark "debtor in possession" on newly purchased Checks and Business Forms as soon as reasonably practicable following the Petition Date.

20.    The Debtors have prepared communications materials to distribute to the various parties with whom they conduct business, which will, among other things, inform such parties of the commencement of these chapter 11 cases.  The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as debtors in possession.

**C.    The Court Should Grant the Relief Requested in the Motion on an Interim Basis**

21.    The Debtors seek the relief requested in the Motion substantially in the form as set forth in the Interim Order attached hereto as **Exhibit A**.  The proposed relief provides for interim approval of the Motion.  The Debtors will serve a copy of the Orders and this Motion on the Notice Parties, defined below, and the Banks.

**D.    The Court Should Waive Bankruptcy Rule 6003**

22.    Pursuant to Bankruptcy Rule 6003, a Bankruptcy Court may approve a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date if such "relief is necessary to avoid immediate or irreparable harm."  Fed. R. Bank. P. 6003(b).  As set forth above, Debtors' ability to operate the Cash Management System, and Bank Accounts, and use Checks, and Business Forms without disruption is critical for Debtors' operations to continue in bankruptcy.  Any disruption to the continuation of Debtors' existing practices would severely hamper and unnecessarily complicate Debtors' operations and cause a severe diminution in the value of the Debtors' estates.  Accordingly, the Debtors respectfully

12

9923012

submit that the relief requested is necessary to avoid immediate and irreparable harm, and request a waiver of the limitations set forth in Bankruptcy Rule 6003.

### E.    The Court Should Waive Bankruptcy Rules 6004(a) and (h)

23.    To avoid irreparable harm, the Debtors seek immediate implementation of the relief requested in the Motion.  As such, the Debtors seek a waiver of the notice requirements set forth in Bankruptcy Rule 6004(a).  Additionally, and to the extent applicable, the Debtors seek a waiver of the fourteen-day stay of any order authorizing the use, sale, or lease of property set forth in Bankruptcy Rule 6004(h).

### Reservation of Rights

24.    Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### No Previous Request

25.    No prior motion for the relief requested herein has been made by the Debtors to this or any other court.

### Notice

26.    The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York (United States Trustee's Office Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014); (b)

13

the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims, filed pursuant to Bankruptcy Rule 1007(d); (c) the administrative agent under the Debtors' first lien credit facility (Wells Fargo Bank National Association, 100 Park Avenue, 14th Floor, New York, New York 10017, Attn: Portfolio Manager - Advance Watch, with a copy to Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, Esq.); (d) Binda Italia Srl, Via Montefeltro, 4, 20156 Milano, Attention: Simone Binda, CEO, sbinda@bindagroup.com; (e) the Internal Revenue Service (Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, Pennsylvania 19101-7346); (f) the United States Securities and Exchange Commission (U.S. Securities and Exchange Commission, New York Regional Office, Brookfield Place, 200 Vesey Street, Suite 400, New York, New York 10281-1022); and (g) all parties who have requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  In light of the nature of the relief requested, the Debtors respectfully submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request entry of an interim order and a final order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) granting the relief requested herein and (ii) granting such other relief as is just and proper.

*[The remainder of the page is intentionally blank.]*

9923012

Dated:  New York, New York
           September 30, 2015

                                    Respectfully submitted,


                                    /s/ Jeffrey S. Sabin
                                    Jeffrey S. Sabin
                                    Rishi Kapoor
                                    Venable LLP
                                    1270 Avenue of the Americas
                                    New York, New York 10020
                                    Telephone:    (212) 307-5500
                                    Facsimile:    (212) 307-5598

                                    and

                                    Andrew J. Currie (to be admitted *pro hac vice*)
                                    Venable LLP
                                    575 7th Street, NW
                                    Washington, DC 20004
                                    Telephone:    (202) 344-4000
                                    Facsimile:    (202) 344-8300

                                    *Proposed Counsel to the Debtors*
                                    *and Debtors in Possession*

9923012

# EXHIBIT A

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                                           :
In re:                                                     :        Chapter 11
                                                           :
ADVANCE WATCH COMPANY LTD., et al.,                        :        Case No. 15-12690 (___)
                                                           :
            Debtors.[1]                                    :        (Joint Administration Requested)
                                                           :
---------------------------------------------------------- x

## INTERIM ORDER APPROVING DEBTORS' MOTION FOR (I) AUTHORITY TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (II) RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to §§ 105(a), 363(b), 363(c), and 364(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for entry of an order (1) authorizing them to (a) continue to operate their existing cash management system, as described herein, including the maintenance of existing bank accounts at the banks at which they are currently maintained consistent with their prepetition practices, (b) maintain existing business forms, (2) scheduling a final hearing to consider entry of an order approving the relief requested on a final basis, and (3) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012; and consideration of the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972), and GWG International, Ltd. (2468).

