Jeffrey S. Sabin                                     Andrew J. Currie (to be admitted *pro hac vice*)
Rishi Kapoor                                         VENABLE LLP
VENABLE LLP                                          575 7th Street, NW
1270 Avenue of the Americas                          Washington, DC 20004
New York, New York 10020                             Telephone:  (202) 344-4000
Telephone:    (212) 307-5500                          Facsimile:  (202) 344-8300
Facsimile:    (212) 307-5598

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                                                      :
In re:                                                :        Chapter 11
                                                      :
ADVANCE WATCH COMPANY LTD., <u>et al.</u>,            :        Case No. 15-12690 (___)
                                                      :
              Debtors.[1]                             :        (Joint Administration Requested)
                                                      :
-------------------------------------------------------------- x

**THE DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS**
**TO RETAIN AND EMPLOY IMPERIAL CAPITAL, LLC AS INVESTMENT BANKER**
**<u>*NUNC PRO TUNC*</u> TO THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") file

this application (the "**Application**") for entry of an order substantially in the form attached

hereto as **<u>Exhibit A</u>** (the "**Order**") authorizing the Debtors to employ Imperial Capital, LLC

("**Imperial**") as investment banker, and in support, state as follows:

**<u>JURISDICTION</u>**

1.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
       number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc.
       (5972), and GWG International, Ltd. (2468).

2.      The statutory bases for the relief requested herein are §§ 105(a), 327(a), and
328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of
the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1, 2016-
1 and 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the
"**Local Bankruptcy Rules**").

## BACKGROUND[2]

3.      On September 30, 2015 (the "**Petition Date**"), each of the Debtors filed with this
Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are
operating their businesses and managing their properties as debtors in possession pursuant to
§§ 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or
examiner has been made in these chapter 11 cases, and no committees have been appointed or
designated.

## RELIEF REQUESTED

4.      The Debtors respectfully request entry of an order, substantially in the form of the
Order attached hereto as **Exhibit A**, (i) authorizing and approving the employment of Imperial as
investment banker for the Debtors in accordance with the terms and conditions set forth in that
certain engagement letter (together with any schedules thereto) (the "**Engagement Letter**"),
attached to the Order as **Exhibit 1**, *nunc pro tunc* to the Petition Date and (ii) approving the
terms of Imperial's employment and retention including, without limitation, the proposed Fee
and Expense Structure (as defined below) and the related indemnification provisions set forth in

---

[2]      A detailed description of the Debtors' businesses and the reasons for the filing of these chapter 11 cases and for
the relief sought in this Application are set forth in the Declaration of Jeffrey L. Gregg, Chief Restructuring
Officer of the Debtors (I) in Support of Debtors' Chapter 11 Petitions and First-Day Filings and (II) Pursuant to
Local Bankruptcy Rule 1007-2 (the "**First-Day Declaration**"), being filed contemporaneously with this
Application.

10004268

Schedule I, subject to the standards set forth in section 328 of the Bankruptcy Code.  In support of this Application, the Debtors submit a copy of the Declaration of Robert Warshauer, Managing Director of Imperial, in support of the Application (the "**Warshauer Declaration**"), which is annexed hereto as __Exhibit B__.

     A.    __Imperial's Qualifications__

5.    In light of the size and complexity of these bankruptcy cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities and experience of Imperial to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' cases.  An investment banker, such as Imperial, fulfills a critical service that complements the services provided by the Debtors' other professionals.  The Debtors believe that retaining Imperial as their investment banker is in the best interest of their estates and creditors because, among other things, Imperial has extensive experience in, and an excellent reputation for, providing investment banking and financial advisory services to debtors in bankruptcy.

6.    Imperial and its senior professionals have extensive bankruptcy experience as advisors to debtors in possession and official creditor committees in chapter 11 proceedings. Imperial's professionals have been retained as investment bankers or as financial advisors in a number of troubled company situations, including, among others, chapter 11 cases such as Global Aviation, Fox & Hound, Highway Technologies, Atlantic Club Resort & Casino, Suzuki, Zacky Farms, Real Mex, AFA Foods, Church Street, Southbay Expressway, Luxe Beauty and Solyndra.  Accordingly, Imperial has developed significant relevant experience and expertise that will enable Imperial and its professionals to provide necessary investment banking services in these chapter 11 cases.

10004268

7.      Additionally, Imperial is already familiar with the Debtors' operations.    As discussed more fully in the Warshauer Declaration, the Debtors engaged Imperial prepetition. Following such time, the Debtors' management began exploring several options to address their impending liquidity crisis.    In addition to advising management and negotiating with the Debtors' various key constituencies regarding a potential bankruptcy, prior to the Petition Date, professionals at Imperial assisted the Debtors in analyzing the Debtors' business, financial condition, competition, forecast, prospects and management to assess the Debtors' potential alternatives for maximizing value for the benefit of all stakeholders.    In providing the foregoing prepetition services, Imperial has worked closely with the Debtors, their management, and their other advisors and has become well-acquainted with, among other things, the Debtors' operations, business needs, and capital structure.    Thus, Imperial is well-suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Letter and described herein.

**B.      Services to be Provided**[3]

8.      Subject to entry of the Order and consistent with the terms of the Engagement Letter, Imperial has provided, and will continue to provide, the investment banking services as Imperial and the Debtors deem appropriate and feasible to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following (the "**Services**"):

    a.      analysis of the Debtors' business, operations, properties, financial condition, competition, forecast, prospects and management as necessary to effectuate a potential transaction, which transaction may include a merger, consolidation, or any other business combination, in one or a series of transactions, or a purchase involving all or a substantial amount of the business, securities or assets of the

---

[3]    The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Engagement Letter.

4

Debtors, or any transaction structured substantially to achieve the same result, including a credit sale of the Debtors' assets to an existing creditor (the "**Transaction**");

b.      advising the Debtors on a proposed purchase price and form of consideration for the Transaction;

c.      assisting the Debtors in developing, evaluating, structuring and negotiating the terms and conditions of a potential Transaction;

d.      assisting the Debtors in the preparation of solicitation materials with respect to the Transaction and the Debtors (the "**Transaction Offering Materials**");

e.      identification of and contacting selected qualified buyers ("**Buyers**") for the Transaction and furnishing them, on behalf of the Debtors, with copies of the Transaction Offering Materials;

f.      assisting the Debtors in arranging for potential Buyers to conduct due diligence investigations; and

g.      providing such other financial advisory services with respect to the Debtors' financial issues as may from time to time be agreed upon between the Debtors and Imperial.

9.      The Services are necessary to enable the Debtors to maximize the value of their estates.  Imperial has indicated a willingness to act on behalf of the Debtors, on the terms described herein, and to subject itself to the jurisdiction of the Court.  Additionally, the Debtors have been advised by Imperial that it will endeavor to coordinate with the other retained professionals in these chapter 11 cases to eliminate unnecessary duplication or overlap of work.

