Menachem O. Zelmanovitz  　　　　　　　　　　Objections Due: November 9, 2015
ZELMANOVITZ & ASSOCIATES PLLC　　　　　Hearing Date: November 12, 2015, 2 pm
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
Telephone No.: (646) 898-1575
Email: mendy@zelmlaw.com

*Counsel for NFL Properties LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ADVANCE WATCH COMPANY LTD., et al., | ) | Case No. 15-12690 (MG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**OBJECTION OF NFL PROPERTIES LLC
TO DEBTORS' MOTION FOR APPROVAL OF SALE AND ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

　　　　　NFL Properties LLC ("NFL Properties"), by and through its undersigned counsel, for its objection to the Debtors' motion to sell certain assets free and clear of liens, claims and encumbrances, and to assume and assign certain executory contracts and unexpired leases (the "Sale Motion") [Dkt. No. 17], including a certain license agreement between Debtor Advance Watch Company Ltd. d/b/a Geneva Watch Group ("AWC") and NFL Properties dated April 1, 2015 (the "NFL License")[1] and products licensed thereunder ("NFL Licensed Products"), represents as follows:

**PRELIMINARY STATEMENT**

　　　　1.　　Pursuant to the Sale Motion, the Debtors propose to sell certain assets, including inventory, and to assume and assign certain executory contracts, including certain

---

[1] By its terms, the NFL License is confidential. STC § 28. Upon information and belief, the Debtors have a copy of the NFL License. NFL Properties will provide a copy to the Court upon request.

1

license agreements, to Sunshine Time Inc. ("STI") or a higher or better bidder, if any, at a scheduled auction sale. The contracts to be assumed and assigned include the NFL License and the inventory to be sold apparently includes NFL Licensed Products.

2. Pursuant to Bankruptcy Code § 365(c)(1), the Debtors may not assume or assign the NFL License without NFL Properties' consent. Similarly, the Debtors' proposed sale of NFL Licensed Products would violate the express terms of the NFL License and may not be approved under Bankruptcy Code § 363(f) or otherwise. Further, neither the Debtors nor any proposed purchaser has provided adequate assurance of future performance as required under Bankruptcy Code § 365(f)(2).

3. At this point in time, NFL Properties has not consented to the assumption and assignment of the NFL License and the sale of NFL Licensed Products as proposed by the Sale Motion.[2]

4. Accordingly, NFL Properties submits that the Sale Motion may not be approved with respect to the NFL License and NFL Licensed Inventory.

## FACTUAL BACKGROUND

**A.    The NFL License**

5. NFL Properties is the exclusive licensing and marketing company of the National Football League (the "NFL") and its thirty-two member clubs ("Member Clubs"). NFL Properties is responsible, among other things, for the licensing of companies to use the trademarks of the NFL and the Member Clubs (the "NFL Marks") in connection with, among other things, the production of merchandise for retail sale.

---

2    Any such determination would be premature. NFL Properties will only be in a position to make such determination once the successful bidder is identified, adequate assurance of future performance is provided, and the successful bidder has confirmed whether or not it intends to assume the NFL License.

6. The licensing opportunities offered by NFL Properties fall into various product design categories, with each license in each category containing, among other provisions, territorial and trade channel restrictions, product quality control requirements, and advertising and promotional material provisions and limitations that maintain the value and integrity of the licensed products and the NFL Marks.

7. Pursuant to the NFL License, NFL Properties granted AWC, among other things, the right to use certain NFL Marks in connection with the manufacture, distribution, sale and advertising of certain specified merchandise for a three-year term in return for, among other things, the payment of specified royalties. License Agreement Standard Terms and Conditions, Exhibit 1 to the NFL License ("STC"), § 2(a); NFL License § 2.

8. The NFL License prescribes the territory and channels of distribution in which AWC may, during the term of the NFL License, distribute for sale and sell NFL Licensed Products. NFL License § 2.

9. Indicative of the importance of control over the distribution channels for NFL Licensed Products, the NFL License requires AWC, upon NFL Properties' request, to submit a list of its retail accounts for the licensed products for the purpose of determining which accounts fall within the authorized distribution channels. STC § 6(a). The NFL License also provides that NFL Properties shall determine, in its sole discretion, whether any such retail account falls within the authorized distribution channels. *Id*.

10. The NFL License also contains stringent quality control provisions requiring prior approval before any NFL Licensed Products may be manufactured, distributed, sold or advertised. STC § 4. Similarly, the NFL License requires prior approval of all promotional material depicting the NFL Marks or any NFL Licensed Products. STC § 5.