[2] Terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion and the supporting First-Day Declaration, having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**") and having considered the entire record before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and it is further

ORDERED that the Debtors are authorized and empowered, pursuant to §§ 363(c) and 105(a) of the Bankruptcy Code, to continue to operate their existing cash management system (the "**Cash Management System**"), including the maintenance of existing bank accounts (the "**Bank Accounts**") at the banks at which they are currently maintained (the "**Banks**") consistent with their prepetition practices; to collect, concentrate, and disburse cash in accordance with the Cash Management System, and to make ordinary course changes to their Cash Management System without further order of this Court; and it is further

ORDERED that, the Debtors are authorized to continue operating their existing Cash Management System in the ordinary course of business, consistent with the Debtors' prepetition

9923012

practices, including engaging in ordinary course Intercompany Transactions, notwithstanding any requirement to the contrary set forth in the United States Trustee's "Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees" (the "**Guidelines**"); and it is further

ORDERED that, pursuant to § 105(a) of the Bankruptcy Code, and as set forth in further detail below, each of the Banks is (1) prohibited from clearing checks issued or dated prior to the Petition Date absent prior order of the Court, (2) authorized and directed to clear all checks, drafts, wires, and automated clearing house ("**ACH**") transfers issued on the Bank Accounts for payment of any claims arising on or after the Petition Date so long as sufficient funds exist in the Bank Accounts, (3) authorized to rely, in good faith, on the Debtors' representations regarding which checks should be honored or dishonored, and (4) not liable regarding the honoring of such checks absent gross negligence or bad faith; and it is further

ORDERED that the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date; and it is further

ORDERED that the Debtors are authorized to: (1) designate, maintain, and continue to use any or all of their existing Bank Accounts listed on **Exhibit 1** attached hereto (which Exhibit 1 shall be promptly amended to identify any Bank Accounts inadvertently omitted therefrom, with any such amendments being served on the United States Trustee and any statutory committee of creditors), in the names and with the account numbers existing immediately prior to the Petition Date, (2) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, debit, wire transfer, ACH transfers, ACH credit, ACH debit, and other

3

9923012

similar methods of electronic transfers, (3) pay any bank fees associated with the Bank Accounts including, without limitation, any service fee incurred but not paid prior to the Petition Date, and (4) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; and it is further

ORDERED that the Debtors are authorized to open new bank accounts so long as any such new account is (1) with a bank that is (a) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (b) designated as an "Authorized Depository" pursuant to the Guidelines, and (2) the Debtors provide notice to the United States Trustee of the opening of such account; provided that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed on Exhibit 1 hereof; and it is further

ORDERED that, notwithstanding anything to the contrary contained herein or otherwise, each Bank of the Debtors is authorized to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of the commencement of these chapter 11 cases; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the commencement of these chapter 11 cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to filing of the commencement of these chapter 11 cases; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed

4

to any Bank as service charges for the maintenance of the Cash Management System; and it is further

ORDERED that Banks are authorized to charge, and the Debtors are authorized and directed to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks may be entitled in the ordinary course under the terms of and in accordance with their contractual arrangements with the Debtors (including, without limitation, any fees, costs, charges, and expenses arising from any "stop payment"). The Debtors shall promptly reimburse the Banks for any claims, whether arising (1) under their contractual arrangement and account documentation with the Debtors or otherwise or (2) prior to or after the Petition Date, in connection with any returned items to the Bank Accounts in the normal course of business. Such claims by the Banks shall be jointly and severally allowed as administrative priority claims against each of the Debtors without the need to file any proof of claim pursuant to § 364(c)(1) of the Bankruptcy Code. Further the Banks are authorized to charge back to the Debtors' Bank Accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and the Debtors are authorized and directed to promptly pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items; and it is further

ORDERED that, notwithstanding anything to the contrary contained herein or otherwise, any of the Debtor's Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by a Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein; and it is further

5

ORDERED that nothing contained herein shall prevent the Debtors from closing any Bank Account as they may deem necessary and appropriate, to the extent consistent with the terms of any postpetition financing agreement and any order of this Court relating thereto, any relevant Bank is authorized to honor the Debtors' requests to close such Bank Account, and the Debtors shall give notice of the closure of any Bank Account to the United States Trustee and any statutory committee of creditors; and it is further