**C.**      **Professional Compensation**

10.      In consideration of the Services to be provided by Imperial, and as more fully described in the Engagement Letter, subject to Court approval, and in compliance with the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated January 23, 2013,

10004268

and the U.S. Trustee Fee Guidelines (collectively, the "**Fee Guidelines**"), the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable

orders of the Court, the Debtors have agreed to pay Imperial the proposed compensation set forth

in the Engagement Letter (the "**Fee and Expense Structure**") whose principal terms may be

summarized as follows::

a.  **Retainer:**  Upon the Debtors' prepetition engagement of Imperial, the Debtors
    paid Imperial a $50,000 retainer, which is to be credited against any fees earned
    and payable pursuant to the terms of the Engagement Letter.

b.  **Transaction Fee:**  Upon the completion of a Transaction, the Debtors will pay
    Imperial a fee equal to $500,000.  Imperial will receive a payment of 5% of the
    value of all consideration received directly or indirectly by the Debtors or their
    shareholders as a result of a Transaction above $15,000,000.

c.  **Expenses:**  The Debtors have agreed to reimburse Imperial for all reasonable
    expenses incurred by Imperial as set forth in the Engagement Letter including
    reasonable legal expenses.  Upon the prepetition engagement of Imperial, the
    Debtors provided a $10,000 cash deposit to be credited against any expenses
    incurred pursuant to the terms of the Engagement Letter.

11.     The Fee and Expense Structure as described above is comparable to compensation

generally charged by other firms of similar stature to Imperial for comparable engagements, both

in and out of bankruptcy.  The Fee and Expense Structure is also consistent with Imperial's

normal and customary billing practices for cases of this size and complexity that require the level

and scope of services outlined.  Imperial and the Debtors believe that the Fee and Expense

Structure is reasonable and at favorable market rates.

12.     The hours worked, the results achieved, and the ultimate benefit to the Debtors of

the work performed by Imperial in connection with its engagement may vary and the Debtors

and Imperial have taken this into account in setting the Fee and Expense Structure.  The Fee and

Expense Structure was established to reflect the difficulty of the extensive assignments Imperial

expects to undertake and the potential for failure.  The Fee and Expense Structure also reflects

6

Imperial's expertise, mergers and acquisitions capabilities, as well as its capital markets knowledge and financial skills.  The ultimate benefit to the Debtors of Imperial's services cannot be measured merely by reference to the number of hours to be expended by Imperial's professionals in the performance of such services.

13.     The Debtors intend for Imperial to receive payment of its fees on a fixed rate and percentage basis, which is customary in the investment banking industry.  As is required by the Engagement Letter, during the pendency of these chapter 11 cases, Imperial will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the Fee Guidelines.

14.     The Debtors have been informed by Imperial that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a "project category" basis.  To the extent Imperial would be required to submit more detailed time records for its professionals by the Fee Guidelines, the Debtors request that Imperial be permitted to submit summary time records kept in one-half hour increments in applications for payment of compensation.

15.     Imperial has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Imperial, in accordance with section 504 of the Bankruptcy Code.

**D.     Indemnification**

16.     As part of the Fee and Expense Structure payable to Imperial under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and related obligations pursuant Schedule I attached to the Engagement Letter (the "**Indemnification Schedule**").  The Indemnification Schedule provides, among other things, that the Debtors will

7

indemnify and hold harmless Imperial and its affiliates and their respective directors, officers, agents, employees, and controlling persons subject to customary carve outs for gross negligence and willful misconduct.   Both the Debtors and Imperial believe that such provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases.

17.    The provisions of the Indemnification Schedule were negotiated by the Debtors, their counsel, and Imperial at arm's-length and in good faith.  Further, such provisions, viewed in conjunction with the other terms of Imperial's proposed retention, are reasonable and in the best interests of the Debtors in light of the fact that the Debtors require Imperial's services to successfully maximize value to all stakeholders.  Accordingly, the Debtors request that the Court approve Imperial's retention, including the provisions reflected in the Indemnification Schedule.

### E.    Imperial's Disinterestedness

18.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Warshauer Declaration, Imperial is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which Imperial is to be retained by the Debtors.

19.    Prior to the Petition Date, the Debtors paid Imperial aggregate fees of $50,000 and reimbursed Imperial for aggregate expenses of $10,000.  Of these payments, $50,000 in fees and $10,000 in reimbursed expenses were paid in the 90 days prior to the Petition Date. The Debtors have paid Imperial for all fees incurred and expense reimbursement billed to the Debtors prior to the Petition Date.

10004268

20.    If any new material facts or relationships with Potential Parties in Interest (as defined in the Warshauer Declaration) are discovered or arise, Imperial will inform this Court.

## BASIS FOR RELIEF

### A.    The Court Should Approve the Engagement Letter and Authorize the Retention of Imperial

21.    The Debtors seek authority to employ and retain Imperial as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

22.    The Debtors also seek approval of the Engagement Letter (including the Fee and Expense Structure and the Indemnification Letter), pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions. Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of

9

professionals.  Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in

Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum (In re National Gypsum Co.),

123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).  (internal citations omitted).

23.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added).  This change makes clear that the Debtors may retain a

professional on a fixed fee basis with Court approval, such as the Fee and Expense Structure for

Imperial in the Engagement Letter.

24.    The terms set forth in the Engagement Letter appropriately reflect the nature and

scope of services to be performed by Imperial, Imperial's substantial experience with respect to

investment banking and financial advisory services, and the Fee and Expense Structure utilized

by Imperial and other leading investment bankers.  As described herein, the Debtors selected

Imperial as their investment banker because of Imperial's extensive experience with situations

similar to that of the Debtors and familiarity with the Debtors' businesses and operations.  Not

granting the relief requested herein would deprive the Debtors of the assistance of a highly

10004268

qualified investment banking firm, which would disadvantage the Debtors and all parties in interest in these chapter 11 cases. Moreover, engaging a new investment banker would necessarily require the Debtors to expend additional time and resources during a critical juncture of these chapter 11 cases.

25.    The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter reflects reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  As described herein, the Fee and Expense Structure adequately reflects the following: (i) the nature of the services to be provided by Imperial, and (ii) a fee and expense structure and indemnification provisions typically utilized by Imperial and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.  In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed and contingency fees based on the successful consummation of a Transaction and the overall success of these chapter 11 cases. Moreover, Imperial's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Imperial before the Petition Date, further support the reasonableness of the Fee and Expense Structure.  In light of the foregoing, the Fee and Expense Structure is fair and reasonable and meets the standards set forth in section 328(a) of the Bankruptcy Code.

26.    Additionally, as set forth above, notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Imperial intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the Fee Guidelines.

### B.    The Court Should Approve the Indemnification Schedule

27.    The Debtors and Imperial believe that the terms of the Indemnification Schedule are customary and reasonable for investment banking and financial advisory engagement, both out of court and in chapter 11 proceedings.  See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.), 315 F. 3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and financial advisor was reasonable under section 328 of the Bankruptcy Code).