11. The NFL License further expressly prohibits the assignment of all or any portion of the NFL License, as well as, among other things, the sale, transfer or license of all or substantially all of AWC's assets, without the express prior written consent of NFL Properties. STC § 9(a).

**B.    The Sale Motion**

12. Pursuant to the Sale Motion, the Debtors seek to sell certain of its assets in accordance with the terms of a certain Asset Purchase Agreement dated as of September 29, 2015, annexed to the Bidding Procedures Order (defined below) as Exhibit 2 (the "APA").

13. The assets that the Debtors propose to sell are defined to include all of their right, title and interest in, among other things, "all Inventory" and "all Purchased Contracts." APA § 2.1. Purchased Contracts, in turn, are defined as the contracts listed on Schedule 1.1(c), as such Schedule may be amended. APA § 1.1.

14. Currently, the NFL License is listed on Schedule 1.1(c) of the APA, and is thus one of the contracts that the Debtors propose to assume and assign to the ultimate purchaser. However, that may change as the purchaser has the right under the APA to exclude additional assets in its sole and absolute discretion until three business days prior to the closing of the transaction. APA § 2.2.

15. The proposed purchaser, STI, is not an authorized distribution channel under the NFL License, nor may any other successful bidder satisfy that requirement. The Debtors are prohibited under the NFL License from knowingly selling or causing the sale of NFL Licensed Products outside of the authorized distribution channels. STC § 6(a).

16. Further, the Debtors are seeking a determination from the Court that all anti-assignment provisions of the Purchased Contracts are unenforceable, in direct violation of the NFL License and, as demonstrated below, well-established law. Sale Motion ¶40; *see also*

4

proposed Order approving the sale (the "Sale Order") annexed as Exhibit B to the Sale Motion, ¶10.

**C. The Bidding Procedures Order**

17. By Order entered on October 23, 2015 (the "Bidding Procedures Order") [Dkt. No. 105], this Court, *inter alia,* scheduled the auction sale for November 9, 2015 at 9 a.m. and also set the deadline for filing objections to the Sale Motion for 5 p.m. the same day. Thus, by the time parties must file and serve their objections, they may not know the identity of the successful bidder, much less have received adequate assurance of such proposed purchaser's future performance under contracts it is to assume.

18. Nor has STI provided adequate assurance of future performance. Pursuant to the Bidding Order, STI served a document entitled Adequate Assurance Information of Stalking Horse Bidder, Sunshine Time Inc. dated October 26, 2015, a copy of which is annexed hereto as Exhibit A. This document provided no financial or other relevant information regarding STI. The only financial information provided was the identification of a website from which information relating to STI's parent company may be obtained. However, STI's parent is not guaranteeing STI's performance, and thus, any such information is irrelevant and cannot satisfy STI's adequate assurance obligation.

19. Moreover, as noted above, the purchaser may elect to remove a contract from the list of those proposed to be assumed and assigned up to three business days before the closing of the sale. The closing need not occur until three business days after the Sale Order becomes final, and may be further delayed by agreement of the parties. APA § 4.1. Consequently, counterparties to such contracts will not know with any certainty whether or not

5

their contracts will be assumed and assigned to the purchaser until well after approval of the sale by the Court.

20. These scheduling provisions place the Debtors' licensors in an untenable position. Licensors must determine whether to object to the assignment of their license agreements and/or the sale of inventory bearing their trademarks long before they know whether or not the purchaser intends definitely to assume their licenses and, thus, become their licensee.

## ARGUMENT

**A.    The Debtors are Bound by the Terms of the NFL License.**

21. It is well settled that contractual restrictions on the sale of assets will not be affected by the bankruptcy of the party who is bound by such restrictions. *In re Six*, 190 B.R. 958, 961-62 (Bankr. M.D. Fla. 1995); *In re Dean*, 174 B.R. 787, 789-90 (Bankr. E.D. Ark. 1994); *In re Baquet*, 61 B.R. 495, 500 (Bankr. D. Mont. 1986). Thus, a debtor possesses no greater rights under its contracts than it had prior to the filing of its petition. *In re McLouth*, 257 B.R. 316, 321 (Bankr. D. Mont. 2000); *Baquet*, 61 B.R. at 497-98; *In re Best Film & Video Corp.*, 46 B.R. 861, 870 (Bankr. E.D.N.Y. 1985); *In re Douglas*, 18 B.R. 813, 815 (Bankr. Tenn. 1982).