ORDERED that all intercompany claims against a Debtor by another Debtor arising after the Petition Date as a result of intercompany claims, dividends, and investments among the participants in the Cash Management System (the "**Intercompany Claims**") shall be accorded administrative expense priority in accordance with §§ 503(b) and 507(a)(2) of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized to use their existing check types, including electronic checks (the "**Checks**") and correspondence and business forms, including, but not limited to, purchase orders, checks, and other business forms (collectively, the "**Business Forms**") and not print "debtor in possession" on any such Check or Business Form; provided that the Debtors shall print "debtors in possession" on any new Checks or new Business Forms ordered during the chapter 11 cases, and, as soon as reasonably practicable, the Debtors shall change their system for electronic generation of Checks and Business Forms to reflect their status as debtors in possession; and it is further

ORDERED that the Debtors are hereby authorized to execute any additional documents and reasonably cooperate with the financial institutions as may be required to carry out the intent and purpose of this Interim Order; and it is further

9923012

ORDERED that the Debtors shall serve this Interim Order within three (3) business days of its entry on the Notice Parties (as defined in the Motion) and the Banks; and it is further

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the Final Hearing; and it is further

ORDERED that nothing contained in this Interim Order or in the Motion is intended to or shall be construed as (1) an admission as to the validity of any claim against the Debtors, (2) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (3) an approval or assumption of any agreement, contract, program, policy, or lease under § 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Interim Order is not intended and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) are satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry, and it is further

ORDERED that the final hearing (the "**Final Hearing**") on the Motion shall be held on **October ___, 2015, at __:__ _.m., prevailing Eastern Time**.  Any objections or responses to

7

entry of a final order on the Motion shall be filed on or before **4:00 p.m., prevailing Eastern Time, on October ___, 2015**, and shall be served on: (a) proposed counsel to the Debtors (Andrew J. Currie, Venable LLP, 575 7th Street, NW, Washington, DC 20004, jssabin@venable.com, rdavids@venable.com, rkapoor@venable.com, ajcurrie@venable.com); (b) the Office of the United States Trustee for the Southern District of New York (United States Trustee's Office Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014); (c) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims, filed pursuant to Bankruptcy Rule 1007(d); (d) the administrative agent under the Debtors' first lien credit facility (Wells Fargo Bank National Association, 100 Park Avenue, 14th Floor, New York, New York 10017, Attn: Portfolio Manager - Advance Watch, with a copy to Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, Esq.); (e) Binda Italia Srl, Via Montefeltro, 4, 20156 Milano, Attention: Simone Binda, CEO, sbinda@bindagroup.com; (f) the Internal Revenue Service (Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, Pennsylvania 19101-7346); (g) the United States Securities and Exchange Commission (U.S. Securities and Exchange Commission, New York Regional Office, Brookfield Place, 200 Vesey Street, Suite 400, New York, New York 10281-1022); and (h) all parties who have requested notice pursuant to Bankruptcy Rule 2002.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing; and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (1) any payment to be made, or authorization contained hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "**DIP**

9923012

**Documents**"), if any, and any orders approving the DIP Documents and governing the Debtors'

use of cash collateral (including with respect to any budgets governing or relating thereto) and

(2) to the extent there is any inconsistency between the terms of such orders approving the DIP

Documents or the Debtors' use of cash collateral any action taken or proposed to be taken

hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall

control; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this

Court's disposition of the motion on a final basis; <u>provided</u> that the Court's ultimate disposition of

the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this

Interim Order; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this

Interim Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation and/or enforcement of this Interim Order.


Dated: _____, 2015
      New York, New York


                               _____
                               United States Bankruptcy Judge

9923012

## EXHIBIT 1

**Bank Accounts**

**Bank Accounts**

| Debtor Name | Bank Name | Currency | Account Type | Acct No. |
|---|---|---|---|---|
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Lockbox | -8884 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Operating | -8892 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Payroll & Benefits | -8900 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Disbursement | -2738 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Disbursement | -0114 |

9923012

# EXHIBIT B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                              :
In re:                                                        :        Chapter 11
                                                              :
ADVANCE WATCH COMPANY LTD., <u>et al.</u>,                    :        Case No. 15-12690 (___)
                                                              :
               Debtors.[1]                                    :        (Joint Administration Requested)
                                                              :
------------------------------------------------------------ x

**FINAL ORDER APPROVING DEBTORS' MOTION FOR (I) AUTHORITY TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (II) RELATED RELIEF**

Upon the motion (the "**Motion**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to §§ 105(a), 363(b), 363(c), and 364(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for entry of an order (1) authorizing them to (a) continue to operate their existing cash management system, as described herein, including the maintenance of existing bank accounts at the banks at which they are currently maintained consistent with their prepetition practices, (b) maintain existing business forms, and (2) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972), and GWG International, Ltd. (2468).