28.    The terms and conditions of the Engagement Letter, including the Indemnification Schedule, were negotiated by the Debtors and Imperial at arm's length and in good faith.  The Debtors respectfully submit that the provisions of the Indemnification Schedule, viewed in conjunction with the other terms of Imperial's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Imperial's services for a successful result in these cases.

### RESERVATION OF RIGHTS

29.    Nothing contained is intended to or shall be construed as (1) an admission as to the validity of any claim against the Debtors, (2) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (3) an approval or assumption of any agreement, contract, program, policy, or lease under § 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### NO PREVIOUS REQUEST

30.    No prior motion for the relief requested herein has been made by the Debtors to this or any other court.

10004268

## NOTICE

31.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York (United States Trustee's Office Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims, filed pursuant to Bankruptcy Rule 1007(d); (c) the administrative agent under the Debtors' first lien credit facility (Wells Fargo Bank National Association, 100 Park Avenue, 14th Floor, New York, New York 10017, Attn: Portfolio Manager - Advance Watch, with a copy to Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, Esq.); (d) Binda Italia Srl, Via Montefeltro, 4, 20156 Milano, Attention: Simone Binda, CEO, sbinda@bindagroup.com; (e) the Internal Revenue Service (Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, Pennsylvania 19101-7346); (f) the United States Securities and Exchange Commission (U.S. Securities and Exchange Commission, New York Regional Office, Brookfield Place, 200 Vesey Street, Suite 400, New York, New York 10281-1022); and (g) all parties who have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing and approving the employment of Imperial as investment banker for the Debtors in accordance with the terms and conditions set forth in the Engagement Letter *nunc pro tunc* to the Petition Date; (ii) approving the terms of Imperial's employment and retention including, without limitation, the proposed Fee and Expense Structure

10004268

and the Indemnification Schedule; and (iii) granting such further relief as is necessary or appropriate.

Dated: New York, New York
         September 30, 2015

Respectfully submitted,

*/s/ Jeffrey S. Sabin*
Jeffrey S. Sabin
Rishi Kapoor
Venable LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 307-5500
Facsimile:    (212) 307-5598

and

Andrew J. Currie (to be admitted *pro hac vice*)
Venable LLP
575 7th Street, NW
Washington, DC 20004
Telephone:    (202) 344-4000
Facsimile:    (202) 344-8300

*Proposed Counsel to the Debtors
and Debtors in Possession*

14

10004268

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                           :

In re:                                                      :          Chapter 11
                                           :

ADVANCE WATCH COMPANY LTD., et al.,         :          Case No. 15-12690 (___)
                                           :

             Debtors.[1]                          :          (Joint Administration Requested)
                                           :

-------------------------------------------------------------- x

## ORDER APPROVING APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN INVESTMENT BANKER

Upon the application (the "**Application**")[2] of Advance Watch Company Ltd., Binda USA

Holdings, Inc., Sunburst Products, Inc., and GWG International, Ltd., the debtors and debtors-in-

possession (collectively, the "**Debtors**"), pursuant to §§ 105(a), 327(a), and 328(a), of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1, 2016-1, and 9013-1(a) of

the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy**

**Rules**") for entry of an order authorizing and approving the employment of Imperial Capital,

LLC ("**Imperial**") as investment bankers for the Debtors *nunc pro tunc* to the Petition Date; and

the Court having jurisdiction to consider the Application and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431,

dated January 31, 2012; and consideration of the Application and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972), and GWG International, Ltd. (2468).

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Application.

provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under

the circumstances; and upon the Declaration of Jeffrey Gregg, Chief Restructuring Officer of the

Debtors (I) in Support of Debtors' Chapter 11 Petitions and First-Day Filings and (II) Pursuant to

Local Bankruptcy Rule 1007-2 (the "**First-Day Declaration**"); and the record of the Hearing

and all of the proceedings had before the Court; and the Court having found and determined that

the relief sought in the Application in the best interests of the Debtors, their estates, creditors,

and all parties in interest; and that the legal and factual bases set forth in the Application

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Application is approved in its entirety *nunc pro tunc* to the Petition

Date, as provided herein; and it is further

ORDERED that the Debtors are authorized, pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a) and Local Rules 2014-1 and 2016-1,

to retain and employ Imperial as their investment banker in these chapter 11 cases *nunc pro tunc*

to the Petition Date and in accordance with terms and conditions set forth in the Engagement

Letter, attached hereto as **Exhibit 1** and as further described herein; and it is further

ORDERED that the compensation terms set forth in the Engagement Letter are approved

pursuant to section 328(a) of the Bankruptcy Code and Imperial shall be compensated and

reimbursed by the Debtors for its expenses in these chapter 11 cases in accordance with the terms

of the Engagement Letter, subject to the applicable procedures set forth in the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, and the Fee Guidelines; provided that the U.S. Trustee

shall retain all rights to object or otherwise respond to Imperial's interim and final applications

for allowance of its compensation and reimbursement of its expenses on all grounds, including,

2

but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code; and it is further

ORDERED that, as set forth in the Engagement Letter, Imperial shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with this Court in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines; provided that Imperial shall be excused from keeping time records for the services rendered in one-tenth of an hour increments, and instead Imperial shall be permitted to submit summary time records kept in one-half hour increments; and it is further

ORDERED that none of the fees payable to Imperial under the Engagement Letter and this Order shall constitute a "bonus" or fee enhancement under applicable law; and it is further

ORDERED that in the event that Imperial seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Imperial's own interim and final fee applications and such invoices and time records shall be subject to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and such other procedures as may be fixed by order of the Court under the standards of sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that the Debtors shall be bound by the provisions of the Indemnification Schedule and will indemnify and hold harmless Imperial and its affiliates, and their respective directors, officers, members, partners, members, shareholders, employees, representatives, consultants, advisors and agents and each person, if any, who controls Imperial or any of its affiliates within the meaning of the Securities Act of 1933, as amended (collectively, the "**Indemnified Persons**"), pursuant to the terms of the Engagement Letter and, during the

3

10004268

pendency of these chapter 11 cases, subject to the conditions set forth in the Indemnification Schedule; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party; and it is further

ORDERED that to the extent the provisions of this Order are inconsistent with the provisions of the Application or the Engagement Letter, the provisions of this Order shall govern; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
       New York, New York


_____
United States Bankruptcy Judge

4

10004268

## <u>EXHIBIT 1</u>

**The Engagement Letter**



Imperial Capital

2000 Avenue of the Stars, 9th Floor South    Los Angeles, California 90067    TEL 310 246 3700    800 929 2299    FAX 310 777 3000

August 4, 2015

Geneva Watch Group
1407 Broadway
Suite 400
New York, NY 10018
Attention:  Jeffrey L. Gregg, Chief Restructuring Officer


Dear Jeff:

Pursuant to this letter agreement (this "***Agreement***") Advance Watch Company Ltd., a Michigan corporation, Binda USA Holdings, Inc., a Delaware corporation, Sunburst Products, Inc., a California corporation, and GWG International, Ltd., a Delaware corporation (collectively, the "***Company***"), hereby engage Imperial Capital, LLC ("***Imperial Capital***") as the exclusive investment banker to the Company in connection with a potential transaction (including a transaction that is consummated through a plan of reorganization), which transaction may include a merger, consolidation, or any other business combination, in one or a series of transactions, or a purchase involving all or a substantial amount of the business, securities or assets of the Company, or any transaction structured to substantially achieve the same result, including a credit sale of the Company's assets to an existing creditor (each a "***Transaction***").