22. The Debtors' right to sell NFL Licensed Products is expressly limited under the NFL License to specified distribution channels. This restriction is necessary to preserve the goodwill and reputation of the NFL and the value and prestige of the NFL Marks. Therefore, the Debtors should not be permitted to sell NFL Licensed Products outside the approved distribution channels without NFL Properties' express consent. *In re Six*, 190 B.R. at 961-62; *In re Dean*, 174 B.R. at 790; *In re Baquet*, 61 B.R. at 497-98.

23. The proposed sale to STI is outside the approved distribution channels under the NFL License, and the identity of any potential higher and better bidder is unknown.

Accordingly, unless the Debtors can demonstrate that such sale conforms with the distribution channels authorized under the NFL License, to the extent the Sale Motion includes the sale of NFL Licensed Products, it may not be approved.

**B.     Section 363(f) Does Not Permit the Debtors to Sell the Assets Free and Clear of NFL Properties' Interest.**

24.     Bankruptcy Code § 363(f) provides that the Debtors may sell property free and clear of any other party's interest therein *only if*:

(1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). For the Debtors to sell property free and clear of another party's interest, at least one of the above listed requirements must be met.

25.     It is well settled that the term "interest" under section 363(f) is not limited to a security interest or lien. *See, e.g., In re Transworld Airlines, Inc.,* 322 F.3d 283, 289-90 (3d Cir. 2003) (the term "interest" encompasses more than just in rem interests and "is intended to refer to obligations that are connected to, or arise from, the property being sold"); *In re WBQ P'ship,* 189 B.R. 97, 105 (Bankr. E.D.Va. 1995) (tax authority's right to "recapture" portion of gain from sale of asset was an "interest"); *In re Taylor*, 198 B.R. 142, 161 (Bankr. D.S.C. 1996) ("While the leasehold interests do not amount to liens, they seem to fit within the broader term

7

'interest' by any common definition."); *Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (finding a restrictive use covenant to preclude sale free and clear where such covenant was primarily in nature of property interest intended to run with land).

26. NFL Properties' interest in NFL Licensed Products is manifest. The value of such goods is directly attributable to the NFL Marks and the goodwill, reputation and marketing image associated with the NFL Marks. Royalties are due to NFL Properties on the sale of each NFL Licensed Product under the NFL License. Thus, NFL Properties has an interest in each NFL Licensed Product sold by the Debtors and is entitled to the protections afforded by section 363(f). The Debtors, however, fail to satisfy any of sections 363(f)(1) through (5).

27. With respect to subsection (1), the sale of any of the NFL Licensed Product is contractually prohibited as set forth above. *See* ¶¶ 21-23, supra. With respect to subsection (2), NFL Properties has not consented to the sale of the NFL Licensed Products to STI or any other purchaser under the APA. Subsection (3) cannot be satisfied because NFL Properties' interest is not a lien. Similarly, subsection (4) cannot be satisfied because NFL Properties' interest is not in bona fide dispute.

28. Finally, the sale of NFL Licensed Products pursuant to the APA in violation of the terms and conditions of the NFL License will irreparably harm NFL Properties' interest in the NFL Marks, reputation and related goodwill, and that harm will not be compensable with monetary relief alone. *See Dunkin' Donuts, Inc. v. Northern Queens Bakery, Inc.,* 216 F.Supp.2d 31, 40 (E.D.N.Y. 2001) ("unauthorized trademark usage … constitute[s] irreparable harm"); *In re Tudor Motor Lodge Assocs. Ltd. P'ship*, 102 B.R. 936, 957 (Bankr. D.N.J. 1989) ("[T]he property in this case, the use of trademarks and service marks, is of such a type that money may never adequately protect the [Owner]. The [Owner's] reputation to the general public is at stake.") (emphasis added; quoting *In re B-K of Kansas, Inc.*, 69 B.R. 812,

815 (Bankr. D. Kan. 1987)); *see also Opticians Assoc. v. Indep. Opticians*, 920 F.2d 187, 195 (3d Cir. 1990) ("Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (citing 2 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, § 30:18 (2d ed. 1984)).  Thus, the Debtors are unable to satisfy subsection (5) of Bankruptcy Code § 363(f).

**C. Assumption and Assignment of the NFL License may not be Approved under § 365.**

29. Under Bankruptcy Code § 365(c)(1), the Debtors may not assume or assign an executory contract, such as the NFL License, where:

> (A) applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment . . . .

11 U.S.C. § 365(c)(1).

30. Under applicable law, trademark licenses are personal service contracts and are not assignable. *In re N.C.P. Mktg. Group, Inc.*, 337 B.R. 230, 236-37 (D. Nev. 2005) (a license is personal to the licensee and nonassignable without licensor's consent); *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 938 (C.D. Cal. 2004) (cannot sublicense trademark without licensor's consent); *see also In re Compass Van & Storage Corp.*, 65 B.R. 1007, 1010-12 (Bankr. E.D.N.Y. 1986); *Quality Healthcare Equip., Inc.,* No. 96 C 4847, 1996 U.S. Dist. LEXIS 15485, at *7 (N.D. Ill. Oct. 15,1996) ("[R]ights arising out of contracts involving a relation of personal confidence cannot be transferred in invitum") (citation omitted); *In re Little & Ives Co.*, 262 F.Supp. 719, 724 (S.D.N.Y. 1966) (holding that contract based on trust and confidence was personal and not "assignable under traditional contract law").

9

31. Under New York law, which governs the NFL License pursuant to its terms (STC § 25), the non-assignability of such personal services contracts is firmly established. *See, e.g., In re Compass Van & Storage Corp.*, 65 B.R. at 1011 (identifying the relevant criteria as "[a] contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability"); *In re Little & Ives Co.*, 262 F. Supp. at 723-24 (debtor's contract was personal and not assignable under traditional contract law, and thus the trustee had no interest therein).

32. Here, NFL Properties entered into the NFL License with AWC largely based on AWC's reputation, expertise and experience in the design, manufacture and distribution of wristwatches and related products and through relationships built on trust and confidence in AWC's ability to execute these obligations. Thus, NFL Properties relied on the Debtors' special knowledge, judgment, expertise, ability and reputation in connection with the NFL License, and accordingly, the NFL License is not assignable.

33. Indeed, consistent therewith, pursuant to the non-assignment provision (STC § 9(a)), NFL Properties expressly contracted to withhold its license from any purchaser or other transferee of the Debtors. NFL Properties, therefore, should not suffer the unjust consequence of being thrust into a symbiotic relationship with an unknown and unproven newcomer.

**D. Debtors have Failed to Provide Adequate Assurance of Future Performance.**

34. Even were the Debtors not prohibited from assigning the NFL License without NFL Properties' consent, they have failed to satisfy the prerequisite for any such assignment. Even if the contract is not in default, under Bankruptcy Code § 365(f)(2), adequate

10

assurance of future performance must be provided before a debtor may assign an executory contract. *See, e.g., In re Rachels Indus., Inc.*, 109 B.R. 797 (Bankr. E. Tenn. 1990).

35. To satisfy this requirement, the assignee must provide adequate assurance of all material and economically significant terms. *In re Fleming Cos.*, 499 F. 3d 300 (3d Cir. 2007) (court denied assignment of supply contract where essential term, supply from specified location, could not be fulfilled). A material term is one that is integral to the bargained-for exchange and is economically significant if necessary to provide the counterparty with the full benefit of its bargain. *Id*.

36. Here, STI has provided no information with which to satisfy its obligation of adequate assurance of future performance. Other than some limited financial information for its parent which is not undertaking any obligation under the NFL License, STI has proffered nothing to demonstrate its ability to meet the exacting requirements of the NFL License that are critical to the preservation of the value and prestige of the NFL Marks. To the extent that STI is not the successful bidder, nothing has been provided to satisfy the adequate assurance obligation under Bankruptcy Code § 365 (f)(2). Accordingly, absent NFL Properties' consent, the assumption and assignment of the NFL License may not be approved.

## **CONCLUSION**

For all the foregoing reasons, NFL Properties respectfully requests that the Court prohibit both the Debtors' assumption and assignment of the NFL License and sale of any NFL Licensed Products without the express consent of NFL Properties, and grant NFL Properties such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         November 9, 2015

                      ZELMANOVITZ & ASSOCIATES PLLC

                      By:   /s/ Menachem O. Zelmanovitz
                             Menachem O. Zelmanovitz (MZ 0706)

                             1211 Avenue of the Americas, 40th Floor
                             New York, New York 10036
                             Telephone No.:  (646) 898-1575
                             Facsimile: (212) 753-0396
                             E-mail: mendy@zelmlaw.com

                             Counsel for NFL Properties LLC