9923012

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion and the supporting First-Day Declaration, having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**") and having considered the entire record before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on a final basis, as provided herein; and it is further

ORDERED that the Debtors are authorized and empowered, pursuant to §§ 363(c) and 105(a) of the Bankruptcy Code, to continue to operate their existing cash management system (the "**Cash Management System**"), including the maintenance of existing bank accounts (the "**Bank Accounts**") at the banks at which they are currently maintained (the "**Banks**") consistent with their prepetition practices; to collect, concentrate, and disburse cash in accordance with the Cash Management System, and to make ordinary course changes to their Cash Management System without further order of this Court; and it is further

ORDERED that, the Debtors are authorized to continue operating their existing Cash Management System in the ordinary course of business, consistent with the Debtors' prepetition practices, including engaging in ordinary course Intercompany Transactions, notwithstanding any requirement to the contrary set forth in the United States Trustee's "Operating Guidelines and

2

Reporting Requirements for Debtors in Possession and Trustees" (the "**Guidelines**"); and it is further

ORDERED that, pursuant to § 105(a) of the Bankruptcy Code, and as set forth in further detail below, each of the Banks is (1) prohibited from clearing checks issued or dated prior to Petition Date absent prior order of the Court, (2) authorized and directed to clear all checks, drafts, wires, and automated clearing house ("**ACH**") transfers issued on the Bank Accounts for payment of any claims arising on or after the Petition Date so long as sufficient funds exist in the Bank Accounts, (3) authorized to rely, in good faith, on the Debtors' representations regarding which checks should be honored or dishonored, and (4) not liable regarding the honoring of such checks absent gross negligence or bad faith; and it is further

ORDERED that the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date; and it is further

ORDERED that the Debtors are authorized to: (1) designate, maintain, and continue to use any or all of their existing Bank Accounts listed on **Exhibit 1** attached to the Interim Order (which Exhibit 1 shall be promptly amended to identify any Bank Accounts inadvertently omitted therefrom, with any such amendments being served on the United States Trustee and any statutory committee of creditors), in the names and with the account numbers existing immediately prior to the Petition Date, (2) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, debit, wire transfer, ACH transfers, ACH credit, ACH debit, and other similar methods of electronic transfers, (3) pay any bank fees associated with the Bank Accounts including, without limitation, any service fee incurred but not paid prior to the Petition

3

Date, and (4) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; and it is further

ORDERED that the Debtors are authorized to open new bank accounts so long as any such new account is (1) with a bank that is (a) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (b) designated as an "Authorized Depository" pursuant to the Guidelines, and (2) the Debtors provide notice to the United States Trustee of the opening of such account; provided that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed on Exhibit 1 to the Interim Order; and it is further

ORDERED that, notwithstanding anything to the contrary contained herein or otherwise, any of the Debtor's Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein; and it is further

ORDERED that Banks are authorized to charge, and the Debtors are authorized and directed to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks may be entitled in the ordinary course under the terms of and in accordance with their contractual arrangements with the Debtors (including, without limitation, any fees, costs, charges, and expenses arising from any "stop payment"). The Debtors shall promptly reimburse the Banks for any claims, whether arising (1) under their contractual arrangement and account documentation with the Debtors or otherwise or (2) prior to or after the Petition Date, in connection with any returned items to the Bank Accounts in the normal course of

9923012

business.  Such claims by the Banks shall be jointly and severally allowed as administrative priority

claims against each of the Debtors without the need to file any proof of claim pursuant to

§ 364(c)(1) of the Bankruptcy Code.  Further the Banks are authorized to charge back to the

Debtors' Bank Accounts any amounts incurred by the Banks resulting from returned checks or

other returned items, and the Debtors are authorized and directed to promptly pay any fees and

expenses owed to the Banks, in each case regardless of whether such items were deposited

prepetition or postpetition or relate to prepetition or postpetition items; and it is further

ORDERED that nothing contained herein shall prevent the Debtors from closing any Bank