Section 1.  <u>Services to be Rendered</u>.  As advisor to the Company, Imperial Capital may perform the following services as may be requested by the Company: (i) analysis of the Company's business, operations, properties, financial condition, competition, forecast, prospects and management, as necessary to effectuate a Transaction without duplicating services of the Company's other advisors; (ii) advising the Company on a proposed purchase price and form of consideration for the Transaction; (iii) assisting the Company in developing, evaluating, structuring and negotiating the terms and conditions of a potential Transaction; (iv) assisting the Company in the preparation of solicitation materials with respect to the Transaction and the Company (the "***Transaction Offering Materials***"); (v) identification of and contacting selected qualified buyers ("***Buyers***") for the Transaction and furnishing them, on behalf of the Company, with copies of Offering Materials; (vi) assisting the Company in arranging for potential Buyers to conduct due diligence investigations; and (vii) providing such other financial advisory services with respect to the Company's financial issues as may from time to time be agreed upon between the Company and Imperial Capital.

Section 2.  <u>Compensation</u>.  In consideration for the services to be provided under this Agreement, Imperial Capital shall be paid:

(i)       A retainer of $50,000 (the "***Retainer***"), upon the signing of this Agreement.  The Retainer shall be credited against any fees earned and payable pursuant to Section 2(ii) hereof:

(ii)      Upon the completion of a Transaction, the Company agrees to pay Imperial Capital a fee (the "**Transaction Fee**") based on the total value of all consideration received (or to be received) directly or indirectly by the Company or its shareholders or other owners (including amounts paid in escrow) as a result of such Transaction (collectively, "***Transaction Consideration***").  For the avoidance of doubt, Transaction

Imperial Capital, LLC

Geneva Watch Group
August 4, 2015
Page 2 of 8

Consideration will also include: cash or cash equivalents paid by the Buyer; stock or other securities issued by the Buyer to the Company (including amounts paid or payable in respect of convertible securities, options or similar rights, whether or not vested); promissory notes or other debt instruments issued by the Buyer to the Company; with respect to the Company, indebtedness for borrowed money or liabilities (including capitalized lease and preferred stock obligations) assumed by the Buyer or repaid (without duplication) on consummation of the Transaction (including the amount of a credit bid of the Company's existing debt); earnouts paid by the Buyer; and royalties paid by the Buyer; provided, however, that neither (i) cure and similar costs nor (ii) the assumption of any outstanding letters of credit shall be included in the calculation of Transaction Consideration. A Transaction shall be deemed to have been consummated upon the earliest of any of the following events to occur:  (a) the acquisition of a majority of the outstanding common stock of the Company by the Buyer; (b) a merger or consolidation of the Company with or into the Buyer; or (c) the acquisition by the Buyer of substantially all of the Company's assets.  In the event that the consideration in a Transaction is paid in whole or in part in the form of securities or other assets, the value of such securities or other assets, for the purposes of calculating the Transaction Fee, shall be the fair market value thereof, as the parties hereto shall mutually agree, on the day prior to the consummation of the Transaction; provided, however, that, if such consideration includes securities with an existing public trading market, the value thereof shall be determined by the average closing price for such securities over the last ten (10) trading days immediately prior to such consummation.  The Transaction Fee shall be equal to the sum of:

      a.   $500,000; and

      b.   5% of all Transaction Consideration above $15,000,000.

Imperial Capital will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Imperial Capital's commitment of the time and effort necessary to address the issues that may arise in this engagement, Imperial Capital's expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Imperial Capital's stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Imperial Capital, and provides the requisite certainty to the Company.

If during the term of this Agreement, the scope of the engagement changes at the request of the Company, for example, a financing engagement becomes a mergers and acquisitions engagement, if the compensation for the new engagement has not been agreed upon prior to closing, then the Company and Imperial Capital will mutually agree on reasonable and customary fees for the type of engagement requested based upon market conditions and market rates at the time of the engagement.

In addition, without regard to whether the Restructuring or Transaction is consummated or this Agreement expires or is terminated, all fees, disbursements and out-of-pocket expenses (the "*Expenses*") incurred by Imperial Capital in connection with the services to be rendered hereunder (including, without limitation, reasonable attorneys' fees, travel and lodging expenses, word processing charges, messenger services, duplicating services, facsimile expenses and other customary expenditures) shall be reimbursed to Imperial Capital, or paid on behalf of Imperial Capital, promptly as billed.  Imperial Capital shall be paid a cash deposit of $10,000 (the "*Deposit*") against Expenses upon the execution of this Agreement.  Any unused amounts of the Deposit will be returned to the Company upon demand.  As further consideration, the Company agrees to the indemnification and other obligations set forth in Schedule I attached hereto, which such schedule is an integral part hereof and incorporated herein by reference.

Geneva Watch Group
August 4, 2015
Page 3 of 8

The Company shall use its best efforts to provide for the payment of the fees and expenses set forth in Section 2 hereof in full upon the consummation of a Transaction in Bankruptcy Court (as hereinafter defined) for confirmation.

If the Company becomes a debtor under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), or the fees payable to Imperial Capital pursuant to Section 2 hereof are not deemed earned and payable in full prepetition (for any reason whatsoever), or upon the request of Imperial Capital, the Company shall promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 bankruptcy case or cases of the Company (the "**Bankruptcy Court**") for the approval of this Agreement and Imperial Capital's retention hereunder pursuant to sections 327 and 328 of the Bankruptcy Code and not subject to any other standard of review under Section 330 of the Bankruptcy Code. The Company shall supply Imperial Capital with a draft of such application and any proposed order authorizing Imperial Capital's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of its filing, to provide Imperial Capital with a reasonable opportunity to review and comment thereon. Imperial Capital shall have no obligation to provide any services under this Agreement if the Company becomes a debtor under the Bankruptcy Code unless Imperial Capital's retention is approved under Section 328(a) of the Bankruptcy Code, by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Imperial Capital. If the Company becomes a debtor under the Bankruptcy Code and Imperial Capital's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Imperial Capital hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Imperial Capital in cash.