Account as they may deem necessary and appropriate, to the extent consistent with the terms of

any postpetition financing agreement and any order of this Court relating thereto, any relevant

Bank is authorized to honor the Debtors' requests to close such Bank Account, and the Debtors

shall give notice of the closure of any Bank Account to the United States Trustee and any statutory

committee of creditors; and it is further

ORDERED that all intercompany claims against a Debtor by another Debtor arising after

the Petition Date as a result of intercompany claims, dividends, and investments among the

participants in the Cash Management System (the "**Intercompany Claims**") shall be accorded

administrative expense priority in accordance with §§ 503(b) and 507(a)(2) of the Bankruptcy

Code; and it is further

ORDERED that the Debtors are authorized to use their existing check types, including

electronic checks (the "**Checks**") and correspondence and business forms, including, but not

limited to, purchase orders, checks, and other business forms (collectively, the "**Business Forms**")

and not print "debtor in possession" on any such Check or Business Form; provided that the

Debtors shall print "debtors in possession" on any new Checks or new Business Forms ordered

9923012

during the chapter 11 cases, and, as soon as reasonably practicable, the Debtors shall change their system for electronic generation of Checks and Business Forms to reflect their status as debtors in possession; and it is further

ORDERED that the Debtors are hereby authorized to execute any additional documents and reasonably cooperate with the financial institutions as may be required to carry out the intent and purpose of this Final Order; and it is further

ORDERED that the Debtors shall serve this Final Order within three (3) business days of its entry on the Notice Parties (as defined in the Motion) and the Banks; and it is further

ORDERED that nothing contained in this Final Order or in the Motion is intended to or shall be construed as (1) an admission as to the validity of any claim against the Debtors, (2) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (3) an approval or assumption of any agreement, contract, program, policy, or lease under § 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Interim Order is not intended and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) are satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

6

9923012

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry, and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (1) any payment to be made, or authorization contained hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "**DIP Documents**"), if any, and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (2) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral any action taken or proposed to be taken hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall control; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Final Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: _____, 2015
        New York, New York

_____
United States Bankruptcy Judge

7

9923012

# EXHIBIT 1

**Bank Accounts**

**Bank Accounts**

| Debtor Name | Bank Name | Currency | Account Type | Acct No. |
|---|---|---|---|---|
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Lockbox | -8884 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Operating | -8892 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Payroll & Benefits | -8900 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Disbursement | -2738 |
| Advance Watch Company Ltd. | Wells Fargo | US Dollar | Disbursement | -0114 |

9923012

## EXHIBIT C

**Cash Management System Flow Chart**

9923012



# Cash Management System Flow Chart

**Wells Fargo**

The Lockbox Account and Operating Account are subject to deposit account control agreements. Under the agreements, Wells Fargo sweeps funds from the Lockbox Account. Wells Fargo also has the ability to sweep funds entering the Operating Account.

Wells Fargo also provides the Debtors operating capital. The Debtors periodically request funds from the Wells Fargo credit facility. Based on a complex formula, Wells Fargo provides the Debtors needed funds through the Operating Account.

**Check, Cash, Wire transfer and credit card payments from retailers and customers**

**Lockbox Account**
(Wells Fargo Account -8884)
**Holder:** Advance Watch Company Ltd.
**Purpose:** Former depository account. Now is swept daily by Wells Fargo under the Lockbox Account Agreement.
**Balance:** $25,756.71 as of Petition Date

**Operating Account**
(Wells Fargo Account -8892)
**Holder:** Advance Watch Company Ltd.
**Purpose:** Primary concentration account. Funds $7,000 monthly service fees for all accounts.
**Balance:** $346,176.94 as of Petition Date

**Professional Fee Account**
(Wells Fargo Account -0114)
**Holder:** Advance Watch Company Ltd.
**Purpose:** Disbursement account for professional fees at the conclusion of the bankruptcy case
**Balance:** $0.00 as of Petition Date

**Checking Account**
(Wells Fargo Account -2738)
**Holder:** Advance Watch Company Ltd.
**Purpose:** Primary disbursement account for issuance of payments to suppliers.
**Balance:** $0.00 as of Petition Date

**Payroll & Benefits Account**
(Wells Fargo Account -8900)
**Holder:** Advance Watch Company Ltd.
**Purpose:** Primary disbursement account for employee wages and benefits through transfer to ADP.
**Balance:** ($126.50) as of Petition Date

Actual Cash Flow

Former Cash Flow