The Company will use its best efforts to ensure that (i) Imperial Capital's post-petition compensation, expense reimbursements and payment received pursuant to the provisions of Schedule I shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and (ii) Imperial Capital is entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court, in an amount not to exceed $450,000. Following entry of an order authorizing our retention, the Company will assist Imperial Capital in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Imperial Capital's fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

All fees and expenses payable to Imperial Capital pursuant to this Section 2 shall be payable in cash via wire transfer to an account designated by Imperial Capital. Except as set forth in subparagraph (i) of this Section 2, no fee paid or payable to Imperial Capital or any of its affiliates shall be credited against any other fee paid or payable to Imperial Capital or any of its affiliates.

The Company will use its best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Imperial Capital, its divisions, affiliates, any person controlling Imperial Capital or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Company or the engagement described in this agreement.

Section 3. <u>Term and Scope of Engagement</u>. The advisory services and compensation arrangements set forth herein do not encompass other investment banking services such as the exclusive sale or disposition of assets, the raising of capital, the issuance of "fairness opinions", or any other specific services not set forth in Section 1

Imperial Capital, LLC

Geneva Watch Group
August 4, 2015
Page 4 of 8

hereof.  The compensation arrangements pursuant to Section 2(i) hereof shall commence effective as of the date hereof and shall continue thereafter on a month-to-month basis pursuant to the terms hereof until the consummation of the Transaction.  This Agreement may be terminated by either the Company or Imperial Capital upon thirty (30) days prior written notice.  Upon any termination or expiration of this Agreement, Imperial Capital shall be entitled to receive prompt payment of all unpaid fees and expenses accrued pursuant to Section 2 hereof up to and including the date of such termination or expiration.  Sections 2, 3, 5, 6, 9, 10 and 11 of this Agreement and the indemnity and other provisions contained in Schedule I shall remain operative and in full force and effect regardless of any termination or expiration of this Agreement.

Notwithstanding the foregoing paragraph, if at any time prior to 12 months after the termination or expiration of this Agreement for any reason, the Company enters into any transaction or transactions similar to the Transaction contemplated by this Agreement (or any formal agreement to consummate such transaction or transactions) and the Company consummates any such transaction or transactions, or any binding statement or letter of intent or agreement, is entered into during such period which subsequently results in a consummated transaction, whether or not such consummated transaction occurs within such 12 month period, Imperial Capital shall be entitled to payment in full of the compensation described in Section 2 of this Agreement with respect to such transaction or transactions.

Section 4.  <u>Cooperation</u>.  To the extent possible, the Company shall: (i) furnish Imperial Capital with all current and historical financial and other information and data regarding the business and financial condition of the Company ("***Information***") as Imperial Capital reasonably believes appropriate in connection with its services hereunder; (ii) provide Imperial Capital with access to the officers, directors, employees and professional advisors of the Company as Imperial Capital reasonably believes appropriate in connection with its services hereunder; and (iii) as applicable, furnish Imperial Capital with the Transaction Offering Materials.  The Company agrees that it and its counsel will be solely responsible for ensuring that any Transaction Offering Materials comply in all respects with applicable law.  The Company agrees that neither the Information nor Transaction Offering Materials will contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein not misleading in light of the circumstances under which they were made.  The Company will promptly notify Imperial Capital if it learns of any material inaccuracy or misstatement in, or material omission from, any Information or Transaction Offering Materials theretofore delivered to Imperial Capital.  The Company will also cause to be furnished to Imperial Capital at any closing of the Restructuring or Transaction, copies of such agreements, opinions, certificates and other documents delivered at the closing as Imperial Capital may reasonably request.

The Company each recognizes and confirms that Imperial Capital, in connection with performing its services hereunder: (i) will be relying without investigation upon information that is available from public sources and upon the Information and Transaction Offering Materials supplied to it by or on behalf of the Company; (ii) shall not in any respect be responsible for the accuracy or completeness of such public information, Information or and Transaction Offering Materials or have any obligation to verify the same; (iii) shall not conduct any appraisal of any assets of the Company; and (iv) may require that any and Transaction Offering Materials contain appropriate disclaimers consistent with the foregoing.

Section 5.  <u>Confidentiality</u>.  The Company agrees that any reference to Imperial Capital in any release, communication, or other material is subject to Imperial Capital's prior written consent, which may be given or withheld in Imperial Capital's sole discretion.  Any advice, written or oral, provided by Imperial Capital pursuant to this Agreement shall be treated by the as confidential, shall be solely for the information and assistance of the  in connection with its consideration of the matters set forth in Section 1 hereof and shall not be used, circulated, quoted or otherwise referred to for any other purpose, nor shall it be filed with, included in or referred to, in whole or in part, in any registration statement, proxy statement, offering materials or other communication, whether

*Imperial Capital, LLC*

Geneva Watch Group
August 4, 2015
Page 5 of 8

written or oral, prepared, issued or transmitted by the Company or any of their affiliates, directors, officers, employees, agents or representatives, without, in each instance, Imperial Capital's prior written consent, which may be given or withheld in Imperial Capital's sole discretion; *provided, however*, that the foregoing shall not apply to any information which becomes publicly available other than as a result of the breach by the Company of the undertakings hereunder, or that which the Company is required to disclose by judicial or administrative process in connection with any action, suit, proceeding or claim.  Notwithstanding the foregoing, in the event that the Company commences case(s) under chapter 11 of the Bankruptcy Code, Imperial Capital acknowledges and agrees that the Company may refer to Imperial Capital and the work that it has performed under this Agreement and that employees of Imperial Capital may be called upon to testify in such chapter 11 case(s), to the extent it involves Imperial Capital's work related to a Transaction.

Section 6.  Conflicts.  The Company acknowledges that Imperial Capital and its affiliates may have and may continue to have investment banking and other relationships with parties other than the Company pursuant to which Imperial Capital may acquire information of interest to the Company.  Imperial Capital shall have no obligation to disclose such information to the Company, or to use such information in connection with the matters set forth in Section 1 hereof.  Notwithstanding the Company's obligation to pay the fees and expenses of Imperial Capital hereunder, to indemnify Imperial Capital and to provide Imperial Capital with Information, the Company recognizes that Imperial Capital is being engaged hereunder to provide the services described above only to the Company and is not acting as an agent or fiduciary of, and shall have no duties or liability to, the equity holders of the Company or any third party in connection with its engagement hereunder, all of which are hereby expressly waived.  No one other than the Company is authorized to rely upon the engagement of Imperial Capital hereunder or any statements, advice or conduct by Imperial Capital.

The Company acknowledges that Imperial Capital or its affiliates may, from time to time, quote a market in or make purchases or sales for their own accounts or the accounts of its brokerage customers in debt or equity securities of or claims against the Company and Imperial Capital's research department may express views or opinions with respect thereto.  Imperial Capital has, and agrees to maintain, information barriers between Imperial Capital's corporate finance department and its sales and trading department and research department, pursuant to which Imperial Capital's corporate finance employees are prohibited from disclosing confidential information to Imperial Capital's sales and trading or research employees.

Section 7.  Public Announcements.  Imperial Capital shall the right to place announcements and advertisements on our website and in financial and other newspapers and journals, at its own expense, describing its services in connection with the Transaction and other services rendered pursuant to this Agreement; provided that Imperial Capital shall make no such announcement prior to commencement of the chapter 11 case(s).

Section 8  Exclusivity.  The Company agrees that no other financial advisor is or will be authorized by it during the term of this Agreement to perform the same services on its behalf of the type which Imperial Capital is authorized to perform hereunder.  No fee payable to any other financial advisor either by the Company or any other entity shall reduce or otherwise affect the fees payable hereunder to Imperial Capital.

Section 9  Entire Agreement; Severability; Amendments; Assignments.  This Agreement constitutes the entire agreement among the parties hereto related to the subject matter hereof and supersedes all prior agreements or understandings related to the subject matter hereof.  If any provision of this Agreement is determined to be invalid, unlawful or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision of this Agreement, which shall remain in full force and effect.  This Agreement may not be amended or otherwise modified or waived except by an instrument in writing duly executed by both Imperial Capital and the Company.  No waiver by either party of any provision

Geneva Watch Group
August 4, 2015
Page 6 of 8

hereof shall be taken or held to be a waiver of any subsequent breach thereof.  This Agreement may not be assigned by either party without the prior written consent of the other party.  This Agreement shall be binding upon and inure to the benefit of the Company, Imperial Capital, each Indemnified Person (as defined in Schedule I hereto) and their respective permitted successors and assigns, and no other person or persons shall have the right to enforce the provisions hereof.

Section 10  Governing Law; Forum.  This Agreement shall be construed, interpreted, governed and applied in all respects in accordance with the internal laws of the State of New York, without giving effect to principles of conflicts of laws.  Except for Indemnification claims under schedule I any controversy, claim or dispute relating to this Agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association pursuant to arbitration conducted in New York County, New York.  Judgment upon such arbitration may be entered in any court having jurisdiction thereof. With respect to claims for Indemnification under schedule I the parties hereby consent to the jurisdiction of any State or Federal Court located within New York County, State of New York. The parties further acknowledge that they waive any right they have or may have to a trial by jury with regard to the claims of Indemnification provided under Schedule I.  If any litigation or arbitration shall ensue among the parties in connection with this Agreement or arising out of Imperial Capital's engagement hereunder, the prevailing party shall be entitled to recover from the non-prevailing party or parties its reasonable attorneys' fees and other costs and expenses in connection therewith.

Section 11  Counterparts.  This Agreement may be executed in one or more counterparts (including by facsimile), each of which shall constitute an original and all of which, when taken together, shall constitute one and the same instrument.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Imperial Capital the enclosed original copy of this Agreement.

Very truly yours,

**IMPERIAL CAPITAL, LLC**

By: _____
Name:  Rob Warshauer
Title:  Managing Director

Accepted and agreed as of the date first above written:

**ADVANCE WATCH COMPANY LTD.**
**BINDA USA HOLDINGS, INC.**
**SUNBURST PRODUCTS, INC.**
**GWG INTERNATIONAL, LTD.**

By: _____
Name:  Jeffrey J. Gregg
Title:  Chief Restructuring Officer

Imperial Capital, LLC

Geneva Watch Group
August 4, 2015
Page 7 of 8

**Schedule I**

This Schedule I is a part of and is incorporated into that certain letter agreement (the "***Agreement***") dated August 4, 2015 by and among Advance Watch Company Ltd., Binda USA Holdings, Inc., Sunburst Products, Inc., GWG International, Ltd. (collectively, the "***Company***") and Imperial Capital, LLC ("***Imperial Capital***").

Any and all obligations and agreements of the Company under this Schedule I shall be equally applicable to, and binding upon, each of the Company's bankruptcy estates and any chapter 7 trustee appointed in the Company's bankruptcy cases, in each such case to the extent applicable.

Because Imperial Capital will be acting on behalf of the Company in connection with the services contemplated by the Agreement, and as part of the consideration for the agreement of Imperial Capital to furnish its services pursuant to the Agreement, the Company (the "***Indemnifying Party***") agrees, jointly and severally, to indemnify and hold harmless Imperial Capital and its affiliates, and their respective officers, directors, partners, members, shareholders, employees, representatives, consultants, advisors and agents and each person, if any, who controls Imperial Capital or any of its affiliates within the meaning of the Securities Act of 1933, as amended, (Imperial Capital and each such other person being referred to as an "***Indemnified Person***"), to the full extent lawful, from and against all claims, liabilities, losses, damages and expenses, or actions in respect thereof, as incurred, based upon, related to, arising out of, or in connection with (i) actions taken or omitted to be taken by the Company and their affiliates, officers, directors, counsel, employees or agents, (ii) actions taken or omitted to be taken by any Indemnified Person pursuant to the terms of, or in connection with, the services rendered pursuant to the Agreement or in connection with any restructuring or Transaction, or proposed transaction contemplated thereby or any Indemnified Person's role in connection therewith, and (iii) any untrue statement or alleged untrue statement of a material fact contained in any of the Information or Transaction Offering Materials (each as defined in the Agreement) or omission or alleged omission to state a material fact required to be stated therein to make the statements therein not misleading in light of the circumstances under which they were made, and shall reimburse each Indemnified Person promptly upon demand for any legal or other expenses (including, without limitation, fees and expenses of counsel) reasonably incurred by that Indemnified Person in connection with investigating, preparing to defend, defending against, or appearing as a third party witness, in connection with any such claims, liabilities, losses, damages, expenses or actions; *provided*, *however*, that the Indemnifying Party shall not be responsible for any claims, liabilities, losses, damages, expenses or actions of any Indemnified Person to the extent, and only to the extent, that it is determined in a final judgment (not subject to further appeal) by a court of competent jurisdiction that such claims, liabilities, losses, damages, expenses or actions resulted directly from the fraud, willful misconduct or gross negligence of the Indemnified Person.  No Indemnified Person shall have any liability to the  Company, or any of their respective affiliates, officers, directors, partners, members, shareholders, employees, representatives, consultants, advisors and agents in connection with the services rendered pursuant to the Agreement except to the extent, and only to the extent, that it is determined in a final judgment (not subject to further appeal) by a court of competent jurisdiction that such claims, liabilities, losses, damages, expenses or actions resulted directly from the fraud, willful misconduct or gross negligence of the Indemnified Person.

Promptly upon receipt by an Indemnified Person of notice of any claim or the commencement of any action, if an indemnification claim in respect thereof is to be made against the Indemnifying Party, the Indemnified Person shall notify the Indemnifying Party in writing of the claim or commencement of such action; *provided*, *however*, that the failure to so notify shall not relieve the Indemnifying Party from any liability which it may have pursuant to this Schedule I except to the extent, and only to the extent, that it has been materially prejudiced by such failure to so notify; and, *provided*, *further*, that the failure to so notify shall not relieve the Indemnifying Party from any liability it may have to an Indemnified Person otherwise than pursuant to this Schedule I.  If any such claim or action shall be brought against an Indemnified Person, the Indemnifying Party shall be entitled to participate therein and to assume the defense thereof at its expense with counsel reasonably satisfactory to the Indemnified Person.  After notice from the Indemnifying Party to the Indemnified Person of its election to assume the defense of such claim or action, the Indemnifying Party shall not be liable to the Indemnified Person under this Schedule I for any legal or other expenses subsequently incurred by the Indemnified Person in connection with the defense thereof other than reasonable costs of investigation; *provided*, *however*, that any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof; and, *provided*, *further*, that Indemnifying Party shall continue to be liable for the legal or other expenses incurred by the Indemnified Person in connection with the defense of such

Geneva Watch Group
August 4, 2015
Page 8 of 8

action if (i) the employment of such separate counsel has been specifically authorized by the Indemnifying Party in writing, (ii) such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Indemnifying Party and in the reasonable judgment of such counsel it is advisable for the Indemnified Person to employ separate counsel (in which case the Indemnifying Party shall not have the right to assume the defense of such action on behalf of the Indemnified Person), (iii) the use of counsel chosen by the Indemnifying Party to represent the Indemnified Person would, in the reasonable judgment of the Indemnified Person, present such counsel with a conflict of interest, or (iv) the Indemnifying Party has failed to assume the defense of such action and employ counsel reasonably satisfactory to the Indemnified Person, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for all such Indemnified Persons.  The Indemnifying Party shall not settle or compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action or claim in which any Indemnified Person is or could be a party and as to which indemnification or contribution has or could have been sought by such Indemnified Person pursuant to this Schedule I, unless such Indemnified Person has given its prior written consent to the settlement, compromise, consent or termination or such settlement, compromise, consent or termination includes an express complete and unconditional release of such Indemnified Person.

In order to provide for just and equitable contribution, if any claim for indemnification with respect to claims, liabilities, losses, damages, expenses or actions in respect thereof covered by this Schedule I is found to be unenforceable in a final judgment (not subject to further appeal) by a court of competent jurisdiction or is otherwise unavailable or insufficient to hold harmless an Indemnified Person (except directly due to the fraud, willful misconduct or gross negligence of the Indemnified Person), then the Indemnifying Party shall, in lieu of indemnifying such Indemnified Person, contribute to the amount paid or payable by such Indemnified Person as a result of such claims, liabilities, losses, damages, expenses or actions in respect thereof, in such proportion as shall be appropriate to reflect the relative benefits received and relative fault of the Indemnifying Party  on the one hand and the Indemnified Person on the other, as well as any other relevant equitable considerations.  The relative fault shall be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Indemnifying Party or by the Indemnified Person and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.  The Indemnifying Party agrees that it would not be just and equitable if contributions pursuant to this Schedule I were to be determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to herein.  No person found liable for a fraudulent misrepresentation or omission shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation or omission.  Notwithstanding the foregoing, the aggregate contribution of all Indemnified Persons with respect to such claims, liabilities, losses, damages, expenses or actions in respect thereof shall not exceed the amount of fees actually received by Imperial Capital for its services pursuant to the Agreement.

The foregoing indemnity, contribution and expense reimbursement provisions are not exclusive and shall be in addition to any liability which the Indemnifying Party might otherwise have and shall not limit any rights or remedies which may otherwise be available at law or in equity to the Indemnified Persons.  These indemnification provisions shall (i) remain operative and in full force and effect regardless of any termination or expiration of the Agreement; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person, and (iv) shall be binding on any successor or assign of the Indemnifying Party and each of its successors or assigns.

Imperial Capital, LLC

# EXHIBIT B

**The Warshauer Declaration**

10004268

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                            :

In re:                            :        Chapter 11
                            :

ADVANCE WATCH COMPANY LTD., <u>et al.</u>,  :        Case No. 15-12690 (___)
                            :

               Debtors.[1]      :        (Joint Administration Requested)
                            :

-------------------------------------------------------------- x

**DECLARATION OF ROBERT WARSHAUER IN SUPPORT OF**
**THE DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS**
**TO RETAIN AND EMPLOY IMPERIAL CAPITAL, LLC AS INVESTMENT BANKER**
***NUNC PRO TUNC* TO THE PETITION DATE**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), I, Robert Warshauer, declare:

1.      I am a Managing Director of Imperial Capital, LLC ("**Imperial**"), which has its office at 277 Park Avenue 48th Floor, New York, New York 10172. I am authorized to execute this declaration on behalf of Imperial. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[2]

2.      This declaration is being submitted in connection with the proposed retention of Imperial as investment banker for Advance Watch Company Ltd., Binda USA Holdings, Inc., Sunburst Products, Inc., and GWG International, Ltd. as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") to perform services as set forth in the application seeking to retain Imperial (the "**Application**").

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972), and GWG International, Ltd. (2468).

[2]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Imperial and are based on information provided by them.

3.      Imperial is a preeminent investment banking, financial advisory, and asset management firm.  Together with its predecessors and affiliates, Imperial and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders, and other constituencies in bankruptcy proceedings and complex financial restructurings, both in and out of court.  In addition, Imperial's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, chapter 11 trustees, creditors' committees and buyers in chapter 11 proceedings.

4.      In connection with its proposed retention by the Debtors in these cases, Imperial undertook to determine whether Imperial had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, Imperial obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "**Potential Parties in Interest**").

5.      Imperial has researched its electronic client files and records to determine its connections with Potential Parties in Interest in the Debtors' bankruptcy cases.  To the extent that I have been able to ascertain that Imperial has relationships with the Potential Parties in Interest (or their apparent affiliates or entities that we believe to be affiliates, as the case may be).  Imperial's relationships with the Potential Parties in Interest include vendor and representation relationships.  Imperial's relationships with the Potential Parties in Interest were or are only on matters that are unrelated to the Debtors and these cases.  The Potential Parties in Interest that Imperial has represented, and the relationship between Imperial and the Potential Parties in Interest, are listed in **Exhibit 1** annexed hereto.

2

6.       Given the size of the firm and the breadth of Imperial's client base, it is possible that Imperial may now or in the future be retained by a Potential Party in Interest in unrelated matters without my knowledge.  To the extent that Imperial discovers any, or enters into any new, material relationship with any of the Potential Parties in Interest, it will supplement this disclosure to the Court promptly.

7.       Imperial may also represent, or may have represented, affiliates of Potential Parties in Interest and Imperial may have worked with, continue to work with, and/or have mutual clients with, certain accounting and law firms related to Potential Parties in Interest. Imperial may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities who are Potential Parties in Interest.

8.       Although Imperial has researched Potential Parties in Interest, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that were not identified as Potential Parties in Interest and with whom Imperial may maintain business relationships.  Although it is possible that employees of certain affiliates may assist Imperial in connection with Imperial's engagement, as Imperial is the only entity being retained by the Debtors, we have researched only the electronic client files and records of Imperial, not of all of its affiliates, to determine connections with any Potential Parties in Interest.

9.       In preparing this Declaration, I used a set of procedures developed by Imperial to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules for the Southern District of New York regarding the retention of professionals by a debtor under the Bankruptcy Code (the "**Firm Disclosure Procedures**").  Pursuant to the Firm

3

Disclosure Procedures, I performed, or caused to be performed, the following actions to identify

the parties relevant to this Declaration and to ascertain Imperial's connection to such parties:

    a.    I caused our staff to carry out a complete word search of such parties through our client data base. A list of results appeared. My staff went through the list to see if there was a conflict, or if we have acted for or against the Debtors previously. The search result showed that Imperial has not previously acted for or against the Debtors.

    b.    I also caused a review of the list shown in Exhibit 1 by Imperial's internal compliance department and for records of such list to be maintained on an internal server.

10.    Other than as disclosed herein, Imperial has no relationship with the Debtors of

which I am aware after due inquiry.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge.

Dated: September 29, 2015           IMPERIAL CAPITAL, LLC
      New York, New York

By: _____

      Robert Warshauer
      Managing Director

4

10004268

## EXHIBIT 1

**Potential Parties in Interest**

| Party | Disclosure |
|---|---|
| | |
| ADP INC. | **ADP** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| AT&T MOBILITY | **AT&T** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| BENCHMARK GROUP NEW YORK LLC | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Benchmark Capital** in matters unrelated to the debtors.  No active engagement. |
| CHARLES E. FOSTER | Imperial Capital's Corporate Finance Department currently has or previously had relationships with a **Charles Foster**, who, to the best of our knowledge, is affiliated with **BWOC, Inc**, in matters unrelated to the Debtors.  No active engagement. |
| CLEAR CHANNEL BROADCASTING INC. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Clear Channel Communication** in matters unrelated to the debtors.  No active engagement. |
| CONCUR TECHNOLOGIES INC. | **Concur** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| CSC | **CSC** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| DELOITTE & TOUCHE LLP | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Deloitte & Touche LLP** in matters unrelated to the debtors.  No active engagement.<br>**Deloitte & Touche LLP** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |

10004268

| Party | Disclosure |
|---|---|
| FEDEX | **Fedex** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| FRONTIER | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Frontier** in matters unrelated to the debtors. No active engagement. |
| GUARDIAN ALARM COMPANY | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Guardian Alarm Company** in matters unrelated to the debtors. No active engagement. |
| HANES BRANDS, INC. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Hanes Brands, Inc** in matters unrelated to the debtors. No active engagement. |
| KELLY SERVICES INC. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Kelly Services** in matters unrelated to the debtors. No active engagement. |
| KEVIN HALL | Imperial Capital's Corporate Finance Department currently has or previously had relationships with a **Mr. Kevin Hall**, who, to the best of our knowledge, is affiliated with **Norwest Venture Partners**, in matters unrelated to the Debtors. No active engagement. |
| KPMG LLP | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **KMPG LLP** in matters unrelated to the debtors. No active engagement. |
| KRAFTWORKS LTD | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Kraftworks** in matters unrelated to the debtors. No active engagement. |
| LDI / COLOR TOOLBOX | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **LDI, Ltd and LDI Group** in matters unrelated to the debtors. No active engagement. |

10004268

| Party | Disclosure |
|---|---|
| LINEAR TECHNOLOGIES | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Linear Technologies** in matters unrelated to the debtors.  No active engagement. |
| LINKEDIN CORPORATION | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **LinkedIn Corporation** in matters unrelated to the debtors.  No active engagement.<br>**LinkedIn** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| LITTLER MENDELSON PC | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Littler Mendelson PC** in matters unrelated to the debtors.  No active engagement. |
| LOS ANGELES TIMES | **Los Angeles Times** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| MATRIX ADVISORS, LLC | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Matrix Partners and Matrix Capital Markets Group** in matters unrelated to the debtors.  No active engagement. |
| MCGRIFF SEIBELS & WILLIAMS INC | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **McGriff Seibels & Williams** in matters unrelated to the debtors.  No active engagement. |
| MOORE WALLACE AN RR DONNELLEY | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Moore Wallace** in matters unrelated to the debtors.  No active engagement. |
| NEWMARK & CO. REAL ESTATE, INC | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Newmark Realty Capital** in matters unrelated to the debtors.  No active engagement. |
| OPSEC SECURITY INC. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Opsec Security Inc** in matters unrelated to the debtors.  No active engagement. |

10004268

| Party | Disclosure |
|---|---|
| ORACLE AMERICA INC. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Oracle, Oracle Partners and Oracle Resources LC** in matters unrelated to the debtors.  No active engagement. |
| OXFORD INDUSTRIES | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Oxford industries** in matters unrelated to the debtors.  No active engagement. |
| PROSKAUER ROSE LLP | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Proskauer Rose LLP** in matters unrelated to the debtors.  No active engagement. **Proskauer Rose LLP** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| SOUTHERN CALIFORNIA EDISON | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Southern California Edison** in matters unrelated to the debtors.  No active engagement. |
| SPRINT | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Sprint Business and Sprint Nextel Corp** in matters unrelated to the debtors.  No active engagement. |
| STEVEN BROWN | Imperial Capital's Corporate Finance Department currently has or previously had relationships with a **Steven Brown**, who, to the best of our knowledge, is affiliated with Promus equity Partners and a **Steven Brown**, who, to the best of our knowledge is affiliated with BBi Enterprises Group, in matters unrelated to the Debtors.  No active engagement. **Steven Brown**,  who, to the best of our knowledge, is affiliated with American Century and a **Steven Brown**, who, to the of our knowledge, is affiliated with Cohen & Steers, may be a client of the firm's sales and trading department and periodically buy and sell securities through Imperial Capital as their broker dealer.  No active engagement. |
| UPS | **UPS** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |

4

10004268

| Party | Disclosure |
|---|---|
| UPS FREIGHT | **UPS Freight** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| VERIFONE MEDIA | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Verifone Holdings** in matters unrelated to the debtors.  No active engagement. |
| VERIZON | **Verizon** and certain of its affiliates are, or have been, a vendor to Imperial Capital in matters unrelated to the Debtors. |
| WELLS FARGO BANK, N.A. | Imperial Capital's Corporate Finance Department currently has or previously had relationships with **Wells Fargo Bank, N.A**. in matters unrelated to the debtors.  No active engagement. **Wells Fargo Workout**, **Wells Fargo/Sutter Credit**, **Wells Fargo Bank, Wells Fargo IG, Wells Fargo Principal Investments, Wells Fargo Advisors LLC IG, Wells Fargo Securities LLC (Charlotte), Wells Fargo LND Loans** and certain of their affiliates, which may be related to **Wells Fargo Bank, N.A.**, may be clients of the firm's sales and trading department and periodically buy and sell securities through Imperial Capital as their broker dealer. |

5