**This is not a solicitation of acceptance or rejection of the plan.  Acceptances or rejections may not be solicited until a disclosure statement has been approved by the Bankruptcy Court.  This disclosure statement is being submitted for approval but has not been approved by the Court.**

THIS PROPOSED DISCLOSURE STATEMENT IS DISTRIBUTED IN ORDER TO PROVIDE ADEQUATE INFORMATION TO CREDITORS IN CONNECTION WITH THEIR VOTE ON THE JOINT PLAN OF LIQUIDATION.  THE DEBTORS IN THESE CASES ARE PERMITTED TO DISTRIBUTE AND HAVE DISTRIBUTED THIS DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE BANKRUPTCY COURT.  IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

In re:                                                              :        Chapter 11
                                                                       :
ADVANCE WATCH COMPANY LTD., et al.,    :        Case No. 15-12690 (MG)
                                                                       :
                        Debtors.[1]                         :        Jointly Administered
                                                                       :

------------------------------------------------------------- x

**FIRST AMENDED**
**DISCLOSURE STATEMENT FOR DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Jeffrey S. Sabin                                    Andrew J. Currie (admitted *pro hac vice*)
Rishi Kapoor                                        Kendall A. Camuti (admitted *pro hac vice*)
VENABLE LLP                                      VENABLE LLP
1270 Avenue of the Americas              575 7th Street, NW
New York, New York 10020                 Washington, DC 20004
Telephone:     (212) 307-5500            Telephone:  (202) 344-4000
Facsimile:      (212) 307-5598            Facsimile:   (202) 344-8300

*Counsel to the Debtors and Debtors in Possession*

**Dated:** December 16, 2015

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972); and GWG International, Ltd. (2468).

ADVANCE WATCH COMPANY, LTD. ("**ADVANCE WATCH**") AND CERTAIN OF ITS AFFILIATES, AS DEBTORS AND DEBTORS IN POSSESSION IN THESE CHAPTER 11 CASES (THE "**DEBTORS**"), ARE PROVIDING THE INFORMATION IN THIS FIRST AMENDED DISCLOSURE STATEMENT (THE "**DISCLOSURE STATEMENT**") FOR THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (THE "**PLAN**") TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.  THIS DISCLOSURE STATEMENT SUPERSEDES AND AMENDS ANY PRIOR DISCLOSURE STATEMENT RELATING TO THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO § 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.  ANY DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, BASED UPON INFORMATION CURRENTLY AVAILABLE TO THE DEBTORS.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTORS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION, OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS.

THIS DISCLOSURE STATEMENT CONTAINS OR MAY CONTAIN, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT MAY BE ATTACHED HERETO AND/OR INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT

INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.   THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.   **PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS, ALTERNATIVES TO CONFIRMATION, AND CONSUMMATION OF THE PLAN, ALL DESCRIBED IN GREATER DETAIL HEREIN.**

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................ 1

   A.  Overview of Chapter 11 ................................................................................ 1

   B.  Rules of Interpretation and Construction ...................................................... 2

   C.  Recommendation of the Committee ............................................................... 2

   D.  Recommendation of the Debtors ................................................................... 3

II.  Background Information ...................................................................................... 3

   A.  The Debtors' Corporate Structure ................................................................. 3

   B.  The Debtors' Operations ............................................................................... 4

   C.  The Debtors' Far East Operations ................................................................. 5

   D.  The Debtors' Prepetition Capital Structure ................................................... 5

      1.  The Wells Fargo Revolving Credit Facility ............................................ 5

      2.  The Binda Italy Credit Facility .............................................................. 6

      3.  Unsecured Trade and Customer Debt ..................................................... 7

      4.  Intercompany Payables .......................................................................... 8

      (a)  Intercompany Payables to Binda SpA S.R.L. ....................................... 8

      (b)  Intercompany Payables to AWC Far East ............................................. 8

   E.  Events Leading to These Chapter 11 Cases ................................................... 8

III.  Administration of the Debtors' Chapter 11 Cases ............................................. 12

   A.  Bankruptcy Filing and First Day Motions ................................................... 12

   B.  Retention and Employment of Professionals ............................................... 13

   C.  Appointment of Committee ......................................................................... 13

   D.  Schedules and Statements ........................................................................... 13

   E.  Claims Bar Dates ....................................................................................... 13

   F.  Postpetition Debtor in Possession Financing Facility................................... 13

   G.  Section 363 Sale......................................................................................... 15

   H.  Agreement with the Committee ................................................................... 16

   I.  Other Significant Motions........................................................................... 16

      1.  Hong Kong Subsidiary Compromise Motion ........................................ 16

      2.  ZY Compromise Motion ...................................................................... 17

      3.  Motion to Reject Certain Executory Contracts and Unexpired Lease ...... 17

   J.  Exclusivity ................................................................................................ 17

   K.  The Binda Limited Objection ...................................................................... 18

IV.  Summary of the Plan.......................................................................................... 19

A. Treatment of Claims and Interests under the Plan ........................................................... 19

   1. Classification and Treatment of Claims ..................................................................... 19

   2. Treatment of Unclassified Claims under the Plan ..................................................... 20

   3. Treatment of Classified Claims and Interests under the Plan .................................... 24

B. Voting Procedures and Requirements ................................................................................ 28

   1. Vote Required for Acceptance by a Class ................................................................. 28

   2. Impaired Class of Claims Entitled to Vote ............................................................... 28

   3. Claims and Interests Not Entitled to Vote ................................................................ 29

   4. Voting Procedures .................................................................................................... 29

   5. Cramdown ................................................................................................................ 30

C. Means for Implementation of the Plan ............................................................................. 30

   1. Limited Substantive Consolidation ......................................................................... 30

   2. Means for Funding the Plan ..................................................................................... 30

   3. Corporate Action ...................................................................................................... 32

   4. Plan Transactions ..................................................................................................... 33

   5. Effectuating Documents and Further Transactions ................................................... 33

   6. Authority to Act ....................................................................................................... 33

   7. The Creditor Trust .................................................................................................... 34

   8. Administrative and Priority Claims Reserve ............................................................ 40

D. Distributions under the Plan ............................................................................................. 41

   1. Distribution Record Date ......................................................................................... 41

   2. Date of Distributions ................................................................................................ 41

   3. Postpetition Interest on Claims ................................................................................ 41

   4. Disbursing Agent ..................................................................................................... 41

   5. Powers of Disbursing Agent .................................................................................... 42

   6. Surrender of Instruments .......................................................................................... 42

   7. Delivery of Distributions ......................................................................................... 42

   8. Manner of Payment .................................................................................................. 42

   9. Setoffs ...................................................................................................................... 42

   10. Minimum Distributions ............................................................................................ 43

   11. Allocation of Distributions Between Principal and Interest ...................................... 43

   12. Distributions Fee and Clear ..................................................................................... 43

E. Procedures for Disputed Claims ....................................................................................... 43

   1. Allowance of Claims and Interests ........................................................................... 43

2. Objections to Claims ................................................................................ 44

3. Estimation of Claims ................................................................................ 44

4. Distributions Relating to Disputed Claims .............................................. 44

5. Distributions after Allowance .................................................................. 44

6. Preservations of Rights to Settle Claims ................................................. 45

7. Disallowed Claims ................................................................................... 45

F. Executory Contracts and Unexpired Leases ...................................................... 45

1. General Treatment under the Plan ............................................................ 45

2. Rejection Damages Claims ....................................................................... 46

3. Insurance Policies .................................................................................... 46

4. Reservation of Rights ............................................................................... 47

G. Conditions Precedent to Effective Date ............................................................ 47

1. Conditions Precedent ............................................................................... 47

2. Waiver of Conditions ............................................................................... 47

3. Effect of Failure of Conditions ................................................................ 47

H. Effect of Confirmation ...................................................................................... 48

1. Vesting of Assets ...................................................................................... 48

2. Binding Effect ........................................................................................... 48

3. Discharge of Claims and Termination of Interests ................................... 48

4. Compromise and Settlement of Claims, Interests, and Controversies ...... 49

5. Injunction .................................................................................................. 49

6. Term of Injunction or Stays ...................................................................... 50

7. Injunctions Against Interference with Plan .............................................. 50

8. Debtor Releases ........................................................................................ 50

9. Releases by Holders of Claims and Interests ........................................... 51

10. Exculpation .............................................................................................. 52

11. Release of Liens ........................................................................................ 52

12. Dissolution of Committee ......................................................................... 52

I. Retention of Jurisdiction .................................................................................... 53

J. Miscellaneous Provisions of the Plan ............................................................... 54

1. Payment of Statutory Fees ........................................................................ 54

2. Substantial Consummation ....................................................................... 55

3. Operations between the Confirmation Date and the Effective Date .......... 55

4. Tax Treatment of the Creditor Trust ......................................................... 55

iii

5. Determination of Tax Liabilities..................................................................... 55

6. Modifications to Plan and Plan Supplement.................................................. 56

7. Other Amendments......................................................................................... 56

8. Revocation or Withdrawal of the Plan............................................................ 56

9. Continuing Exclusivity of Debtors' Right to Propose Plan............................. 56

10. Severability ..................................................................................................... 56

11. Governing Law ................................................................................................ 57

12. Time ................................................................................................................ 57

13. Binding Effect on Debtors, Holders and Successors and Assigns............... 57

14. Entire Agreement ........................................................................................... 57

15. Section 1125(e) Good Faith Compliance....................................................... 57

16. Notices ............................................................................................................ 57

V. Risks and Considerations......................................................................................... 58

A. Bankruptcy Considerations................................................................................ 58

B. No Duty to Update Disclosures ......................................................................... 60

C. Representations Outside this Disclosure Statement......................................... 60

D. No Admission ..................................................................................................... 60

VI. Plan Confirmation and Consummation.................................................................... 60

A. Plan Confirmation Hearing ................................................................................ 60

B. Plan Confirmation Requirements under the Bankruptcy Code.......................... 61

C. Plan Consummation .......................................................................................... 62

D. Best Interests of Creditors Test......................................................................... 62

E. Liquidation Analysis .......................................................................................... 62

F. Feasibility........................................................................................................... 63

G. Acceptance by Impaired Classes ...................................................................... 63

H. Section 1129(b) ................................................................................................. 64

1. No Unfair Discrimination ................................................................................ 64

2. Fair and Equitable .......................................................................................... 64

VII. Alternatives to Confirmation and Consummation of the Plan.......................... 65

A. Chapter 7 Liquidation ........................................................................................ 65

B. Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code ................... 66

C. Dismissal of the Debtors' Chapter 11 Cases.................................................... 66

VIII. Certain United States Federal Income Tax Consequences ............................. 66

A. Certain United States Federal Income Tax Consequences to Holders of Allowed Claims ..
.................................................................................................................... 67

1.  Consequences to Holders of Allowed Class 1, Class 2, Class 3, and Class 4 Claims  67

2.  Consequences to Holders of Allowed Class 5 and 8 Claims ...................................... 68

3.  Accrued Interest ......................................................................................... 69

4.  Market Discount.......................................................................................... 69

5.  Information Reporting and Backup Withholding ....................................................... 70

B.  Certain United States Federal Income Tax Consequences to the Debtors........................ 70

1.  Cancellation of Debt Income ................................................................... 71

IX. Recommendation and Conclusion ....................................................................... 71

## I.    INTRODUCTION

The Debtors prepared this Disclosure Statement in connection with the solicitation of votes for acceptance of the Plan.[1]  This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtors' creditors to make an informed judgment about the Plan, including whether to vote to accept or reject the Plan.  A copy of the Plan is attached hereto as **<u>Exhibit A</u>** and is incorporated by reference.

To the extent that the information provided in this Disclosure Statement and the Plan (including any attached exhibits and Plan Supplements) are in conflict, the terms of the Plan (including any attached exhibits and Plan Supplements) will control.  Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan.

After a careful consideration of the Debtors' business and their prospects as a going concern, the Debtors, in consultation with their legal and other advisors, concluded that a sale of substantially all of the Debtors' assets in these Chapter 11 Cases pursuant to § 363 of the Bankruptcy Code was in the best interest of the Debtors' Estates and would maximize recoveries for creditors in these Chapter 11 Cases.  The Debtors believe that approval of the Plan is in the best interests of the Debtors' creditors and all parties in interest.

Creditors may access additional copies of this Disclosure Statement from the Solicitation Agent, Epiq Bankruptcy Solutions, LLC, at the following website: http://dm.epiq11.com/AWC/.

**PURSUANT TO THE BANKRUPTCY CODE, ONLY CREDITORS WHO ACTUALLY VOTE ON THE PLAN WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER THE REQUIRED NUMBER OF ACCEPTANCES HAS BEEN OBTAINED. FAILURE TO DELIVER A <u>PROPERLY COMPLETED</u> BALLOT BY THE VOTING DEADLINE WILL RESULT IN AN ABSTENTION AND, CONSEQUENTLY, THE VOTE WILL NOT BE COUNTED AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN.  ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.**

### A.    Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated holders of claims and equity interests, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the commencement of the chapter 11 case.  The

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a chapter 11 case.  A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code, to the terms and conditions of the confirmed plan.  Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of claims and equity interests in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, § 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the chapter 11 plan.  This Disclosure Statement is being submitted in accordance with the requirements of § 1125 of the Bankruptcy Code.

## B.    Rules of Interpretation and Construction

Unless otherwise specified, all section or exhibit references in the Disclosure Statement are to the respective section in, or exhibit to, the Disclosure Statement, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Disclosure Statement as a whole and not to any particular section, subsection, or clause contained therein. The rules of construction contained in § 1102 of the Bankruptcy Code shall apply to the Disclosure Statement. The headings in this Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the interpretation of the Disclosure Statement. Unless otherwise provided, any reference in this Disclosure Statement to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In computing any period of time set forth in the Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

## C.    Recommendation of the Committee

Throughout these bankruptcy cases, the Committee has been active and has reviewed the Debtors' financial and legal history.  It has also carefully monitored the Debtors' operations during these chapter 11 proceedings.

The treatment embodied in the Plan with respect to the Claims of the unsecured creditors of the Debtors was extensively negotiated by the Committee, through its counsel and financial advisor, with the prepetition lenders of the Debtors and the Debtors and their respective advisors. The Plan implements a Plan Term Sheet between the Debtors, the prepetition lenders and the Committee that was approved by the Bankruptcy Court on November 16, 2015, attached as Exhibit 2 to the DIP Facility Order (the "**Plan Term Sheet**").

2

In light of these negotiations and settlement, it is the Committee's view that the Plan is the best available means at this time to maximize value for unsecured creditors. Accordingly, the Committee supports the Plan and urges all unsecured creditors to vote in favor of the Plan by completing the ballot and forwarding it as so indicated on the enclosed documents.

### D.    Recommendation of the Debtors

The Debtors believe that the Plan will maximize the value of the Debtors' Estates and accomplish the objectives of chapter 11 of the Bankruptcy Code and that acceptance of the Plan is in the best interests of the Debtors, creditors, the Estates, and all parties in interest. Accordingly, the Debtors urge creditors to vote to accept the Plan.

## II.    BACKGROUND INFORMATION

Founded in 1974, the Debtors are part of a privately-held global enterprise that designs, assembles, markets, and distributes consumer watches under the trade name Geneva Watch Group. The Debtors, whose corporate headquarters are located in New York City, specializes in creating and selling men's and women's timepieces under exclusive global licenses for fashion and lifestyle brands such as Kenneth Cole, Tommy Bahama, and Ted Baker London. In addition to licensed product, the Debtors sell watches for their portfolio of Debtor-owned brands, including Freestyle and Game Time. The Debtors, through their non-debtor Asian affiliates, also maintained extensive sourcing and manufacturing operations in Hong Kong and China until June 2015, as discussed further below.

### A.    The Debtors' Corporate Structure

The four Debtors are: (1) Binda USA Holdings, Inc., a Delaware corporation and the Debtors' domestic holding company ("**Binda USA**"), which is wholly owned by an Italian entity known as Binda Italia Srl ("**Binda Italy**");[2] (2) Advance Watch, the Debtors' operating company, which is wholly owned by Binda USA; (3) GWG International, Ltd., a Delaware corporation, which is wholly owned by Advance Watch; and (4) Sunburst Products, Inc., a California corporation, which is also wholly owned by Advance Watch. In addition, Advance Watch is the 100% owner of a foreign, Hong Kong-based affiliate known as Advance Watch Company (Far East) Limited ("**AWC Far East**"). AWC Far East, in turn, wholly owns two non-debtor subsidiaries formed under the laws of the People's Republic of China: (i) Zhongshan Advance Electronics Company Limited ("**AWC Zhongshan**"), and (ii) Advance Far East Trading (Shenzhen) Company Ltd. ("**AWC Shenzhen**," and together with AWC Far East and AWC Zhongshan, the "**Far East Companies**").

The following chart summarizes the Debtors' global organizational structure, including ownership of the Debtors by non-debtor Binda Italy, and the Debtors' ownership of their non-debtor, foreign affiliates:

---

[2]    As discussed below, Binda Italy was the subject of insolvency proceedings in Italy prior to and on the Petition Date. Notwithstanding Binda Italy's prior insolvency, the Debtors' boards of directors had the proper authority to commence these Chapter 11 Cases.



Until June 2015, the Debtors worked with both their parent entity, Binda Italy, and the Far East Companies, to manufacture, distribute, and sell their products throughout the world. However, as discussed below, following (i) the Debtors' financial distress in 2014 and 2015, (ii) the commencement of insolvency proceedings in Italy by the Debtors' parent entity in June 2015, and (iii) the initiation of liquidation proceedings in Hong Kong by AWC Far East in June 2015, the Debtors no longer operate under common control with their foreign affiliates.

### B.    The Debtors' Operations

The Debtors conducted operations in the United States, and maintained relationships with dozens of foreign and domestic vendors, service providers, retailers, contract counterparties, and other entities located throughout the world. Through their global distribution network, the Debtors' products were sold to department stores and specialty retailers in over 90 countries worldwide.

As of the Petition Date, the Debtors had 113 full-time employees, one part-time employee, three independent contractors, and 65 independent sales personnel in the United States and internationally, who performed, among other roles, product design, marketing, brand management, sales, retail merchandising, customer service, supply chain and inventory management, human resources, and information technology services.

In the United States, the Debtors' corporate headquarters and showroom were located in New York City. The Debtors also had an assembly and distribution facility in Canton, Michigan, and a sales office in Costa Mesa, California. The Debtors leased each of these premises.

Domestically, the Debtors' products were sold through a diverse distribution network that included department stores, specialty retail and watch locations, mass market stores, and online retailers. The Debtors' department store customers included Bloomingdales, Nordstrom, Macy's, Dillard's, Von Maur, Bon-Ton, Boscov's, JCPenney, and Kohl's. The products sold through these retail channels were serviced through a third-party contractor that employs a nationwide staff of merchandise coordinators who work with and within the stores to ensure the proper display and availability of the Debtors' products. The majority of the Debtors' annual revenue derives from three main shopping seasons during the year: (i) the end-of-year holiday season, (ii) the back-to-school season during August and September, and (iii) the late spring/early summer period during which Mother's Day and Father's Day occur.

The Debtors also provided a range of brand management and marketing services in connection with their licensed and Debtor-owned brands, including print, media, and internet advertising, point-of-sale merchandise displays, and product packaging. They also participated in cooperative advertising programs with their major retail customers, whereby costs of certain advertising and promotional expenses were shared between the Debtors and the retailer.

### C.    The Debtors' Far East Operations

Until June 2015, the Debtors also had a presence in Asia through the non-debtor Far East Companies. The non-debtor Far East Companies maintained sales, product development, and manufacturing facilities, and handled the sourcing of parts and materials used in the assembly of the Debtors' products. In addition to being a manufacturer for Geneva Watch Group, AWC Far East also hosted the information technology data center for the Debtors' global enterprise resources planning ("**ERP**") system, and provided product development, sourcing, vendor management, procurement, logistics and quality control testing and inspection services. The Far East Companies had nearly 1,500 employees.

In June 2015, AWC Far East became the subject of liquidation proceedings under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("**Hong Kong**"). Shortly thereafter, Ernst & Young was appointed as the liquidator (the "**Far East Liquidator**"). The Far East Liquidator currently maintains operational control of the Far East Companies' assets.

### D.    The Debtors' Prepetition Capital Structure

### 1.    The Wells Fargo Revolving Credit Facility

On June 21, 2013, the Debtors entered into that certain revolving Credit Agreement (as the same had been amended, modified and/or restated prior to the Petition Date, the "**Pre-Petition Revolving Loan Agreement**"), by and among Debtors Advance Watch, Sunburst Products, Inc. and GWG International, Ltd., as borrowers (collectively, the "**Borrowers**"), Binda USA, as

guarantor (the "**Guarantor**"), Wells Fargo Bank, National Association ("**Wells Fargo**" or the "**DIP Lender**"), as administrative agent (in such capacity, the "**Pre-Petition Loan Agent**"), and the lenders from time to time party thereto (collectively, the "**Pre-Petition Secured Lenders**").

Under the Pre-Petition Revolving Loan Agreement, Debtor-Borrowers obtained a $45,000,000 asset-based revolving credit facility (the "**Pre-Petition Credit Facility**"), with a $5,000,000 letter of credit sub-line facility. The total borrowing capacity under the Pre-Petition Credit Facility was based on a borrowing base, which was defined under the Pre-Petition Revolving Loan Agreement as 85% of the Debtors' eligible accounts receivable plus the lesser of (i) 65% of the value of eligible inventory, or (ii) 85% of the net recovery percentage of eligible inventory, less reserves.

Amounts loaned under the Pre-Petition Credit Facility bore interest, at the Debtors' option, at either a base rate or at LIBOR, plus an applicable margin based on the available Pre-Petition Credit Facility amount less trade payables in excess of historical levels for the most recently completed calendar quarter. The applicable margins ranged between 0.75% and 1.25% on base-rate borrowings and between 2.25% and 2.75% on LIBOR borrowings. The Debtors were also required to pay an annual non-use fee of 0.375% of the unused amounts under the Pre-Petition Credit Facility, as well as other customary fees as set forth in the Pre-Petition Revolving Loan Agreement.

As of the Petition Date, the Debtors were indebted to the Pre-Petition Loan Agent and the Pre-Petition Secured Lenders under the Pre-Petition Revolving Loan Agreement in respect of Loans, Letters of Credit, Bank Products, and all other Obligations (each as defined in the Pre-Petition Revolving Loan Agreement) in an aggregate outstanding principal amount of $13,359,095.01, consisting of $11,537,859.31 of funded debt, $1,131,453.34 of standby letters of credit, and $689,782.36 of commercial letters of credit, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "**Pre-Petition Obligations**").

The Debtors' obligations under the Pre-Petition Credit Facility are secured by first-priority, perfected security interests in substantially all of the Debtors' assets wherever located worldwide. The Pre-Petition Loan Agent holds such liens, in accordance with the Pre-Petition Revolving Loan Agreement and related security documents, for the ratable benefit of the Pre-Petition Secured Lenders. The Pre-Petition Revolving Loan Agreement also requires that Debtors maintain a lock box account arrangement whereby all cash received by the Debtors is deposited into a lock box account under the control of Wells Fargo and used to pay down the Debtors' obligations under the Pre-Petition Credit Facility, which, in turn, creates availability to re-borrow.

The Pre-Petition Revolving Loan Agreement was ratified and modified by that certain Ratification Agreement (defined below) dated as of September 30, 2015.

## 2.    The Binda Italy Credit Facility

Debtor Advance Watch, as borrower, entered into that certain Amended and Restated Revolving Credit Agreement dated as of June 14, 2013 with Binda Italy, Advance Watch's

ultimate parent entity, as lender, providing Advance Watch with a $35 million revolving credit facility (the "**Binda Italy Credit Facility**"). The Binda Italy Credit Facility is unsecured and subordinate in payment priority to the Pre-Petition Revolving Loan Agreement. The Binda Italy Credit Facility amended and restated a Revolving Credit Agreement entered into on July 31, 2008, by Advance Watch, as borrower, and Binda SpA, as lender,[3] which agreement was subsequently amended in 2008, 2011, and 2012. At the time of the Binda Italy Credit Facility, approximately $27.5 million in financing had been extended under the prior agreement.

This Binda Italy Credit Facility was a mechanism established primarily to provide working capital from Binda Italy to the Debtors and to expatriate cash to the Debtors' Italian owners. During the two-year period preceding the Petition Date, nothing was paid to Binda Italy by Advance Watch under the Binda Italy Credit Facility, and roughly $687,127.63 was paid to Binda Italy by Advance Watch for the purchase of inventory. As the Binda Italy Credit Facility states, Binda Italy entered into the amended and restated agreement "to continue in giving financial support and to develop [Advance Watch]'s business . . . ." In addition, the Binda Italy Credit Facility was amended to extend the maturity date from December 31, 2013 to December 31, 2018, and Binda Italy acknowledged that the repayment obligations are junior and subordinate to the Debtors' obligations under the Pre-Petition Revolving Credit Facility, as further memorialized in a Subordination Agreement dated as of June 21, 2013, between Wells Fargo and Binda Italy.

Under the Binda Italy Credit Facility, financed amounts accrue interest at the rate of LIBOR plus 2.50%, compounded annually. Interest payments are due on an annual basis at the end of March of the year following the year in which the interest accrued. No payments of principal are due until maturity. As of just prior to the Petition Date, approximately $26.2 million was outstanding under the Binda Italy Credit Facility.

### 3.    Unsecured Trade and Customer Debt

The Debtors' unsecured trade creditors include various vendors, shipping-relating service providers, licensors, marketing services, professionals, and other service providers that were necessary to run the Debtors' business on a day-to-day basis. According to the Debtors' books and records, as of the Petition Date, the Debtors had, on a consolidated basis, approximately $6.1 million in unsecured trade vendor debt, exclusive of any amounts that may arise from contracts to be rejected. Additionally, according to the Debtors' books and records, as of the Petition Date, the Debtors had, on a consolidated basis, approximately $1 million in unsecured debt related to credits owed to the Debtors' customers.[4]

---

[3]    Binda SpA is Binda Italy's predecessor-in-interest and merged into Binda Italy as of December 1, 2012.

[4]    The review and reconciliation of Claims is ongoing as of the date hereof. No order or finding has been entered by the Bankruptcy Court or any other court estimating or otherwise fixing the amount of the Debtors' unsecured trade and customer debt at the approximated amounts stated.

4.    **Intercompany Payables**

(a)    **Intercompany Payables to Binda SpA S.R.L.**[5]

In their Schedules, the Debtors listed the unsecured claim of Binda Italia, S.R.L. as "disputed" in an "unknown" amount and noted that the Claim based on intercompany payables to the Debtors' non-debtor corporate parent is potentially subject to recharacterization or subordination.  On November 25, 2015, non-debtor affiliate Binda SpA S.R.L. filed a Proof of Claim with the Bankruptcy Court asserting an unsecured Claim in an unliquidated amount relating to the Binda Italy Credit Facility [Claim No. 97] (*see supra* pp. 3-7).  Binda SpA S.R.L. disagrees with the Debtors' characterization that its Proof of Claim was filed in an "unliquidated" amount. All rights with respect to the intercompany payable and defenses thereto have been preserved.

(b)    **Intercompany Payables to AWC Far East**

In their Schedules, the Debtors listed the unsecured claim of Advance Watch Company (Far East) Limited (Hong Kong) as "disputed" and "unliquidated" in an "unknown" amount and noted that the Claim was based on intercompany payables with non-debtor subsidiaries.  On November 20, 2015, non-debtor affiliate AWC Far East, through its Joint and Several Liquidator, filed a Proof of Claim asserting a $30,430,014.62 unsecured Claim relating to unpaid purchase orders for inventory and related services [Claim No. 60].  AWC Far East has been the subject of liquidation proceedings in Hong Kong since June 2015.  As discussed herein, in August 2015, Advance Watch entered into an agreement with AWC Far East, among others, regarding the return of the Debtors' inventory and IT systems held by the Hong Kong entity, but the parties' agreement did not address the alleged intercompany payable.  As a result, all rights with respect to the intercompany payable and defenses thereto have been preserved.

E.    **Events Leading to These Chapter 11 Cases**

In September 2008, the Debtors were acquired by the predecessor entity to Binda Italy, an Italian-owned producer and distributor of watches.  From fiscal year 2009 through 2012,[6] the Debtors experienced steady sales growth, with gross revenue increasing from approximately $171.6 million in 2009 to $221 million in 2012.

In 2013, the Debtors' revenue and profitability started declining.  At the time, the Debtors' revenue was roughly divided evenly between two business lines: the moderately-priced licensed

---

[5]    The relationship between Binda SpA S.R.L. and the Debtors is unclear.  Binda SpA S.R.L. identifies itself as a creditor of the Debtors and a party in interest.  In the *Limited Objection by Binda SpA S.R.L. to Debtors' Motion Seeking Preliminary Approval of Disclosure Statement and Plan Vote Solicitation Procedures* [Doc. 194], Binda SpA S.R.L. alleges that it is "a creditor of the Debtors holding aggregate claims exceeding $26 million" pursuant to the Binda Italy Credit Facility, with respect to which Binda SpA S.R.L. filed an unliquidated claim in the Chapter 11 Cases.  As set forth herein, the Binda Italy Credit Facility is between Debtor Advance Watch Company, Ltd. and Binda Italia Srl.  The Debtors believe that sometime after entry into the Binda Italy Credit Facility, Binda Italia Srl changed its name to Binda SpA S.R.L.  Accordingly, the Debtors believe that Binda SpA S.R.L. is the ultimate parent entity of the Debtors and subject to insolvency proceedings currently pending in Italy.

[6]    The Debtors' fiscal year ends in March of the following calendar year.

and Debtor-owned fashion brands, and the lower-priced mass-market watches manufactured under private labels for retailers like Wal-Mart, Kmart, and Target, among others.

The Debtors' declining revenue and profitability initially resulted from the termination of two branded licenses that accounted for a significant portion of the Debtors' revenue. First, in 2010, the Debtors' license to produce and sell timepieces for Betsey Johnson terminated, which accounted for $8.1 million in annual revenue. Then, in 2013, Binda Italy's license to produce and sell timepieces for luxury fashion company Dolce & Gabbana—which the Debtors distributed in the Americas, as well as manufactured through their Far East Companies—expired without being renewed, causing an additional decrease of $25 to $30 million in annual revenue for the Debtors. Nevertheless, the Debtors remained profitable through the continuation of growth in their remaining product lines and the addition of other, smaller licensed brands.

In addition, through a favorable supplier agreement with USA Movement, the Debtors previously benefitted from acquiring watch movements at duties reduced by 75% to 80%. That supplier arrangement ended in September 2010, leading to increased production costs by approximately $5 million annually.

The Debtors also continued to lose revenue and incur significant operating losses through calendar years 2014 and 2015 as the result of operational challenges, weakness in the domestic watch market, failed new product launches, and the failure to align overhead costs to regain profitability.

In June 2015, for reasons unrelated to the Debtors' operations or financial status, their ultimate Italian parent, Binda Italy, became the subject of insolvency proceedings in Italy. As a result, the Debtors were no longer able to access financing from Binda Italy.

The inability to access financing from Binda Italy had a significant negative impact on the Debtors' operations. The Debtors were unable to make payments to many of the vendors in its supply and distribution chain, causing inventory delays and product shortages. This, in turn, led to declining revenues, further impairing the Debtors' liquidity, while also causing the Debtors' relationships with its licensors and retailers to suffer as the Debtors were unable to fulfill requests for products or generate royalty payments due under its license agreements. Beset by declining cash flow and revenues, the Debtors' ability to access financing under the Wells Fargo loan deteriorated, forcing the Debtors to explore a restructuring of the business.

The liquidity constraints, which prevented the Debtors from paying past due amounts to their vendors, escalated to a level that necessitated the decision to exit certain key businesses that could no longer be supported without the requisite support from the vendor base to develop and manufacture sufficient product to support customer programs. As vendors were refusing to accept orders from the Debtors for the production of goods and/or completion of services needed to fulfill customer commitments, the decision was made to exit the low margin, working-capital intensive, lower price-point private-label product lines supporting the mass, mid-tier and OEM markets, and allocate the remaining liquidity to the higher margin businesses. The exited business represented nearly half of the Debtors' sales volume and traditionally supported a significant amount of the overhead cost of the Far East Companies' operations, as well as a significant portion of the

Debtors' overhead in the United States, so exiting this business segment would require a dramatic reduction in overhead costs to offset the margin lost as a result.

In early 2015, the Far East Companies' operational hurdles came to a head. On or around June 9, 2015, the Far East Companies' management received personal threats believed to relate to the past due amounts owed to the Far East Companies' suppliers. As a result, the Far East Companies' management immediately shut down operations, including their manufacturing facilities. While the initial intention was to shut down operations temporarily and resume operations shortly thereafter, on or around Friday, June 12, 2015, the Far East Companies notified their suppliers and other vendors that they would be permanently ceasing operations.

As of Monday, June 15, 2015, the Far East Companies ceased conducting business of any kind and all outgoing payments were frozen. Operational control of the Far East Companies was divested from the entities' existing management, who were replaced by FTI Consulting, the acting provisional liquidator. A week later, on June 22, 2015, AWC Far East formally commenced liquidation proceedings under Hong Kong law.

The loss of operational control of the Far East Companies further challenged the Debtors' ability to maintain operations without disruption. As mentioned above, in 2014, the Debtors implemented an upgraded, global ERP system—which was housed in Hong Kong—to integrate its domestic and foreign operations under a single system. Following the commencement of liquidation proceedings in Hong Kong, the Debtors worked with the Far East Liquidator (and, prior to that, FTI Consulting, as provisional liquidator) to regain access to and control of its ERP system to support its operations. The Debtors also engaged in discussions with the Far East Liquidator regarding the release and return of millions of dollars' (at retail prices) worth of the Debtors' licensed product inventory and components for sale in the U.S. market held by the Far East Companies and necessary to support the Debtors' immediate and future business needs.

After one month without access to the ERP system, and nearly two months of negotiating with the Far East Liquidator, the Debtors reached an agreement on August 26, 2015 for the release of a portion of the remaining inventory and the Debtors' computer systems held by the Far East Companies. Under the agreement, Advance Watch agreed to pay $200,000 for the IT systems and all associated data, software, and licenses (to the extent transferable), and $500,000 for the product inventory, subject to an adjustment based on the parties' inspection and determination of any excess or missing inventory, plus storage costs. The agreement does not address or affect the Far East Companies' alleged intercompany Claim, and no releases were given by the Debtors in favor of the Far East Companies or the Far East Liquidator, or vice versa.

Unfortunately, the majority of the Debtors' inventory held by the Far East Companies was lost or destroyed and significant damage was done to the IT systems following the commencement of the Hong Kong liquidation proceedings in June 2015. The inventory that remained had significantly diminished in value due to extended delays during the process of negotiating their purchase with the Far East Liquidator. As a result, a downward adjustment was made to the purchase price of the inventory.

In an attempt to address the deteriorating financial condition of the Debtors, in June 2015, the Debtors' former management began a series of cost-cutting measures. As part of these measures, several senior employees were terminated in early June, including managers in charge of sales, finance, operations, marketing, and other key functions of the Debtors. Unfortunately, the loss of these employees caused further deterioration of the Debtors' ability to operate due to, among other things, the negative impact on customer and vendor relationships, morale, and the loss of institutional knowledge.

On June 16, 2015, Jeffrey L. Gregg was hired as the Debtors' Chief Restructuring Officer. The Chief Restructuring Officer immediately began a process to stabilize the Debtors' operations and critical stakeholder relationships to chart a path forward to maintain long-term viability of the remaining business.

The Debtors had already attempted to pursue additional equity or debt financing through a failed process in the spring of 2015, so the Debtors' focus was directed to a sale of assets to create liquidity for short-term survival while evaluating sale options.

After considering numerous alternatives, including whether to sell some or all of the Debtors' key brands, the Debtors' management concluded that a sale of the Debtors or substantially all of the Debtors' assets would best position the Debtors to maximize their value. Prior to the commencement of these Chapter 11 Cases, the Debtors worked closely with the DIP Lender to find a buyer, establish a comprehensive sales process, and ensure operational functionality so that the Debtors could maintain, and ultimately maximize, their value, and to ensure that the Debtors would have access to postpetition financing.

To facilitate a sale of Debtors' assets, the Debtors undertook a process to research and identify potential buy-side candidates including several U.S. and international companies that had the necessary capacity, business expertise, and interest to establish a position in the consumer watch market in the United States and abroad.

To further aid in the sale of the business, in August 2015, the Debtors hired the well-known investment banking firm Imperial Capital, LLC ("**Imperial**") to identify additional strategic and financial buyers, and, ultimately, run a marketing and sale process of the Debtors' assets. Following Imperial's efforts, a total 153 potential buyers were identified, of which 148 were contacted and 38 entered into Non-Disclosure Agreements as of the Petition Date.

As the result of these significant marketing efforts to attract potential buyers, the Debtors received three proposals, all of which contemplated a sale of assets free and clear of liens and Claims pursuant to § 363 of the Bankruptcy Code. These three proposals ultimately culminated in a signed purchase agreement (the "**Asset Purchase Agreement**") with Sunshine Time, Inc. (the "**Purchaser**"). The Asset Purchase Agreement served as the stalking horse bid in the bankruptcy auction process, and was designed to maximize value for the Debtors Estates.

In addition, the Debtors negotiated and obtained a commitment from the DIP Lender to provide critical postpetition financing. The Debtors and the DIP Lender agreed to a revolving postpetition facility that providing for availability of funds based on collections of receivables and

11

additional inventory sales. The facility provided the Debtors with up to $18,500,000 of postpetition financing inclusive of revolving loans in excess of pre-petition lending formula limits of up to $4,000,000.

## III.    ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES

### A.    Bankruptcy Filing and First Day Motions

The Debtors commenced the Chapter 11 Cases on September 30, 2015 (the "**Petition Date**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are considered debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

After filing the chapter 11 petitions, the Debtors filed various motions and other pleadings seeking entry of interim and/or final orders granting various relief. Following hearings on these motions and pleadings, the Bankruptcy Court entered orders, among other things:

(i)     authorizing joint administration of the Debtors' Chapter 11 Cases;

(ii)    and establishing notice, case management, and administrative procedures;

(iii)   authorizing Debtors to file a consolidated list of the Debtors' 30 largest unsecured creditors;

(iv)    extending the time to file the schedules of assets and liabilities, statement of financial affairs, and reports under Federal Rule of Bankruptcy Procedure 2015.3;

(v)     authorizing the Debtors to retain Epiq Bankruptcy Solutions, LLC as noticing and claims agent;

(vi)    authorizing the Debtors to maintain and use their existing bank accounts, business forms, and cash management system;

(vii)   prohibiting utilities from altering, refusing, or discontinuing service to the Debtors on account of prepetition invoices;

(viii)  authorizing the Debtors to pay certain prepetition taxes and fees;

(ix)    authorizing the Debtors to pay certain prepetition obligations owing on account of wages, compensation, and employee benefits;

(x)     authorizing the Debtors to honor certain prepetition customer obligations and continue customer programs in the ordinary course of business;

(xi)    authorizing the Debtors to pay certain obligations in connection with Claims of certain shippers, warehousers, lien claimants, and customs agencies; and

(xii)   authorizing the Debtors to maintain, continue, and renew their property, casualty, liability and other insurance policies and agreements.

### B.    Retention and Employment of Professionals

During the Chapter 11 Cases, the Debtors sought and obtained authority to retain and employ the following Professionals to assist in the administration of the Debtors' Chapter 11 Cases: (i) Venable LLP as primary bankruptcy counsel to the Debtors; (ii) Tanner De Witt as special Hong Kong counsel to the Debtors; (iii) Imperial as investment bankers to the Debtors; (iv) Jeffrey L. Gregg as Chief Restructuring Officer to the Debtors; and (v) Epiq Bankruptcy Solutions, LLC as administrative agent to the Debtors.    The Bankruptcy Court also entered an order authorizing the Debtors to employ and retain certain Professionals utilized by the Debtors in the ordinary course of business.

### C.    Appointment of Committee

On October 8, 2015, the United States Trustee's Office for Region 2 appointed a five-member statutory committee of unsecured creditors to represent the interests of unsecured creditors of the Debtors pursuant to § 1102(a)(1) of the Bankruptcy Code (the "**Committee**").    The following entities were appointed to the Committee: (i) RR Donnelly & Sons Company; (ii) Itsy Bitsy Media, Inc.; (iii) Jeff Smith Consulting LLC; (iv) Douglas R. Bennett; and (v) Cindy Riccio Communications.

Following its formation, the Committee selected the law firm of Arent Fox LLP as its counsel in these Chapter 11 Cases and Emerald Capital Advisors as its financial advisor.

### D.    Schedules and Statements

On October 5, 2015, the Bankruptcy Court entered an order extending the deadline for the Debtors to file their schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**") to October 30, 2015.    On October 17, 2015, the Debtors filed their Schedules.    On October 22, 2015, the Debtors filed their amended Schedules.

### E.    Claims Bar Dates

On October 23, 2015, the Bankruptcy Court entered an order establishing deadlines for filing Proofs of Claim (the "**Bar Date Order**").    Pursuant to the Bar Date Order, the Court set November 25, 2015 at 7:00 p.m. (prevailing Eastern Time) as the deadline for each person or entity (including without limitation, each individual, partnership, joint venture, corporation, estate, or trust) other than a governmental unit (as defined in § 101(27) of the Bankruptcy Code) (a "**Governmental Unit**") to file a Proof of Claim in respect of a prepetition Claim against the Debtors (the "**General Bar Date**").    Additionally, the Bankruptcy Court set March 28, 2016 at 7:00 p.m. (prevailing Eastern Time) as the deadline for Governmental Units to file a Proof of Claim in respect of a prepetition Claim against the Debtors (together with the General Bar Date, the "**Bar Dates**").    On October 28, 2015, the Debtors served parties in interest with notice of the Bar Dates.

### F.    Postpetition Debtor in Possession Financing Facility

On or about August 4, 2015, the Debtors engaged Imperial to identify potential strategic and financial buyers, and, ultimately, run a marketing and sale process of the Debtors' assets.

13

Additionally, at the request of the Debtors, Imperial identified and contacted six third parties as potential sources of debtor in possession financing. The third parties solicited by Imperial included sophisticated financial institutions, hedge funds, and lower-middle-market business lenders active in the debtor in possession financing market, which Imperial had identified based on a number of factors, including their ability to quickly complete diligence and fund a transaction through debtor in possession financing. Through discussions with these potential third-party lenders, it quickly became apparent that the relatively small size of the potential loan, the Debtors' existing capital structure, including the Debtors' level of secured debt (relative to asset value) and lack of unencumbered assets, as well as the Debtors' niche market, foreclosed any opportunities for the Debtors to access unsecured or junior credit. Further, in the absence of a successful priming fight, any debtor in possession loan provided by parties would have required the consent of Wells Fargo, as Pre-Petition Loan Agent, which had indicated it would not be willing to provide. Based on numerous conversations with Wells Fargo as part of this process, it became readily apparent that a collateral priming fight with a third-party lender would be extremely time intensive, expensive and not value accretive to the Debtors as compared to the debtor in possession financing (the "**DIP Financing**") negotiated with Wells Fargo.

The DIP Financing provided the Debtors with critical and necessary access to a senior secured superpriority debtor-in-possession revolving credit and letter of credit facility of up to $18,500,000, inclusive of revolving loans in excess of pre-petition lending formula limits of up to $4,000,000 (the "**DIP Facility**"), pursuant to the terms and conditions of that certain Ratification and Amendment Agreement dated as of September 30, 2015 (the "**Ratification Agreement**") by and among Debtors Advance Watch, Sunburst Products, Inc. and GWG International, Ltd., as Borrowers, Binda USA, as Guarantor, Wells Fargo, as administrative agent and collateral agent under the DIP Facility (in such capacities, the "**DIP Loan Agent**"), and the DIP Lender, which ratifies and amends the Pre-Petition Revolving Credit Agreement (as ratified and amended by the Ratification Agreement, the "**DIP Credit Agreement**").

The DIP Credit Agreement also provided the Debtors with immediate access to cash collateral, subject to the terms and conditions of the DIP Credit Agreement. Immediate access to cash collateral (a) ensured that the Debtors had sufficient working capital to, among other things, pay their employees and vendors; (b) enabled the Debtors to honor their pre-petition obligations under and in accordance with other "first-day" orders entered by the Bankruptcy Court; and (c) satisfied administrative expenses incurred in connection with the commencement of these Chapter 11 Cases. By providing the Debtors with the immediate right to use cash collateral, the DIP Credit Agreement also avoided any business disruptions that would have resulted if the Debtors had been required to borrow under a post-petition facility to replenish their various operating accounts.

The Debtors and the Pre-Petition Secured Lenders agreed on consideration (the "**Adequate Protection Obligations**") as adequate protection for the diminution in value of the Pre-Petition Secured Lenders' interests prepetition collateral, including cash collateral, on account of the Debtors' use of such prepetition collateral, the imposition of the automatic stay and the subordination to the Carve Out Expenses (as that term is defined in the order approving the DIP

Credit Agreement on an interim basis [Doc. 42][7]). Specifically, the Pre-Petition Loan Agent, for the benefit of itself and the Pre-Petition Secured Lenders, was granted the Revolving Loan A/L Replacement Lien (as that term is defined in the order approving the DIP Credit Agreement on an interim basis [Doc. 42]) pursuant to §§ 361 and 363 of the Bankruptcy Code.[8] The Revolving Loan A/L Replacement Lien is junior and subordinate only to certain expenses and liens as set forth in the DIP Credit Agreement and the interim and final orders approving the DIP Credit Facility.

On October 6, 2015, the Bankruptcy Court entered an order approving the DIP Facility on an interim basis. On October 23, 2015, the Bankruptcy Court entered an order approving the DIP Facility on a second interim basis while the Committee reviewed the terms of the DIP Facility. On November 2, 2015, the Bankruptcy Court entered an order approving the DIP Facility on a third interim basis while the Committee continued to review the terms of the DIP Facility. On November 16, 2015, the Bankruptcy Court entered an order approving the DIP Facility on a final basis. In addition, the Bankruptcy Court approved the Plan Term Sheet attached as Exhibit 2 to the DIP Facility Order.

The proceeds of the DIP Facility were used by the Debtors (a) for general working capital and other purposes permitted under the DIP Credit Agreement; (b) to fund the costs of administering these Chapter 11 Cases; and (c) to pay all fees and expenses provided for under the DIP Credit Agreement and authorized by the Bankruptcy Court.

### G.    Section 363 Sale

As defined above, prior to the Petition Date, the Debtors engaged in extensive marketing efforts in connection with the contemplated sale of substantially all of the Debtors' assets (the "**Sale**"). The Debtors ultimately received three proposals, all of which contemplated a sale of their assets free and clear of liens and Claims pursuant to § 363 of the Bankruptcy Code. In evaluating the proposals, the Debtors analyzed, among other things: (i) the consideration offered by each potential buyer; (ii) key licensor approval; (iii) the potential buyer's financial strength; (iv) the proposed purchaser's ability to close; (v) benefits to the Debtor; and (vi) the likelihood that the proposed purchaser would be able to preserve employees' jobs.

These efforts culminated in the Asset Purchase Agreement with the Purchaser. The total purchase price under the Asset Purchase Agreement is $15,000,000 in cash, less any Cure Amounts (as that term is defined in the Asset Purchase Agreement) in excess of $500,000, subject to certain adjustments and subject to higher or otherwise better offers, plus the assumption of the Assumed Liabilities (as defined in the Asset Purchase Agreement) and payment of all Cure Amounts.

On October 23, 2015, the Bankruptcy Court entered an order on the Debtors' bidding procedures and sale motion (the "**Bidding Procedures Order**") (i) approving certain auction and

---

[7]    Unless otherwise specified, all references herein to docket entries shall be to entries of the docket of *In re Advance Watch Company Ltd.*, Case No. 15-12690 (MG).

[8]    The Debtors' obligations under the Pre-Petition Credit Facility are secured by first-priority, perfected security interests in inventory of the Debtors that is, as of the Petition Date, in the United States or otherwise released by the U.S. Customs and Border Protection Agency.

bidding procedures in connection with the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**"); (ii) authorizing the Debtors to enter into a stalking horse purchase agreement and approving certain stalking horse protections; (iii) approving certain procedures related to the assumption and assignment of executory contracts and unexpired leases; (iv) scheduling an auction and sale approval hearing; (v) approving the form and manner of sale notice; and (vi) granting related relief.

Pursuant to the Bidding Procedures, potential purchasers were required to submit a qualifying Indication of Interest (as that term is defined in the Bidding Procedures Order) not later than October 26, 2015. No potential purchaser submitted a qualifying Indication of Interest. Accordingly, the Purchaser was the Successful Bidder (as that term is defined in the Bidding Procedures) and the Asset Purchase Agreement is the Successful Bid (as that term is defined in the Bidding Procedures) under the Bidding Procedures.

Additionally, prior to the entry of the order approving the sale, the Debtors filed and served a notice of potential assumption and assignment of executory contracts and unexpired leases.

On November 12, 2015, the Bankruptcy Court held a hearing to approve the sale to the Purchaser under the Asset Purchase Agreement. On November 16, 2015, the Bankruptcy Court entered an order, among other things, approving the sale to the Purchaser and authorizing the Debtors to assume and assign various executory contracts and unexpired leases to the Purchaser.

## H.      Agreement with the Committee

On November 16, 2015, the Debtors, Committee, DIP Lender, DIP Agent and Purchaser entered into a Plan Term Sheet, which outlines the agreement in principle among the key parties in the Chapter 11 Cases for a consensual plan. The Plan Term Sheet and the settlement embodied therein serves as the basis for the Plan and was the inducement for the parties agreeing to the Sale and Final DIP Order.

## I.      Other Significant Motions

### 1.      Hong Kong Subsidiary Compromise Motion

On October 9, 2015, the Debtors filed a *Motion to Approve Compromise with Non-Debtor Advance Watch Company (Far East) Limited pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* [Doc. 52] (the "**Subsidiary Compromise Motion**"). In the Subsidiary Compromise Motion, Advance Watch sought authority to release $200,000 of escrowed funds to purchase certain data, software, and licenses (to the extent transferable), including all codes, passwords, keys, and schema (collectively, the "**IT Assets**") necessary to operate the ERP system in connection with a prepetition agreement with AWC Far East. The ERP system was critical to the Debtors' ability to conduct product development, sourcing, vendor management, procurement, logistics, and quality control testing and inspection services. On October 21, 2015, the Bankruptcy Court entered an order granting the Subsidiary Compromise Motion [Doc. 91]. All of the Debtors' rights with respect to AWC Far East were expressly preserved.

### 2.    ZY Compromise Motion

On November 3, 2015, the Debtors filed the *Debtors' Motion to Approve Compromise with ZY Holdings, LLC pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* [Doc. 128] (the "**ZY Compromise Motion**").    In the ZY Compromise Motion, Advance Watch sought approval of a stipulation (the "**Stipulation**") with ZY Holdings, LLC ("**ZY**"), authorizing Advance Watch to distribute and sell remaining prepetition inventory bearing "ZOO YORK," "ZY" logo, and "ZOO YORK" stylized trademarks (the "**Prepetition Inventory**") notwithstanding the stipulated prepetition termination of a "License Agreement" between ZY and Advance Watch concerning the distribution of the Prepetition Inventory.    Under the Stipulation, ZY allowed Advance Watch to sell the Prepetition Inventory, which Advance Watch valued at $295,000.    In exchange, Advance Watch agreed to pay ZY $24,000 on account of such Prepetition Inventory.    Additionally, in settlement of ZY's alleged $833,000 prepetition Claim, Advance Watch also agreed to a non-contingent, liquidated, and undisputed allowed general unsecured, non-priority prepetition Claim in favor of ZY in the amount of $214,000.    On November 6, 2015, the Bankruptcy Court entered an order granting the ZY Compromise Motion [Doc. 144].

### 3.    Motion to Reject Certain Executory Contracts and Unexpired Lease

On November 6, 2015, the Debtors filed a *Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts and Unexpired Lease of Real Property Effective as of the Petition Date* [Doc. 146] (the "**Rejection Motion**").    In the Rejection Motion, the Debtors seek authority to reject executory contracts with Amazon Fulfillment Services, Inc.; the Burwood Products Company; the Curtis Publishing Company; KMJ Brand Holdings, LLC; LDI Color Toolbox; Morning Glory Licensing, LLC; Sundance Group; and US Lacrosse, Inc.    In addition, the Debtors seek authority to reject a lease of real property with Pinnacle Plaza, LLC.    The Debtors have requested that the Bankruptcy Court authorize rejection of the aforementioned contracts and lease *nunc pro tunc* to the Petition Date because the Debtors have only recently concluded assumption and rejection negotiations in connection with the Sale.    The Rejection Motion is currently set for hearing on November 24, 2015 at 2:00 p.m. (prevailing Eastern Time).

### J.    Exclusivity

Under the Bankruptcy Code, a debtor has the exclusive right to file a plan or plans of reorganization for an initial period of 120 days from the date on which the debtor filed a petition for voluntary relief (which may be extended by the Bankruptcy Court for a period of up to eighteen months from the petition date).    If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the petition date to solicit acceptances to the plan (which may be extended by the Bankruptcy Court for a period of up to twenty months from the petition date).    During a debtor's exclusive periods, no other party in interest may file a competing chapter 11 plan; however, a court may terminate the debtor's exclusive periods upon request of a party in interest and "for cause."    The Debtors filed the Plan and Disclosure Statement within the initial exclusivity period.

### K.    The Binda Limited Objection

On December 7, 2015, Binda SpA S.R.L. filed *its Limited Objection by Binda SpA S.R.L. to Debtors' Motion Seeking Preliminary Approval of Disclosure Statement and Plan Vote Solicitation Procedures* [Doc. 194] (the "**Binda Limited Objection**").  In the Binda Limited Objection, Binda SpA S.R.L. alleges that it is "a creditor of the Debtors holding aggregate claims exceeding $26 million" pursuant to the Binda Italy Credit Facility.  Binda SpA S.R.L. asserts that the Claim of Binda SpA S.R.L. is improperly classified under the Plan.

The Debtors have classified the Claim of Binda SpA S.R.L. as a Class 7 Intercompany Claim.  The Debtors believe that this classification is appropriate because (a) Binda SpA S.R.L. is an Insider; and (b) the Claim of Binda SpA S.R.L. is based on amounts allegedly owing under a loan agreement between Binda SpA S.R.L. and AWC, that the Debtors characterized for accounting purposes differently than amounts owing to the Debtors' general unsecured creditors, which are comprised primarily of trade creditors and customers.  The Debtors further believe that the Claim of Binda SpA S.R.L. is (i) potentially subject to recharacterization, setoff, counterclaims, recoupment, equitable subordination, objections under § 502(d) of the Bankruptcy Code, or otherwise; and (ii) subject to International, European, or other banking rules and regulations. Binda SpA S.R.L. disagrees with the Debtors' classification of the Binda SpA S.R.L. Claim in Class 7 (Intercompany Claims), and believes that its Claim should instead be classified as a Class 5 General Unsecured Claim under the Plan. Binda SpA S.R.L. has further informed the Debtors that it (x) believes its Claim will be Allowed in the full amount asserted and that it has full and complete defenses to any challenge thereto, and (y) intends to object to confirmation of the Plan for, among other reasons, the improper classification of its Claim in Class 7 (Intercompany Claims).

On December __, 2015, the Bankruptcy Court approved the Disclosure Statement on a preliminary basis and the Debtors' proposed solicitation procedures and form of ballots.  A hearing on final approval of the Disclosure Statement and confirmation of the Plan will be held on January 20, 2016.

While the Debtors believe they have properly classified the Binda SpA S.R.L. Claim in Class 7 (Intercompany Claims), which Binda SpA S.R.L. disputes, in the event either (a) Binda SpA S.R.L.'s confirmation objections are sustained by the Bankruptcy Court, thus resulting either in (i) the Plan being rendered unconfirmable, or (ii) the reclassification of the Binda SpA S.R.L. Claim as a Class 5 General Unsecured Claim, and/or (b) Binda SpA S.R.L.'s Claim is ultimately Allowed as a Class 7 Intercompany Claim but treated as a Class 5 General Unsecured Claim for Distribution purposes (unless consensual terms are agreed upon), the result will be a significant, negative impact on creditor recoveries under the Plan.  Although it is impossible to predict the exact economic impact on creditors, failure to confirm the Plan may result in the "alternatives to confirmation" discussed herein, which may result in significantly less recovery for the Holders of Allowed Claims than provided under the Plan. To the extent the Claim of Binda SpA S.R.L. is ultimately Allowed, classification of the Binda SpA S.R.L. Claim in Class 7 may result in recoveries for Holders of Allowed Class 5 Claims at the lower end of the range specified in the Plan if Allowed Class 7 Claims are treated as Class 5 Claims for purposes of Distributions under the Plan or the Court otherwise orders such treatment. The Debtors believe, however, that the Plan's classification scheme minimizes the risk to confirmation by classifying the Binda SpA

S.R.L. Claim in Class 7 (Intercompany Claims) as currently proposed, as opposed to in Class 5 (General Unsecured Claims).

## IV.    SUMMARY OF THE PLAN

### A.    Treatment of Claims and Interests under the Plan

#### 1.    Classification and Treatment of Claims

The following table designates the Classes of Claims against and Interests in the Debtors' Estates, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with § 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.  A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Description | Treatment | Entitled to Vote | Estimated Range of Recovery under the Plan |
|---|---|---|---|---|
| --- | Administrative Expense Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Compensation and Reimbursement Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Priority Tax Claims | Payment in full or consent to other treatment | No | 100% |
| --- | United States Trustee Fees | Payment in full or consent to other treatment | No | 100% |
| --- | DIP Facility Claim | Satisfied in full or consent to other treatment | No | 100% |
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Senior Secured Wells Claims | Unimpaired | No (deemed to accept) | 100% |

19

| Class | Description | Treatment | Entitled to Vote | Estimated Range of Recovery under the Plan |
|---|---|---|---|---|
| 3 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 4 | Other Secured Claims | Unimpaired | No (deemed to accept) | 100% |
| 5 | General Unsecured Claims | Impaired | Yes | < 1% - 5%[9] |
| 6 | Subordinated Claims | Impaired | No | 0%[10] |
| 7 | Intercompany Claims | Impaired | Yes | 0% |
| 8 | Litigation Claims | Impaired | Yes | TBD[11] |
| 9 | Interests | Impaired | No (deemed to reject) | 0% |

**2.      Treatment of Unclassified Claims under the Plan**

**a.      Administrative Expense Claims**

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash

---

[9]    The estimated recoveries on account of Claims in Classes 5 through 8 are estimates only.  Actual distributions on account of such Claims may vary significantly from the stated estimates depending on, among other things, amounts actually recovered by the Creditor Trust after the Effective Date and final resolution of Contingent Claims, Subordinated Claims, Intercompany Claims, Litigation Claims and Insured Litigation Claims.  All rights of the Debtors, the Committee and the Creditor Trust with respect to the classification of Claims and Interests, estimated recoveries, and/or allowance or disallowance of Claims and Interests, are reserved in the Plan.

[10]    Holders of Allowed Subordination Claims shall recover on account of such Claims solely from the Creditor Trust Assets and only after all other Classes of Allowed Claims have been satisfied in full.  Given that the estimated recoveries on account of the other Classes of Claims is less than recovery in full, at this time, the debtors do not anticipate any recoveries on account of Allowed Subordinated Claims.

[11]    To the extent that an Allowed Litigation Claim is an Insured Litigation Claim, the Holder of such Claim shall recover solely from Available Insurance Proceeds.  All other Allowed Litigation Claims will recover solely from the Creditor Trust Assets and be treated as Class 5 General Unsecured Claims for purposes of Distributions under the Plan.  It is impossible to determine at this time the number or amount of Allowed Litigation Claims, the number or amount of such Claims which are also Insured Litigation Claims, or the amount of Available Insurance Proceeds.  Consequently, it is not possible to provide an estimated range of recovery to Holders of Class 8 Claims at this time.

from the Plan Funding (other than the Committee Allocation Payment) (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Expense Claims that have been assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an obligation of the Debtors; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Debtors, as Debtors in Possession, in accordance with the Debtors' wind-down Budget and to the extent such obligations have not been assumed by the Purchaser, shall be paid by the Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  For the avoidance of doubt, all tax Claims of governmental units arising from and after the date of the closing of the Sale have been assumed by the Purchaser and, therefore, do not constitute obligations of the Debtors under the Plan.

The Holder of an Administrative Expense Claim, other than (i) a Compensation and Reimbursement Claim, (ii) a liability incurred but not yet due and payable in the ordinary course of business by a Debtor until after the thirtieth day after the Effective Date, (iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, (iv) an expense or liability incurred in the ordinary course of business on or after the Effective Date, or (v) fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon, must file with the Bankruptcy Court and serve on the Debtors, the Creditor Trustee, and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim, together with supporting documentation, so as to be received on or before the date that is the first Business Day that is 21 days after the Effective Date.  Failure to file and serve such request for payment timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.

The Debtors estimate that the aggregate amount of Allowed Administrative Expense Claims (other than Allowed Compensation and Reimbursement Claims) does not exceed $1.2 million.[12]   In the event Allowed Administrative Expense Claims (other than Allowed Compensation and Reimbursement Claims) exceed $1.2 million, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan.

### b.    Compensation and Reimbursement Claims

All final requests for payment of Claims of a Professional through the Effective Date shall be filed on or before the later of 30 days after the Confirmation Date and fifteen days after the

---

[12]    The Debtors estimate that fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon remaining to be paid during these Chapter 11 Cases will be approximately $25,000 as of the Effective Date.

Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, the Bankruptcy Rules and the Local Bankruptcy Rules, the Allowed amounts of such accrued Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.  Except as otherwise set forth in Section 2.2 of the Plan, the terms and provisions of the Interim Compensation Order shall govern all Compensation and Reimbursement Claims.

Allowed Compensation and Reimbursement Claims of the Debtors' Professionals shall be paid (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claims is entered by the Bankruptcy Court or (b) upon such other terms as agreed by the Holder of such an Allowed Compensation and Reimbursement Claims.  Allowed Compensation and Reimbursement Claims of the Debtors' Professionals (other than Debtors' chapter 11 counsel) shall be paid in an amount not to exceed $470,000 from the Plan Funding (which shall not reduce the Committee Allocation Payment) in accordance with Section 6.2.1 of the Plan and/or the Administrative and Priority Claims Reserve in accordance with Section 6.8 of the Plan.  Allowed Compensation and Reimbursement Claims of Debtors' chapter 11 counsel shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of the Plan, the Plan Funding as set forth in Section 6.2.1 of the Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.  As of the date hereof, the Debtors anticipate that the Allowed Compensation and Reimbursement Claims of its chapter 11 counsel will total approximately $1 million.

In the event that the Allowed Compensation and Reimbursement Claims of the Debtors' chapter 11 counsel are not paid in full from Plan Funding, Debtors' Allocation Payment, or the Administrative and Priority Claims Reserve, then any such unpaid Allowed Compensation and Reimbursement Claims shall be paid in full through payments by the Creditor Trustee from the proceeds of the Estate Claims transferred to the Creditor Trust (any such payments by the Creditor Trustee from the proceeds of the Estate Claims, the "**Creditor Trust Compensation Payments**"); provided, however, that in no event shall the Creditor Trust Compensation Payments exceed 20% of the aggregate gross proceeds of the Estate Claims.  Furthermore, in no event shall the Creditor Trust Compensation Payments be paid from or otherwise reduce the Committee Allocation Payment.

Allowed Compensation and Reimbursement Claims of the Committee's Professionals shall be paid from the Committee Allocation Payment (i) as soon as is reasonably practicable following the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claims is entered by the Bankruptcy Court or (ii) upon such other terms as agreed by the Holder of such an Allowed Compensation and Reimbursement Claims.  The Committee has advised the Debtors that, as of the date hereof, the Committee anticipates that approximately $650,000 in Allowed Compensation and Reimbursement Claims of the Committee's Professionals will be paid from the Committee Allocation Payment.

### c.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, at the option of the Debtors, in consultation with the Committee, or the Creditor Trustee, as soon as is reasonably practicable following the later of (i) the Effective Date; or (ii) the date the Allowed Priority Tax Claim becomes an Allowed Claim; (A) Cash from the Plan Funding (other than the Committee Allocation Payment) in the amount of such Allowed Priority Tax Claim, or (B) in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash from the Plan Funding (other than the Committee Allocation Payment) over a period ending not later than five years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim.

All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due from the Plan Funding (other than the Committee Allocation Payment). Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims and shall be subordinated to General Unsecured Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtors estimate that the aggregate amount of Allowed Priority Tax Claims does not exceed $40,000. In the event Allowed Priority Tax Claims exceed $40,000, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan.

### d.    United States Trustee Fees

All fees payable pursuant to § 1930 of title 28 of the United States Code and any applicable interest thereon that are due and payable as of the Effective Date shall be paid on the Effective Date or as soon thereafter as is reasonably practicable from the Plan Funding (other than the Committee Allocation Payment). All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Creditor Trustee with funds from the Creditor Trust Assets when such fees become due and payable. All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Cases or conversion or dismissal of the Chapter 11 Cases, whichever is earlier.

### e.    DIP Facility Claim

In accordance with the Sale Order and DIP Facility Order, the Sale Proceeds were distributed to the DIP Loan Agent on behalf of the DIP Lender and the Pre-Petition Loan Agent on behalf of the Pre-Petition Secured Lenders in full and final satisfaction, settlement, release, and

discharge of, and in exchange for the Allowed DIP Facility Claim and the Allowed Senior Secured Wells Claim, respectively.

**3.    Treatment of Classified Claims and Interests under the Plan**

**a.    Other Priority Claims (Class 1)**

Except to the extent that a Holder of an Allowed Other Priority Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash from the Plan Funding (other than the Committee Allocation Payment) in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors or Creditor Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

The Debtors estimate that the aggregate amount of Allowed Other Priority Claims does not exceed $60,000.  In the event Allowed Other Priority Claims exceed $60,000, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan.

Class 1 is Unimpaired and is deemed to accept the Plan.

**b.    Secured Tax Claims (Class 2)**

On the Effective Date or as soon thereafter as is reasonably practicable, and only to the extent that any such Allowed Secured Tax Claim has not been paid in full prior to the Effective Date, each Holder of an Allowed Secured Tax Claim shall receive, at the option of the Debtors or the Creditor Trustee, (i) the proceeds of the sale or disposition of the collateral securing such Allowed Secured Tax Claim to the extent of the value of the Holder's secured interest in the Allowed Secured Tax Claim; (ii) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the Holder of such Allowed Secured Tax Claim is entitled; or (iii) such other Distribution as necessary to satisfy the requirements of the Bankruptcy Code.  In the event the Debtors or the Creditor Trustee treat a Claim under clause (i) of Section 4.2 of the Plan, the Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  The Debtors and the Creditor Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Tax Claims.  The Debtors do not anticipate that there will be any Allowed Secured Tax Claims.  In the event any Secured Tax Claims are Allowed, the only recourse for payment of such Claims shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan.

Class 2 is Unimpaired and is deemed to accept the Plan.

c.    **Senior Secured Wells Claims (Class 3)**

In accordance with the Sale Order and DIP Facility Order, the Sale Proceeds were distributed to the DIP Loan Agent on behalf of the DIP Lender and the Pre-Petition Loan Agent on behalf of the Pre-Petition Secured Lenders in full and final satisfaction, settlement, release, and discharge of, and in exchange for the Allowed DIP Facility Claim and the Allowed Senior Secured Wells Claim, respectively.

Class 3 is Unimpaired and is deemed to accept the Plan.

d.    **Other Secured Claims (Class 4)**

Except to the extent that a Holder of an Allowed Other Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, each such Holder, at the option of the Debtors, in consultation with the Committee, or the Creditor Trustee, shall (i) be paid in full in Cash from the Plan Funding (other than the Committee Allocation Payment); (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent required under § 506(b) of the Bankruptcy Code; or (iii) receive other treatment rendering such Claim Unimpaired in accordance with § 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.  In the event the Debtors or the Creditor Trustee treat a Claim under clause (i) of Section 4.4 of the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  The Debtors and the Creditor Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

The Debtors estimate that the aggregate amount of Allowed Other Secured Claims will be $0.00.  In the event Allowed Other Secured Claims exceed $0.00, the only recourse for payment of the Allowed Other Secured Claims shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan.

Class 4 is Unimpaired and is deemed to accept the Plan.

e.    **General Unsecured Claims (Class 5)**

Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of the beneficial interest in the Creditor Trust and as beneficiary of the Creditor Trust shall

receive, on a distribution date, their Pro Rata Share of net Cash derived from the Creditor Trust available for Distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, as full and complete satisfaction of the claims against the Creditor Trust.

The Debtors estimate that the aggregate amount of Allowed General Unsecured Claims will be approximately $7.1 million based on the Debtors' Schedules and Claims asserted against the Estates.[13]

Class 5 is Impaired and is entitled to vote to accept or reject the Plan. Any recovery under the Plan to Holders of Allowed General Unsecured Claims is contingent upon the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust.

### f.        Subordinated Claims (Class 6)

Holders of Allowed Subordinated Claims will not receive any Distributions on account of such Subordinated Claims unless and until all Allowed Claims in Classes 1, 2, 3, 4, 5, 7, and 8 have been satisfied in full, in which case, each Holder of an Allowed Class 6 Subordinated Claim shall receive such Holder's Pro Rata Share of the remaining beneficial interest in the Creditor Trust (after all Allowed Claims in Classes 1, 2, 3, 4, 5, 7, and 8 have been satisfied in full) and as beneficiary of the Creditor Trust, shall receive, on a distribution date, their Pro Rata Share of net Cash derived from the Creditor Trust Assets available for Distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, as full and complete satisfaction of the Claims against the Creditor Trust.

Class 6 is Impaired, and is deemed to reject the Plan.

### g.        Intercompany Claims (Class 7)

A Holder of an Allowed Intercompany Claim will not receive any Distribution on account of such Intercompany Claim. Each Holder of an Intercompany Claim shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Intercompany Claim. Notwithstanding the foregoing, the Debtors, with the consent of the Committee, shall be authorized to modify the treatment of a Holder of an Allowed Intercompany Claim in a manner consistent with the below: (i) subject to mutually agreeable terms between the Debtors and the Holder of such Allowed Intercompany Claim, and without further order of the Court, such Claim, together with all other Claims of such Holder against the Debtors and/or their Estates, may be discharged and released in exchange for mutual releases of all claims by the Debtors and their Estates against such Holder; (ii) be treated

---

[13]    This approximation of Allowed General Unsecured Claims necessarily contains an estimate of the amount of General Unsecured Claims which will ultimately become Allowed Claims. This estimate is based solely upon the Debtors' review of its books and records and the Debtors' estimates as to additional General Unsecured Claims that have been or may be filed in these Chapter 11 Cases. The review and reconciliation of Claims is ongoing as of the date hereof. No order or finding has been entered by the Bankruptcy Court or any other court estimating or otherwise fixing the amount of General Unsecured Claims at this approximated amount.

as a Class 5 General Unsecured Claim for all purposes, including voting and receiving Distributions under the Plan; or (iii) be treated as a Class 5 General Unsecured Claim for purposes of Distributions, and for all other purposes, including voting, as a Class 7 Intercompany Claim.

Class 7 is Impaired, and is entitled to vote to accept or reject the Plan.  Any recovery under the Plan to Holders of Allowed Intercompany Claims is contingent upon, among other things, the resolution of the applicable Claim, the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust or any final money judgment amount applicable to such Claims.   Because the review and reconciliation of Intercompany Claims is ongoing, the most appropriate treatment for Class 7 Intercompany Claims cannot be determined at this time.

### h.    Litigation Claims (Class 8)

Except to the extent that a Holder of an Allowed Litigation Claim has agreed to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each such Claim, each Holder of an Allowed Litigation Claim shall receive (a) on the Effective Date, the right to prosecute such Claim to judgment under applicable non-bankruptcy law, and (b) if, when and to the extent that a court of competent jurisdiction enters a Final Order (i) resolving all of the Debtors' or their Estate's (or the Creditor Trust's) counterclaims, crossclaims, claim objections, offsets, recoupment, estimation, disallowance, expungement and defenses (as the case may be) and (ii) awarding a liquidated, non-contingent money judgment against the Debtors with respect to such Claim, such Claim shall be treated for purposes of Distributions as a Class 5 General Unsecured Claim in the amount of the money judgment awarded; provided, however, that if an Allowed Litigation Claim is an Insured Litigation Claim, the Holder of such Claim shall receive from Available Insurance Proceeds the lesser of (x) the amount of such judgment and (y) such Holder's Pro Rata Share of Available Insurance Proceeds with respect to such Claim.  Other than as set forth in the preceding sentence, each such Holder of a Insured Litigation Claim shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Insured Litigation Claims.

Class 8 is Impaired and is entitled to vote to accept or reject the Plan.  Any recovery under the Plan to Holders of Allowed Litigation Claims is contingent upon, among other things, the resolution of the applicable Claim, the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust or any final money judgment amount applicable to such Claims.

### i.    Interests (Class 9)

Each Holder of an Interest in any Debtor will not receive any Distribution on account of such Interest. Each such Interest shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Interests.  Each such Interest will be cancelled as of the Effective Date.

Class 9 is Impaired and is deemed to reject the Plan.

### B.    Voting Procedures and Requirements

Please refer to information provided with the ballot in the Solicitation Package sent to you by the Solicitation Agent for further detailed voting instructions. Only Impaired Classes of Claims are entitled to vote to accept or reject the Plan. Please refer to Section 3 of the Plan and Article IV of the Disclosure Statement for estimated recovery for Impaired Classes. If the Claim or Claims you hold are not in one of those Impaired Classes, you are not entitled to vote on the Plan and thus you will not receive a ballot from the Solicitation Agent. Holders of Claims that are entitled to vote should read the ballot provided by the Solicitation Agent and follow the accompanying instructions carefully.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THE PROCEDURES GENERALLY, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT BY TELEPHONE AT 646-282-2500 OR BY EMAIL AT TABULATION@EPIQSYSTEMS.COM (PLEASE REFERENCE "ADVANCE WATCH COMPANY" IN THE SUBJECT LINE OF YOUR EMAIL)**

---

### 1.    Vote Required for Acceptance by a Class

A Class of Claims entitled to vote to accept or reject the Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept the Plan. A Class of Interests is deemed to accept the Plan if the Plan has been accepted by Holders of at least 2/3 of the amount of the Allowed Interests held by Holders of such Interests in who vote in such Class. Classes 1, 2, 3, and 4 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

### 2.    Impaired Class of Claims Entitled to Vote

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject the Plan.

Class 9 is not entitled to receive or retain any Distributions or property under the Plan and is, therefore, conclusively presumed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code. Class 6 is entitled only to the contingent right to receive Distributions after satisfaction in full of all other Classes of Allowed Claims, as set forth in Section 4.6 of the Plan, which contingency may never occur. As such, Class 6 is deemed to have rejected the Plan in accordance with § 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. Classes 5, 7, and 8 are Impaired and are the only Classes of Claims or Interests entitled to vote on the Plan.

### 3.    Claims and Interests Not Entitled to Vote

A Holder of a Claim is not entitled to vote on account of such Claim if, as of the Voting Record Date, the Claim (a) has been disallowed, (b) is the subject of a pending objection, or (c) (i) was not listed on the Debtors' Schedules or was listed on the Debtors' Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise.  However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.  Insiders are entitled to vote on the Plan subject to and in accordance with the Bankruptcy Code.

### 4.    Voting Procedures

The Solicitation Agent will facilitate the solicitation and voting process. If you have any questions regarding voting procedures or your eligibility to vote to accept or reject the Plan, or if you need additional copies of documents included in the Solicitation Package, please contact the Solicitation Agent at Epiq Bankruptcy Solutions, LLC (i) by first class mail at Advance Watch Company, Ltd. Processing Center, c/o Epiq Bankruptcy Solutions, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (ii) by email at tabulation@epiqsystems.com (please reference "Advance Watch Company" in the subject line of your email); or (iii) by phone at 646-282-2500.

Ballots must be returned by only <u>one</u> of the following methods: (i) via electronic mail to tabulation@epiqsystems.com (please reference "Advance Watch Company" in the subject line of such email; (ii) via first class mail as set forth below; or (iii) via hand delivery or overnight courier as set forth below.

| If sent by first class mail: | If sent by messenger or overnight courier: |
|---|---|
| Advance Watch Company, Ltd. | Advance Watch Company, Ltd. |
| Ballot Processing | Ballot Processing |
| c/o Epiq Bankruptcy Solutions, LLC | c/o Epiq Bankruptcy Solutions, LLC |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

**BALLOTS CAST BY HOLDERS OF CLAIMS AND/OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST BE <u>ACTUALLY</u> RECEIVED BY THE SOLICITATION AGENT AT THE ABOVE ADDRESS BY THE VOTING DEADLINE.  THE DEBTORS RESERVE THE RIGHT TO DECIDE WHETHER OR NOT TO COUNT BALLOTS RECEIVED BY THE SOLICITATION AGENT AFTER THE VOTING DEADLINE.**

Please note that if the instructions on your ballot require you to return the ballot to your agent, financial institution, broker, or other nominee, or to their agent, you must deliver your ballot to the relevant party in sufficient time for the designated party to process the ballot and return it to the Solicitation Agent before the Voting Deadline.  If a ballot is damaged or lost, you may contact the Solicitation Agent to request another ballot.  Any ballot received by the Solicitation Agent which does not indicate an acceptance or rejection of the Plan will not be counted.

### 5. Cramdown

In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each such Impaired Class or Classes, the Plan "does not discriminate unfairly" and is "fair and equitable." The Debtors intend to invoke the cramdown provisions of § 1129(b) of the Bankruptcy Code as to any Impaired Class that does not accept the Plan. In the event one or more Classes does not accept the Plan, the Bankruptcy Court will determine at the Plan Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any such Impaired Classes of Claims.

### C. Means for Implementation of the Plan

### 1. Limited Substantive Consolidation

The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of the Plan, including voting on the Plan by the Holders of Claims and making any Distributions to Holders of Claims. The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of entity-specific Claims and Interests for which there would be no impact on distributions. On the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged; (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors; (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors; (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled; (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any Debtor hereunder will be deemed to be made by or on behalf of all of the Debtors; and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.

Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of Cash available for Distribution on account of such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth in the Plan, such limited substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors.

### 2. Means for Funding the Plan

### a. The Plan Funding

The following payments shall be paid from the Plan Funding at the following times and in the following order of priority: (a) the Committee Allocation Payment, on or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court; (b) the Debtors Allocation Payment, on or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court; (c) $185,274 to Debtors' chapter 11 counsel in payment of its Allowed and unpaid Compensation and Reimbursement Claims, on the Effective Date or as soon thereafter as is reasonably practicable;

(d) to Holders of Allowed and unpaid Administrative Expense Claims and Allowed and unpaid Compensation and Reimbursement Claims (other than the Compensation and Reimbursement Claims of the Committee's Professionals in these Chapter 11 Cases, which Claims shall be funded from the Committee Allocation Payment), on the Effective Date or as soon thereafter as is reasonably practicable; (e) to Holders of Allowed and unpaid Priority Tax Claims and Other Priority Claims, if any, on the Effective Date or as soon thereafter as is reasonably practicable; (f) the Administrative and Priority Claims Reserve Amount, on the Effective Date or as soon thereafter as is reasonably practicable; and (g) to Holders of Allowed and unpaid Secured Claims, if any, on the Effective Date or as soon thereafter as is reasonably practicable. Any Plan Funding remaining after all distributions in accordance with the preceding sentence have been made shall be distributed to the Creditor Trust and utilized in accordance with Sections 6.2.2 and 6.2.3 and the other provisions of the Plan. The Debtors and the Committee reserve all rights with respect to the priority of payment and final allocation of Plan Funding under Section 6.2.1(c)-(g) of the Plan.

### b.    The Committee Allocation Payment

On or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court, the Debtors shall transfer the Committee Allocation Payment to counsel for the Committee in these Chapter 11 Cases. Committee's counsel shall thereafter hold the Committee Allocation Payment in escrow and shall not disburse any of the Committee Allocation Payment except as provided in Section 6.2.2 or Section 10.3 of the Plan. Counsel for the Committee shall either (i) turn the Committee Allocation Payment over to the Creditor Trust on the Effective Date, or (ii) in the event the Plan is not confirmed, hold the Committee Allocation Payment in escrow pending further order of the Bankruptcy Court. Prior to the Effective Date, the Committee Allocation Payment may be utilized by the Committee solely to satisfy the Committee's Professionals fees and expenses in accordance with the terms of the Interim Compensation Order. On and after the Effective Date, the Committee Allocation Payment shall be utilized by the Creditor Trustee solely to (a) satisfy the Allowed Compensation and Reimbursement Claims of the Committee's Professionals incurred through the Effective Date of the Plan; (b) administer the Creditor Trust Assets for the benefit of Holders of Allowed General Unsecured Claims, including payment of all Trust Expenses; and (c) to the extent available after satisfaction of or establishing the one or more reserves for payment of the amounts set forth in clauses (a) and (b) of Section 6.2.2 of the Plan, to fund a Distribution to Holders of Allowed General Unsecured Claims.

### c.    The Debtors Allocation Payment

On or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court, the Debtors shall transfer the Debtors Allocation Payment to counsel for the Debtors in these Chapter 11 Cases. Debtors' chapter 11 counsel shall thereafter hold the Debtors Allocation Payment in escrow and shall not disburse any of the Debtors Allocation Payment except as provided in this Section 6.2.3 or Section 10.3 of the Plan. Counsel for the Debtors in these Chapter 11 Cases shall apply the Debtors Allocation Payment solely to (a) satisfy its Allowed Compensation and Reimbursement Claims incurred through the Effective Date of the Plan; (b) pay the fees and expenses set forth in Sections 6.4 and 8.2 of the Plan; and (c) reimburse Debtors' chapter 11 counsel for the first $25,000 of Production Costs (as defined in Section 6.7.8 of the Plan) incurred. Any of the Debtors Allocation Payment remaining after all of

the distributions in accordance with the preceding sentence have been made shall be distributed to the Creditor Trust.  Prior to the Effective Date, the Debtors Allocation Payment may be utilized by the Debtors' chapter 11 counsel solely to satisfy the Debtors' Professionals fees and expenses in accordance with the terms of the Interim Compensation Order.

### 3.    Corporate Action

#### a.    Transfer of and Vesting of Assets

On the Effective Date, except as otherwise expressly provided in the Plan, title to the Creditor Trust Assets (including specifically the Committee Allocation Payment, the rights to collect under the Debtors' existing insurance policies, including the primary director and officer liability, employment practices liability, or fiduciary liability insurance policies and any claims arising thereunder, and all Estate Claims) shall vest in the Creditor Trust free and clear of all Liens, encumbrances, or interests of any kind.  The Debtors are a party to the Asset Purchase Agreement. Except as otherwise provided in the Plan, and except to the extent inconsistent with the Plan, and otherwise subject to the terms of the Plan, the Creditor Trust shall succeed to all rights and interests provided to the Debtors and the Estates under the Asset Purchase Agreement to the extent permitted under the Asset Purchase Agreement.

The Committee shall have the power and authority to enter into the Creditor Trust Agreement on the Effective Date.

#### b.    Dissolution of the Debtors

On the Effective Date and upon (i) the Debtors, or such entity designated by the Debtors, making the Effective Date Distributions, (ii) the Debtors causing the Creditor Trust Assets to be transferred to the Creditor Trust in accordance with Section 6.3.1 of the Plan, and (iii) the Debtors' material completion of all other duties and functions set forth in the Plan as soon as practicable after the Effective Date,  the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned.  Upon completion of the Debtors' final tax return by the Responsible Officer and the entry of a final decree closing the Chapter 11 Cases, each of the Debtors shall be deemed dissolved for all purposes in accordance with applicable state law.

#### c.    Cancelation of Existing Securities and Agreements

Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed and assigned by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Plan (if any), on the Effective Date in accordance with the Plan, all instruments evidencing any Claims against the Debtors or Interest in the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors thereunder shall be discharged.  For the avoidance of doubt, all Claims and Interests in the Debtors, if any, held by Binda Italy shall be canceled.

**4.**      **Plan Transactions**

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors and the Creditor Trustee may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary or appropriate to effectuate the Plan (the "**Plan Transactions**"), including, but not limited to, (i) the execution and delivery of appropriate agreements or other documents of financing, merger, consolidation, restructuring, conversion, disposition, transfer, or dissolution, containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (ii) the execution and delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, duty or obligation on terms consistent with the Plan; (iii) the filing of appropriate dissolution documents or other corporate filings with the appropriate governmental authorities pursuant to applicable law; and (iv) any and all other actions that the Debtors or Creditor Trustee determine are necessary or appropriate.  All fees and expenses of the Debtors and their professionals incurred on and after the Effective Date in connection with the Plan Transactions in accordance with Section 6.4 of the Plan shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of the Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.

**5.**      **Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Debtors and the Creditor Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtors or Creditor Trustee, as applicable, and all Holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**6.**      **Authority to Act**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the states or jurisdictions in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### 7.    The Creditor Trust

#### a.    Establishment of the Creditor Trust

On the Effective Date, the Creditor Trust will be established pursuant to the Creditor Trust Agreement, which will be filed with the Bankruptcy Court on or before January 8, 2016.  Upon establishment of the Creditor Trust, all Creditor Trust Assets shall be deemed transferred to the Creditor Trust on the Effective Date without any further action of any of the Debtors or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.  The Creditor Trustee may elect for the Creditor Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Creditor Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the beneficiaries of the Creditor Trust.

#### b.    Transfer of Creditor Trust Assets to the Creditor Trust

Pursuant to Bankruptcy Code § 1141, all transfers and contributions made pursuant to Section 6 of the Plan shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Upon completion of the transfer of the Creditor Trust Assets to the Creditor Trust, the Debtors will have no further interest in, or with respect to, the Creditor Trust Assets, or the Creditor Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee and the Creditor Trust's beneficiaries) will treat the transfer of the Creditor Trust Assets to the Creditor Trust in accordance with the terms of the Plan, as a transfer to the Creditor Trust's beneficiaries, followed by a transfer by such Creditor Trust's beneficiaries to the Creditor Trust, and the Creditor Trust's beneficiaries will be treated as the grantors and owners thereof.

#### c.    Purpose of Creditor Trust

The Creditor Trust shall be established for the purpose of liquidating the Creditor Trust Assets, prosecuting any Estate Claims transferred to the Creditor Trust to maximize recoveries for the benefit of the Creditor Trust's beneficiaries, and making Distributions in accordance with the Plan to the Creditor Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Creditor Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Creditor Trust's beneficiaries treated as grantors and owners of the trust.

#### d.    Preservation of Rights

Under the Plan, the Creditor Trustee retains any and all rights of, and on behalf of, the Debtors, the Estates, and the Creditor Trust to commence and pursue any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Plan, Disclosure Statement, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Plan or the Confirmation Order act as *res judicata* or limit any of such rights of Creditor Trustee to commence and pursue any and all Estate Claims, including, without

limitation, setoff, offset and recoupment rights, to the extent the Creditor Trustee deems appropriate. Any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, may, but need not, be pursued by the Debtors prior to the Effective Date and by the Creditor Trustee after the Effective Date, to the extent warranted.

Unless an Estate Claim against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, including the Sale Order, the Debtors expressly reserve any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, for later enforcement and prosecution by the Creditor Trustee (including, without limitation, any Estate Claims set forth in the Plan Supplement, or not specifically identified in the Plan, in this Disclosure Statement, or otherwise, or which the Debtors may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Creditor Trust expressly reserves the right to pursue or adopt any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of the Plan or any Final Order.

The Debtors and the Creditor Trustee do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Estate Claims, including, without limitation, setoff, offset and recoupment rights, have not yet been pursued by the Debtors or are not set forth in the Plan, in this Disclosure Statement, or otherwise, that any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, has been waived or expunged.

### e.    Debtors' and Purchaser's Continued Cooperation

On or after the Effective Date, in accordance with the terms of the Responsible Officer Agreement and Asset Purchase Agreement (as applicable), the Debtors' Responsible Officer and the Purchaser shall provide reasonable and timely cooperation to effectuate the provisions of the Plan as the Creditor Trustee might otherwise reasonably request, including, but not limited to, executing such documents to carry out the terms of the Plan.

### f.    Creditor Trustee

i.    <u>Retention of Creditor Trustee</u>. The Creditor Trustee will be a disinterested Person designated by the Committee no later than the January 8, 2016. The Creditor Trustee shall file with the Bankruptcy Court an affidavit of disinterestedness. The Creditor Trustee shall carry out the duties as set forth in Section 6.7.6 of the Plan and in the Creditor Trust Agreement. Pursuant to Bankruptcy Code § 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Estate Claims in accordance with the best interests of and for the benefit of the Creditor

Trust's beneficiaries. In the event that the Creditor Trustee resigns, is removed, terminated or otherwise unable to serve as the Creditor Trustee, then a successor shall be appointed as set forth in the Creditor Trust Agreement. Any successor Creditor Trustee appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Creditor Trust Agreement.

        ii.    <u>Responsibilities and Authority of Creditor Trustee</u>. The responsibilities and authority of the Creditor Trustee shall include: (a) establishing reserves and investing Cash; (b) selling or otherwise liquidating non-Cash assets of the Creditor Trust; (c) retaining and paying professionals as necessary to carry out the purposes of the Creditor Trust; (d) preparing and filing tax returns for the Creditor Trust; (e) preparing and filing reports and other documents necessary to conclude and close these Chapter 11 Cases; (f) objecting to, reconciling, seeking to subordinate, compromising or settling any or all Claims and administering Distributions on account of Claims; (g) evaluating, filing, litigating, settling, or otherwise pursuing any Estate Claims; (h) abandoning any property of the Creditor Trust that cannot be sold or distributed economically; (i) making interim and final distributions of Creditor Trust Assets; (j) winding up the affairs of the Creditor Trust and dissolving it under applicable law; (k) destroying records; and (l) such other responsibilities as may be vested in the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

        iii.    <u>Powers of the Creditor Trustee</u>. The Creditor Trustee shall have the power and authority to perform the acts described in the Creditor Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth in Section 6.7.6 of the Plan, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Creditor Trustee to act as specifically authorized by any other provision of the Plan, the Creditor Trust Agreement, and/or any applicable law, and to act in such manner as the Creditor Trustee may deem necessary or appropriate to take any act deemed appropriate by the Creditor Trustee, including, without limitation, to discharge all obligations assumed by the Creditor Trustee or provided in the Plan and to conserve and protect the Creditor Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan. The Creditor Trustee shall have the power and authority without further approval by the Court to liquidate the Creditor Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Estate Claims, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with § 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Creditor Trust from funds held by the Creditor Trustee in accordance with the Plan and Creditor Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Creditor Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Estate Claims on behalf of the Creditor Trust without prior Bankruptcy Court approval but in accordance with the Creditor Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Creditor Trustee pursuant to the

Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan.  Except as expressly set forth in the Plan and in the Creditor Trust Agreement, the Creditor Trustee, on behalf of the Creditor Trust, shall have absolute discretion to pursue or not to pursue any Estate Claims as it determines is in the best interests of the Creditor Trust's beneficiaries and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  The Creditor Trustee may incur any reasonable and necessary expenses in liquidating and converting the Creditor Trust Assets to Cash.  Subject to the other terms and provisions of the Plan, including but not limited to Section 6.7.8 of the Plan concerning the Retained Privileges and the releases set forth in Section 11.8 of the Plan (including the releases of Jeffrey L. Gregg and Tadd Crane), the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Estate Claims and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.  Notwithstanding the preceding sentence or anything else in the Plan to the contrary, consistent with the releases contained in Section 11.8 of the Plan, the Creditor Trustee shall not make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based on any act or failure to act by Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively.

iv.    <u>Enforcement of Any Avoidance Actions and Other Causes of Action</u>.  Pursuant to Bankruptcy Code § 1123(b), the Creditor Trustee, on behalf of and for the benefit of the Creditor Trust's beneficiaries, shall be vested with and shall retain and may enforce any Avoidance Actions and other Estate Claims transferred to the Creditor Trust that were held by, through, or on behalf of the Debtors and/or the Estates against any other Person (except Jeffrey L. Gregg or Tadd Crane), arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Avoidance Actions and other Estate Claims are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.  For the avoidance of doubt, the Plan preserves and transfers to the Creditor Trust all Avoidance Actions that exist as of the Effective Date and that were not transferred to the Purchaser in connection with the Sale.  The recoveries from any Avoidance Actions and other Estate Claims transferred to the Creditor Trust will be deposited into the Creditor Trust and distributed in accordance with the Creditor Trust Agreement and the Plan.

v.    <u>Valuation of Assets</u>.  As soon as practicable after the Effective Date, the Creditor Trustee shall apprise the Creditor Trust's beneficiaries of the estimated value of the Creditor Trust Assets.  The valuation shall be used consistently by all parties (including the Creditor Trustee and the Creditor Trust's beneficiaries) for all federal income tax purposes.

vi.    <u>Compensation of Creditor Trustee</u>.  The Creditor Trustee shall be compensated as set forth in the Creditor Trust Agreement.  The Creditor Trustee shall fully comply with the terms, conditions and rights set forth in the Plan, the Confirmation Order and the

37

Creditor Trust Agreement. The Creditor Trustee shall not be required to file a fee application to receive compensation.

vii.     <u>Retention and Payment of Professionals</u>.  The Creditor Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Creditor Trustee in the performance of his or her duties and compensate such professionals from the Creditor Trust Assets as set forth in the Creditor Trust Agreement.

viii.    <u>Limitation of Liability of the Creditor Trustee</u>. The Creditor Trust shall indemnify the Creditor Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Creditor Trustee or his or her professionals may incur or sustain by reason of being or having been a Creditor Trustee or professionals of the Creditor Trustee for performing any functions incidental to such service; <u>provided</u>, <u>however</u>, the foregoing shall not relieve the Creditor Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

## g.  Trust Expenses

The Creditor Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Trust Expenses. All Trust Expenses shall be charged against and paid from the Creditor Trust Assets.

## h.  Privileges

Other than the Retained Privileges (defined below), on and subject to the terms of the Plan, all of the Debtors' privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to Estate Claims, in each instance arising on or after the later of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Estate Claim (but in no event more than six (6) years prior to the Petition Date) (the "**Transferred Privileges**"), shall be transferred, assigned and delivered to the Creditor Trust, without waiver, limitation or release, and shall vest with the Creditor Trust on the Effective Date and be jointly held by the Debtors and the Creditor Trust on and after the Effective Date; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to (a) any rights, claims, or causes of action sold to the Purchaser, (b) the preparation, filing or prosecution of these Chapter 11 Cases, (c) any negotiations with the Purchaser, the Committee, the DIP Lender, or the DIP Loan Agent, or (d) any Claims against Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively; <u>provided further</u>, that to the extent any Privileges (other than Retained Privileges) are jointly held by one or more Debtors and a non-Debtor other than the Creditor Trust, such Privileges shall not be considered Transferred Privileges and shall not be transferred, assigned and delivered to the Creditor Trust unless and until the Creditor Trustee obtains written consent from the non-Debtor holder of such joint privilege.

38

The Creditor Trust and Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges.  No Privilege shall be waived by disclosures to the Creditor Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Debtors and the Creditor Trust.

Notwithstanding the foregoing or anything else in the Plan or otherwise to the contrary, no Privileges other than the Transferred Privileges (all Privileges other than the Transferred Privileges being the "**Retained Privileges**") shall be transferred, assigned or delivered to the Creditor Trust and such Retained Privileges shall not vest with the Creditor Trust.  The Creditor Trust shall not hold nor be the beneficiary of any Retained Privileges or entitled in any way to assert any Retained Privileges, which shall be held solely by the Debtors.

The Creditor Trustee shall have until two (2) years after the Effective Date to request documents or information subject to the Transferred Privileges (each an "**Information Request**"); provided, however, that with respect to any action involving Transferred Privileges filed on or before two (2) years after the Effective Date, the Creditor Trustee may make an Information Request subject to the Transferred Privileges involved in such action until the final resolution of such action, including any appeals.  The reasonable costs and expenses incurred by the Debtors and/or their chapter 11 counsel, as applicable, in responding to or complying with any Information Requests from the Committee or the Creditor Trustee (the "**Production Costs**") shall be paid, without further order, as follows: (i) the first $25,000 of Production Costs shall be immediately paid from the following sources, if and when available, (A) the Debtors Allocation Payment, (B) the Administrative and Priority Claims Reserve, and (C) any recovery by the Creditor Trust, up to 10% of such recovery, on account of any and all Estate Claims to which the Information Requests relate after the Debtors and/or their chapter 11 counsel, as applicable, provide the Creditor Trustee with a statement setting forth the Production Costs to be reimbursed; and (ii) in all cases, all Production Costs after the first $25,000 shall be paid by the Creditor Trustee from the Creditor Trust Assets promptly, but in no event later than 10 Business Days, following the Debtors and/or their counsel, as applicable, providing the Creditor Trust with the documents or information subject to the Information Requests giving rise to such Production Costs.

To the extent of any conflict between Section 6.7.8 of the Plan and any other provision of the Plan relating to Privileges, Section 6.7.8 of the Plan shall control.

### i.    Retention of Documents

The Creditor Trust will retain those documents maintained by the Debtors in the ordinary course of business which were not otherwise transferred to the Purchaser in connection with the Sale.  Following the Effective Date, the Creditor Trustee shall be authorized to destroy any documents it deems necessary or appropriate in its reasonable judgment; provided, however, that the Creditor Trustee shall not destroy any documents, including but not limited to tax documents, that the Creditor Trust is required to retain under applicable law.

### j.  Termination of Creditor Trust

The Creditor Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Creditor Trust's beneficiaries and the third anniversary of the creation of the Creditor Trust, provided that the Creditor Trustee shall, in its sole discretion, be authorized to extend the dissolution date to the fifth anniversary of the creation of the Creditor Trust with prior Bankruptcy Court approval.  If warranted by the facts and circumstances involved in resolving any Estate Claims, upon application to, and if approved by, the Bankruptcy Court upon a finding such further extension is necessary for purposes of resolving such Estate Claims and distributing the proceeds to Creditor Trust's beneficiaries, the term of the Creditor Trust may be further extended by the Creditor Trustee for a specified, finite term.  Notwithstanding the foregoing, the Creditor Trust shall be automatically terminated in the event that the Chapter 11 Cases are converted or dismissed.

### k.  Exculpation Relating to Creditor Trust

No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any claim or cause of action against the Creditor Trustee, the Creditor Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan or the Creditor Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

### 8.    Administrative and Priority Claims Reserve

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors shall turn over to the Creditor Trust the Administrative and Priority Claims Reserve Amount and the Creditor Trustee shall establish the Administrative and Priority Claims Reserve with an authorized depository in the Southern District of New York in the amount of the Administrative and Priority Claims Reserve Amount.  Funds in the Administrative and Priority Claims Reserve shall be used by the Creditor Trustee only for the payment of Administrative Expense Claims Allowed after the Effective Date, Compensation and Reimbursement Claims Allowed after the Effective Date (other than the Compensation and Reimbursement Claims of the Committee's Professionals, which Claims shall be funded from the Committee Allocation Payment), Priority Tax Claims Allowed after the Effective Date, Other Priority Claims Allowed after the Effective Date, Secured Tax Claims Allowed after the Effective Date, Other Secured Claims Allowed after the Effective Date, Production Costs (as set forth in Section 6.7.8 of the Plan), and the fees and expenses of the Debtors and their Professionals permitted under the Plan, to the extent that the foregoing Claims have not been paid in full on or prior to the Effective Date or otherwise in accordance with the Plan.  On the date that is the later of (i) 90 days after the Effective Date and (ii) the date the foregoing Claims are resolved by Final Orders entered by the Bankruptcy Court, if and to the extent any funds remain in the Administrative and Priority Claims Reserve after all of the foregoing Allowed Claims have been paid or otherwise satisfied in full, then such remaining funds shall be distributed to the Creditor Trustee for the benefit of the Creditor Trust and its beneficiaries in accordance with the Plan.

### D.    Distributions under the Plan

#### 1.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Debtors or the Creditor Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtors, the Creditor Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

#### 2.    Date of Distributions

Except as otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

#### 3.    Postpetition Interest on Claims

Except as may be otherwise expressly provided in the Plan, including in Section 2.4 of the Plan, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of any such Claim against the Debtors shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

#### 4.    Disbursing Agent

All Distributions under the Plan shall be made by the Debtors, the Creditor Trustee, or their named successor or assign, as Disbursing Agent, on or after the Effective Date or as otherwise provided in the Plan.  For the avoidance of doubt, (i) the Debtors, or such other entity designated by the Debtors, shall act as Disbursing Agent with respect to all Effective Date Distributions, and (ii) the Creditor Trustee, or such other entity designated by the Creditor Trustee, shall act as Disbursing Agent with respect to all General Unsecured Claims.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

### 5.     Powers of Disbursing Agent

The Disbursing Agent may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (ii) make all Distributions contemplated hereby; and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

### 6.     Surrender of Instruments

Pursuant to Bankruptcy Code § 1143, as a condition precedent to receiving any Distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Confirmation Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution under the Plan.

### 7.     Delivery of Distributions

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees.  If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified, in writing, by the Holder of the current address of such Holder within 90 days of such Distribution, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of 90 days from the Distribution.  After such date, all unclaimed property or interest in property shall revert to the Creditor Trust to be distributed in accordance with the terms of the Creditor Trust Agreement and the Plan, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 8.     Manner of Payment

Any Distributions to be made by or on behalf of the Debtors pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtors or the Creditor Trustee, as applicable, or by wire transfer if circumstances justify, at the option of the Debtors or the Creditor Trustee, as applicable.

### 9.     Setoffs

The Debtors and the Creditor Trustee, pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court and upon no less than three days' notice to the applicable Holder of a Claim or

Interest, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtors may have against the Holder of such Allowed Claim or Interest, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Debtors or the Creditor Trustee of any such claim the Debtors may have against the Holder of such Claim or Interest.

### 10. Minimum Distributions

No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Creditor Trust Agreement.  If the Cash available for the final Distribution is less than $15,000, and the Creditor Trustee, in his or her sole discretion, determines that it would cost more than $5,000 to distribute such funds, the Creditor Trustee may donate such funds to the charity of his or her choice.

### 11. Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 12. Distributions Fee and Clear

Except as otherwise provided in the Plan, any Distribution or transfer made under the Plan, including, without limitation, Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to the Plan.

### E. Procedures for Disputed Claims

### 1. Allowance of Claims and Interests

Except as expressly provided in the Plan, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.  On or after the Effective Date, the Creditor Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

## 2.    Objections to Claims

On and after the Effective Date, the Debtors, solely with respect to Claims other than General Unsecured Claims, and the Creditor Trustee, with respect to all Claims and Interests, shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests, including Claims listed on the Debtors' Schedules, under the Plan, or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) 180 days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object. All fees and expenses of the Debtors and their professionals incurred on and after the Effective Date in connection with the filing and prosecuting of objections to Claims (other than General Unsecured Claims) in accordance with Section 8.2 of the Plan shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of the Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of the Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.

## 3.    Estimation of Claims

Before the Effective Date, the Debtors and Committee, and, on or after the Effective Date, the Creditor Trustee, may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim. Before the Effective Date, the Debtors, and, on or after the Effective Date, the Creditor Trustee, are further authorized to file a Proof of Claim or Interest as provided under § 501(c) of the Bankruptcy Code.

## 4.    Distributions Relating to Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims in the same Class.

## 5.    Distributions after Allowance

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy

Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled under the Plan.

### 6.    Preservations of Rights to Settle Claims

Except as otherwise expressly provided in the Plan, including in Section 11.8 of the Plan, nothing contained in the Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have or which the Creditor Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates. Section 8.6 of the Plan shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under the Plan or pursuant to a Final Order, expressly including the Sale Order. Except as expressly provided in the Plan, nothing contained in the Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Creditor Trustee, as applicable, will not pursue any and all available causes of action against them. The Debtors and the Creditor Trustee expressly reserve all rights to prosecute any and all causes of action against any Person or Entity, except as otherwise expressly provided in the Plan.

### 7.    Disallowed Claims

All Claims held by Persons or Entities against whom or which any Debtor has commenced a proceeding asserting a cause of action under §§ 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under § 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed Claims pursuant to § 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims deemed disallowed pursuant to Section 8.7 of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Creditor Trustee from such party have been paid.

### F.    Executory Contracts and Unexpired Leases

### 1.    General Treatment under the Plan

All executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected as of the Effective Date except for an executory contract or unexpired lease that (i) previously has been assumed pursuant to Final Order of the Bankruptcy Court; (ii) is specifically designated as an executory contract or unexpired lease to be assumed in the Plan or in any Plan Supplement; or (iii) is the subject of a separate assumption notice or other motion filed by the Debtors under § 365 of the Bankruptcy Code prior to the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person or Entity.

### 2.    Rejection Damages Claims

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in a Rejection Damages Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Damages Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Creditor Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Creditor Trustee on or before the date that is 30 days after the Effective Date or such later rejection date that occurs in accordance with Section 9.4 of the Plan.  All Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to the terms of the Plan.

### 3.    Insurance Policies

To the extent that any and all of the Debtors' insurance policies that were not transferred to the Purchaser pursuant to the Asset Purchase Agreement, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies, shall be deemed assumed and assigned to the Creditor Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy.  For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract and was not transferred to the Purchaser pursuant to the Asset Purchase Agreement, and all rights under any other insurance policies that were not transferred to the Purchaser pursuant to the Asset Purchase Agreement and under which the Debtors may be beneficiaries, shall be preserved and shall vest with the Creditor Trust and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such insurance policies.  Further, for the avoidance of any doubt, the Creditor Trustee may bring or assert Estate Claims under the any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials, as those terms are used in the policies. Notwithstanding the preceding sentence or anything else in the Plan to the contrary, consistent with the releases contained in Section 11.8 of the Plan, the Creditor Trustee shall not make a claim under insurance policies, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, based on any act or failure to act by

Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively.

### 4.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan or Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Creditor Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, provided that, notwithstanding anything to the contrary in the Plan, any such dispute shall be resolved prior to the Confirmation Date.

### G.    Conditions Precedent to Effective Date

### 1.    Conditions Precedent

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(i)    the Confirmation Order in form and substance satisfactory to the Debtors and Committee shall have been entered by the Bankruptcy Court and shall be a Final Order;

(ii)    all actions, documents, and agreements necessary to implement the Plan, including, without limitation, all actions, documents, and agreements necessary to implement any Plan Transactions, shall have been effected or executed;

(iii)    the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions; and

(iv)    there shall have been no modification or stay of the Confirmation Order or entry of other court order prohibiting transactions contemplated by the Plan from being consummated.

### 2.    Waiver of Conditions

Unless otherwise specifically provided in the Plan, the conditions set forth in Section 10.1 of the Plan may be waived in whole or in part by the Debtors, in consultation with the Committee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 3.    Effect of Failure of Conditions

If the conditions precedent specified in Section 10.1 of the Plan have not been satisfied or waived by the Debtors within 120 days after the Confirmation Date, which period may be extended by the Debtors with the consent of the Committee, then (i) the Confirmation Order shall be vacated; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims and

Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any other Person or Entity in any further proceedings involving the Debtors or otherwise.

Notwithstanding the foregoing, in the event conditions precedent specified in Section 10.1 of the Plan have not been satisfied or waived, the Committee's counsel shall be permitted to continue holding the Committee Allocation Payment in escrow, which shall be used to (i) satisfy the allowed fees and expenses of the Committee's Professionals incurred through the dismissal or conversion of these Chapter 11 Cases; and (ii) effectuate and fund distributions to Holders of General Unsecured Claims through a structured dismissal or another mechanism to be proposed by the Committee.

Additionally, notwithstanding the foregoing, in the event conditions precedent specified in Section 10.1 of the Plan have not been satisfied or waived, the Debtors' chapter 11 counsel shall be permitted to continue holding the Debtors Allocation Payment in escrow, which shall be used to (i) satisfy the allowed fees and expenses of the Debtors' Professionals incurred through the dismissal or conversion of these Chapter 11 Cases; and (ii) effectuate and fund distributions to Holders of General Unsecured Claims through a structured dismissal or another mechanism to be proposed by the Committee.

## H.    Effect of Confirmation

### 1.    Vesting of Assets

On the Effective Date, except as otherwise provided in the Plan, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, subject to the rights and interests of the Creditor Trust's beneficiaries.

### 2.    Binding Effect

On the Effective Date, and effective as of the Effective Date, the Plan shall be binding upon the Debtors, the Committee, and all present and former Holders of Claims against and Interests in any Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Plan.

### 3.    Discharge of Claims and Termination of Interests

To the fullest extent provided under § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in,

the Estates, the Debtors, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. The Plan is a liquidating plan and, as provided in § 1141(d)(3) of the Bankruptcy Code, the confirmation of a plan does not discharge a debtor if the plan provides for the liquidation of all or substantially all of the property of the estate.

### 4.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

After the Effective Date, the Creditor Trustee, on behalf of the Debtors, may, and shall have the exclusive right to, compromise and settle any Claims and any Estate Claims against any other Person or Entity without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtors as of the Effective Date.

### 5.    Injunction

**Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the**

**Debtors or the Creditor Trust on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are retained pursuant to the Plan. Such injunction shall extend to successors of the Debtors, including, without limitation, the Creditor Trust and its properties and interests in property.**

### 6.    Term of Injunction or Stays

Except as otherwise provided in the Plan, to the extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan, (a) all injunctions with respect to or stays against an action against property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under §§ 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtors' Estates; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under §§ 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.

### 7.    Injunctions Against Interference with Plan

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtors, the Creditor Trust, the Creditor Trustee, and their respective affiliates, employees, advisors, officers and directors, agents, and other Related Persons.

### 8.    Debtor Releases

**EXCEPT AS OTHERWISE PROVIDED FOR IN THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE DEBTORS (ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE ESTATES), AS APPLICABLE, SHALL BE DEEMED TO HAVE RELEASED EACH OF (I) THEIR CHIEF RESTRUCTURING OFFICER; (II) THEIR RESPONSIBLE OFFICER; (III) THE COMMITTEE AND MEMBERS OF THE COMMITTEE IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE; (IV) THE DIP LENDER AND THE DIP LOAN AGENT AND THEIR RELATED PERSONS; AND (V) THE PROFESSIONALS AND THEIR RELATED PERSONS FROM ANY AND ALL CLAIMS, CAUSES OF ACTIONS, AND OTHER LIABILITIES ARISING DURING THESE CHAPTER 11 CASES BEFORE THE EFFECTIVE DATE FROM ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THESE CHAPTER 11 CASES AND RELATED PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, FILING OF THESE CHAPTER 11 CASES, ADMINISTRATION OF THESE CHAPTER 11 CASES, THE SALE, FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, APPROVAL, EXECUTION, ADMINISTRATION, CONFIRMATION, IMPLEMENTATION, OR CONSUMMATION OF, AS WELL AS THE SOLICITATION OF VOTES FOR, THE PLAN (INCLUDING ALL**

DISTRIBUTIONS THEREUNDER), THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE DEBTORS (ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE ESTATES) SHALL NOT BE DEEMED TO HAVE RELEASED ANY SUCH ENTITY FROM LIABILITY FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

ADDITIONALLY, ON THE EFFECTIVE DATE, JEFFREY L. GREGG AND TADD CRANE SHALL BE RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AVOIDANCE ACTIONS AND LIABILITIES WHICH THE DEBTORS OR THE CREDITOR TRUSTEE MAY OTHERWISE BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR THEREAFTER ARISING, BASED IN WHOLE OR IN PART UPON ANY, ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NEITHER JEFFREY L. GREGG NOR TADD CRANE SHALL BE RELEASED FROM ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES BASED UPON GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

9.    Releases by Holders of Claims and Interests

EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS (WHETHER OR NOT ALLOWED), AND EACH PERSON OR ENTITY PARTICIPATING IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THE PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST THE (I) DEBTORS; (II) THEIR CHIEF RESTRUCTURING OFFICER; (III) THEIR RESPONSIBLE OFFICER; (IV) THE COMMITTEE AND MEMBERS OF THE COMMITTEE IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE; (V) THE DIP LENDER AND THE DIP LOAN AGENT AND THEIR RELATED PERSONS; AND (VI) THE PROFESSIONALS AND THEIR RELATED PERSONS ARISING PRIOR TO THE EFFECTIVE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, NOTHING IN SECTION 11.9 OF THE PLAN SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

FURTHER, NOTHING IN THE PLAN SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY, NOR SHALL ANYTHING IN THE PLAN ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDING AGAINST THE PARTIES REFERRED TO IN THE PLAN FOR ANY LIABILITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND

**LOCAL AUTHORITY, NOR SHALL ANYTHING IN THE PLAN EXCULPATE ANY PARTY FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY FOR LIABILITIES ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE PARTIES REFERRED TO IN THE PLAN.**

### 10. Exculpation

**Except as otherwise provided for in the Plan, none of (i) the Debtors, their Chief Restructuring Officer and Responsible Officer; (ii) the Committee and members of the Committee in their capacity as members of the Committee; (iii) the Creditor Trust and Creditor Trustee; or (iv) Professionals shall have or incur any liability to any Holder of any Claim or Interest, or any other Entity, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases and related proceedings, including, but not limited to, filing of the Chapter 11 Cases, administration of the Chapter 11 Cases, the Sale, formulation, negotiation, preparation, dissemination, approval, execution, administration, confirmation, implementation, or consummation of, as well as the solicitation of votes for, the Plan (including all Distributions thereunder), the Disclosure Statement, or the Plan Supplement; <u>except</u> for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice; and, in all respects, the Debtors, the Committee and its members, the Creditor Trust, the Creditor Trustee, and each of their respective members, officers, directors, employees, advisors, professionals, attorneys, agents, and other Related Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

### 11. Release of Liens

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged.

### 12. Dissolution of Committee

On the first (1st) Business Date following the Effective Date, and provided that the Creditor Trust has become effective pursuant to the Plan, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with Bankruptcy Code § 1103 will be released and discharged from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Cases, <u>except</u> with respect to (i) prosecuting applications for professionals' compensation or reimbursement of expenses incurred as a member of the Committee; (ii) asserting, disputing and participating in the resolution of Compensation and Reimbursement Claims; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.  Upon the conclusion of (i) through (iii), the Committee shall be immediately dissolved, released, and

discharged.  The Professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the first (1st) Business Day on behalf of the Committee following the Effective Date, except for services rendered and expenses incurred, as approved by the Court, in connection with (i) prosecuting applications for professionals' compensation; (ii) asserting, disputing and participating in the resolution of Compensation and Reimbursement Claims or reimbursement of expenses incurred as a member of the Committee; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

## I.    Retention of Jurisdiction

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(i)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(ii)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date by the Debtors, Committee or Creditor Trustee;

(iii)   to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(iv)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(v)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(vi)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(vii)   to hear and determine any application to modify the Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(viii)  to hear and determine all applications under §§ 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(ix)     to hear and determine all requests for payment of Administrative Expense Claims;

(x)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(xi)     to hear, determine and adjudicate any litigation involving the Estate Claims;

(xii)    to consider requests for extensions of the term of the Creditor Trust as provided in the Plan;

(xiii)   to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(xiv)    to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve, personal injury, employment litigation, and similar claims pursuant to § 105(a) of the Bankruptcy Code;

(xv)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xvi)    to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under § 505(b) of the Bankruptcy Code);

(xvii)   to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(xviii)  to enter a final decree closing the Chapter 11 Cases;

(xix)    to recover all assets of the Debtors and property of the Debtors' wherever located; and

(xx)     to hear and determine any rights, claims, or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

**J.    Miscellaneous Provisions of the Plan**

**1.    Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930 and any applicable interest thereon that are due and payable as of the Effective Date shall be paid by the Debtors on the Effective Date or as soon thereafter as is reasonably practicable from the Plan Funding. All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Creditor Trustee from the Creditor Trust Assets when such fees become due and payable. All

54

such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Cases or conversion or dismissal of the Chapter 11 Cases, whichever is earlier.

### 2.    Substantial Consummation

The Plan shall be deemed to be substantially consummated within the meaning of § 1101 and pursuant to § 1127(b) of the Bankruptcy Code upon the commencement of Effective Date Distributions to be made under the Plan on the Effective Date.

### 3.    Operations between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as Debtors in Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. After the Effective Date, the Creditor Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the 15th day of January, April, July, and October as appropriate, and in accordance with the provisions of Rule 3021-1 of the Local Bankruptcy Rules, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

### 4.    Tax Treatment of the Creditor Trust

The Creditor Trust is intended to qualify as a Creditor Trust for U.S. federal income tax purposes that will be treated as a pass-through entity. All parties must treat the transfer of the Creditor Trust Assets to the Creditor Trust as a transfer of such assets directly to the beneficiaries of the Creditor Trust, followed by the transfer of such assets by each beneficiary to the Creditor Trust. Consistent therewith, all parties must treat the Creditor Trust as a grantor trust of which the Creditor Trust's beneficiaries are the owners and grantors. Assuming the Creditor Trust is treated as a Creditor Trust, the beneficiaries of Creditor Trust generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Creditor Trust Assets. The Creditor Trustee will determine the fair market value of the Creditor Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

### 5.    Determination of Tax Liabilities

The Debtors through the Responsible Officer shall, pursuant to § 505(b) of the Bankruptcy Code, have the right to request an expedited determination of any unpaid liability of the Debtors' Estates for any tax incurred during the administration of the Chapter 11 Cases. As of the Effective Date, the Responsible Officer will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates; provided, however, that the Responsible Officer shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be canceled pursuant to the Plan), but shall provide such Holders with any information reasonably required to prepare such forms.

### 6.    Modifications to Plan and Plan Supplement

The Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Debtors in the manner provided for by § 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to § 1125 of the Bankruptcy Code, underlined provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to the Plan or the Plan Supplement.  In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

### 7.    Other Amendments

The Debtors may make appropriate technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 8.    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. Any such action may only be taken if it is in the exercise of the Debtors' fiduciary duty to their creditors. If the Debtors take such action, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall constitute or be deemed to be a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

### 9.    Continuing Exclusivity of Debtors' Right to Propose Plan

The Debtors are currently operating within the exclusivity period under Bankruptcy Code § 1121.  Accordingly, the Debtors retain, and the Debtors have, the exclusive right to amend or modify the Plan and to solicit acceptances of such amended or modified Plan.

### 10.    Severability

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.    **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

12.    **Time**

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by the Plan unless otherwise set forth in the Plan or provided by the Bankruptcy Court.

13.    **Binding Effect on Debtors, Holders and Successors and Assigns**

Upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Committee, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or are deemed to accept or reject the Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, and injunctions described in the Plan, each Person or Entity acquiring or retaining property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired lease with the Debtors.

14.    **Entire Agreement**

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

15.    **Section 1125(e) Good Faith Compliance**

The Debtors and each of their respective Related Persons shall be deemed to have acted in good faith under § 1125(e) of the Bankruptcy Code.

16.    **Notices**

All notices, requests, and demands to or upon the Debtors or the Committee in the Chapter 11 Cases shall be in writing and, unless otherwise provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

(i)    If to the Debtors, to:

Venable LLP
1270 Avenue of the Americas
New York, New York 10020

Attn:   Rishi Kapoor
Telephone:      (212) 307-5500
Facsimile:      (212) 307-5598

with a copy to:

Venable LLP
575 7th Street, NW
Washington, DC 20004
Attn:   Andrew J. Currie
Telephone:      (202) 344-4586
Facsimile:      (202) 344-8300

(ii)    If to the Committee or the Creditor Trust, to:

Arent Fox LLP
1675 Broadway
New York, New York 10019
Attn:   Robert M. Hirsh
        George Angelich
        Jordana Renert
Telephone:      (212) 457-5430
Facsimile:      (212) 484-3990

## V.    RISKS AND CONSIDERATIONS

### A.    Bankruptcy Considerations

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in Section 10.1 of the Plan, and there can be no assurance that such conditions will be satisfied or waived.  In the event the conditions precedent described in Section 10.1 of the Plan have not been satisfied or waived (to the extent possible) by the Debtors (as provided for in the Plan) within 120 days after the Plan Confirmation Date, which period may be extended by the Debtors in consultation with the Committee, then the Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtors and all Holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of Claims and

58

Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created nine Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

As discussed in above in Section III(K), there is currently a dispute over the classification of the Claim of Binda SpA S.R.L., which may or may not be resolved before the hearing on confirmation. Similarly, non-debtor affiliate AWC Far East may also have identical issues. The Debtors have classified the Claim of Binda SpA S.R.L. as a Class 7 Intercompany Claim. The Debtors believe that this classification is appropriate because (a) Binda SpA S.R.L. is an Insider; and (b) the Claim of Binda SpA S.R.L. is based on amounts allegedly owing under a loan agreement between Binda SpA S.R.L. and AWC, that the Debtors characterized for accounting purposes differently than amounts owing to the Debtors' general unsecured creditors, which are comprised primarily of trade creditors and customers. The Debtors further believe that the Claim of Binda SpA S.R.L. is (i) potentially subject to recharacterization, setoff, counterclaims, recoupment, equitable subordination, objections under § 502(d) of the Bankruptcy Code, or otherwise; and (ii) subject to International, European, or other banking rules and regulations. Binda SpA S.R.L. disagrees with the Debtors' classification of the Binda SpA S.R.L. Claim in Class 7 (Intercompany Claims), and believes that its Claim should instead be classified as a Class 5 General Unsecured Claim under the Plan. Binda SpA S.R.L. has further informed the Debtors that it (x) believes its Claim will be Allowed in the full amount asserted and that it has full and complete defenses to any challenge thereto, and (y) intends to object to confirmation of the Plan for, among other reasons, the improper classification of its Claim in Class 7 (Intercompany Claims).

While the Debtors believe they have properly classified the Claims of Binda SpA S.R.L. and AWC Far East in Class 7 (Intercompany Claims), in the event either (a) objections to Plan confirmation by Binda SpA S.R.L. and/or AWC Far East are sustained by the Bankruptcy Court, thus resulting either in (i) the Plan being rendered unconfirmable, or (ii) the reclassification of the Claims of Binda SpA S.R.L. and/or AWC Far East as Class 5 General Unsecured Claims, and/or (b) the Claims of Binda SpA S.R.L. and/or AWC Far East are ultimately Allowed as a Class 7 Intercompany Claims but treated as a Class 5 General Unsecured Claims for Distribution purposes (unless consensual terms are agreed upon), the result will be a significant, negative impact on creditor recoveries under the Plan. Although it is impossible to predict the exact economic impact on creditors, failure to confirm the Plan may result in the "alternatives to confirmation" discussed herein, which may result in significantly less recovery for the Holders of Allowed Claims than provided under the Plan. To the extent the Claims of Binda SpA S.R.L. and/or AWC Far East are ultimately Allowed, classification of such Claims in Class 7 may result in recoveries for Holders of Allowed Class 5 Claims at the lower end of the range specified in the Plan if Allowed Class 7 Claims are treated as Class 5 Claims for purposes of Distributions under the Plan or the Court otherwise orders such treatment. The Debtors believe, however, that the Plan's classification scheme minimizes the risk to confirmation by classifying the Claims of Binda SpA S.R.L. and AWC Far East in Class 7 (Intercompany Claims) as currently proposed.

The Plan provides for no Distribution to certain Classes as specified in Sections 3 and 4 of the Plan. The Bankruptcy Code conclusively deems these Classes to have rejected the Plan. Pursuant to § 1129(a)(10) of the Bankruptcy Code, notwithstanding the fact that these Classes are

deemed to have rejected the Plan, the Bankruptcy Court may confirm the Plan if at least one Impaired Class votes to accept the Plan (with such acceptance being determined without including the vote of any "insider" in such class). As to each Impaired Class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to these Classes. The Debtors believe that the Plan satisfies these requirements.

### B.        No Duty to Update Disclosures

The Debtors have no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified in the Plan, or unless the Debtors are required to do so pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### C.        Representations Outside this Disclosure Statement

This Disclosure Statement contains representations concerning or related to the Debtors and the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by Holders of Claims or Interests that are entitled to vote to accept or reject the Plan.

### D.        No Admission

The information and representations contained in the Plan shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Debtors or Holders of Claims and Interests.

## VI.    PLAN CONFIRMATION AND CONSUMMATION

### A.        Plan Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a Plan. On, or as promptly as practicable after the filing of the Plan and this Disclosure Statement, the Debtors will request pursuant to the requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Plan Confirmation Hearing. Notice of the Plan Confirmation Hearing will be provided to all known creditors, equity holders or their representatives. The Plan Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Plan Confirmation Hearing or any subsequent adjourned Plan Confirmation Hearing.

Pursuant to Bankruptcy Code § 1128(b), any party in interest may object to confirmation of a plan of reorganization. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the particular Debtor or Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the

Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon: (i) counsel to the Debtors (Andrew J. Currie, Venable LLP, 575 7th Street, NW, Washington, DC 20004, rkapoor@venable.com, ajcurrie@venable.com); (ii) counsel for the DIP Loan Agent (Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Daniel F. Fiorillo, Esq., Fax: (212) 682-6104); (iii) counsel to the Committee (Arent Fox LLP, 1675 Broadway, New York, NY 10019, Attn: Robert M. Hirsh, robert.hirsh@arentfox; George Angelich, george.angelich@arentfox.com; Jordana Renert, jordana.renert@arentfox.com); (iv) the U.S. Trustee; and (v) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan. **UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO CONFIRM THE PLAN.**

### B.    Plan Confirmation Requirements under the Bankruptcy Code

At the Plan Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in § 1129 of the Bankruptcy Code.  The Debtors believe that the Plan satisfies or will satisfy the following requirements of § 1129, certain of which are discussed in more detail below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code.

- The Plan is proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the Debtors or by a person acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment: (i) made before the confirmation of the Plan is reasonable; or (ii) is subject to the approval of the Bankruptcy Court as reasonable, if such payment is to be fixed after confirmation of the Plan.

- Each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such holder's Claim or Interest, property of a value as of the Effective Date that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

- Except to the extent the Plan meets the requirements of § 1129(b) of the Bankruptcy Code, each Class of Claims or Interests either has accepted the Plan or is not an Impaired Class under the Plan.

61

- Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid in full as required by the Bankruptcy Code.

## C.    Plan Consummation

Upon confirmation of the Plan by the Bankruptcy Court, the Plan will be deemed consummated on the Effective Date.  Distributions to Holders of Claims receiving a Distribution pursuant to the terms of the Plan will follow consummation of the Plan.

## D.    Best Interests of Creditors Test

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The Debtors' costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code.  Other costs of liquidating the Debtors' Estates would include the expenses incurred during the bankruptcy cases and allowed by the Bankruptcy Court in the chapter 7 case, such as reimbursable compensation for the Debtors' professionals, including, but not limited to, attorneys, financial advisors, appraisers, accountants.

The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards pre-chapter 11 priority and unsecured claims.  The Debtors believe that in a chapter 7 liquidation, Holders of Claims and Interests would receive less distribution that such Holders would receive under the Plan.

## E.    Liquidation Analysis

As noted above, the Debtors believe that under the proposed terms of the Plan all Holders of Impaired Claims and Interests will receive property with a value not less than the value such Holders would receive in a chapter 7 liquidation of the Debtors' assets.  The Debtors' belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Holders of Impaired Claims and Interests, including (a) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a chapter 7 trustee and professional advisors to the trustee and (b) the substantial delay in Distributions to the Holders of Impaired Claims and Interests that would likely ensue in a chapter 7 liquidation, and (ii) the liquidation analysis (the "**Liquidation Analysis**") prepared by the Debtors' Professionals, which is attached as **Exhibit B** to this Disclosure Statement.

The Debtors believe that any liquidation analysis is speculative, as such an analysis necessarily is premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. Thus, there can be no assurance as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtors' conclusions or concur with such assumptions in making its determinations under § 1129(a)(7) of the Bankruptcy Code.

For example, the Liquidation Analysis necessarily contains an estimate of the amount of Claims which will ultimately become Allowed Claims. This estimate is based solely upon the Debtors' review of its books and records and the Debtors' estimates as to additional Claims that may be filed in the Chapter 11 Cases or that would arise in the event of a conversion of the case from chapter 11 to chapter 7. No order or finding has been entered by the Bankruptcy Court or any other court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors have projected an amount of Allowed Claims that is at the lower end of a range of reasonableness such that, for purposes of the Liquidation Analysis, the largest possible liquidation dividend to holders of Allowed Claims can be assessed. The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including any determination of the value of any Distribution to be made on account of Allowed Claims under the Plan.

The Liquidation Analysis is being provided solely to disclose to Holders of Claims the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein.

## F.        Feasibility

Pursuant to § 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, all of the Debtors' Assets that were not sold to the Purchaser under the Asset Purchase Agreement are being transferred to the Creditor Trust to be liquidated and distributed to the Creditor Trust's beneficiaries. Therefore, the Bankruptcy Court's confirmation of the Plan is not likely to be followed by liquidation or the need for any further reorganization.

## G.        Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in Article VI.H below, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. As a general matter under the Bankruptcy Code, a class is "impaired," unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such claim or equity interest; or (c) provides that, on the consummation date, the holder of such claim or equity

interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds (2/3) in amount and a majority in number actually voting cast their ballots in favor of acceptance. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Claims in Classes 1, 2, 3, and 4 are not Impaired under the Plan and, as a result, the Holders of such Claims are deemed to have accepted the Plan. Any Class of Claims that is not occupied as of the commencement of the Plan Confirmation Hearing by an Allowed Claim shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code. If no votes to accept or reject the Plan are received with respect to a Class whose votes have been solicited under the Plan (other than a Class that is deemed eliminated under the Plan), such Class shall be deemed to have voted to accept the Plan.

### H. Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a class of impaired claims or interests votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

#### 1. No Unfair Discrimination

The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of claims or interests that are of equal priority, but are receiving different treatment under the plan.

#### 2. Fair and Equitable

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured. The plan satisfies the fair and equitable requirement if no Class of Claims receives more than 100% of the allowed amount of the Claims in such Class. Further, if a Class of Claims is considered a dissenting Class ("**Dissenting Class**"), i.e., a Class of Claims that is deemed to reject the Plan because the required majorities in amount and number of votes is not received from the Class, the following requirements apply:

### a.    Class of Secured Claims

Each holder of an impaired secured Claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its secured Claim and receives deferred cash payments having a value, as of the effective date of the plan of at least the allowed amount of such Claim, (ii) has the right to credit bid the amount of its Claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof), or (iii) receives the "indubitable equivalent" of its allowed secured Claim.

### b.    Class of Unsecured Creditors

Either (i) each holder of an impaired unsecured Claim receives or retains under the plan property of a value equal to the amount of its allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the Dissenting Class will not receive any property under the Plan.

### c.    Class of Interests

Either (i) each interest holder will receive or retain under the plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock, or (ii) the holders of interests that are junior to the interests of the Dissenting Class will not receive any property under the plan.

The Debtors believe the Plan does not "discriminate unfairly" and will satisfy the "fair and equitable" requirement notwithstanding that certain Classes of Claims are deemed to reject the Plan because no Class that is junior to such Class will receive or retain any property on account of the Claims and Interests in such Class and the Plan not provide for unfair treatment with respect to Classes of Claims or Interests that are of equal priority.

## VII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors believe the Plan is in the best interests of creditors and should accordingly be accepted and confirmed. If the Plan as proposed, however, is not confirmed, the following alternatives may be available to the Debtors: (i) a liquidation of the Debtors' assets pursuant to chapter 7 of the Bankruptcy Code; (ii) an alternative chapter 11 plan may be proposed and confirmed; or (iii) the Debtors' Chapter 11 Cases may be dismissed.

### A.    Chapter 7 Liquidation

If a plan pursuant to chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Cases may be converted to liquidation cases under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed pursuant to applicable provisions of chapter 7 of the Bankruptcy Code to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effect that a chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Article VI of the Plan. The Debtors believe that such a liquidation would result in smaller

distributions being made to the Debtors' creditors than those provided for in the Plan because (i) the Debtors' litigation claims would be monetized in a less orderly fashion, (ii) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (iii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation.

### B.    Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code

If the Plan is not confirmed, the Debtors, or any party in interest (if, pursuant to § 1121 of the Bankruptcy Code, the Debtors have not filed a plan within the time period prescribed under the Bankruptcy Code) may propose a different plan.  Such a plan might involve an alternative means for the liquidation of the Debtors' assets in a chapter 11 bankruptcy proceeding.  However, in light of the extensive negotiations with the key parties in these Chapter 11 Cases, the Debtors believe that the terms of the Plan provide for an orderly and efficient liquidation of the Debtors' assets and will result in the realization of the most value for Holders of Claims and Interests against the Debtors' Estates.

### C.    Dismissal of the Debtors' Chapter 11 Cases

Dismissal of all of the Debtors' Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the *status quo ante*.  Upon dismissal of all of the Debtors' Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the various creditors of the Debtors, and possibly resulting in costly and protracted litigation in various jurisdictions.  Dismissal will also permit unpaid unsecured creditors to obtain and enforce judgments against the Debtors.  The Debtors believe that these actions could lead ultimately to the liquidation of the Debtors under chapter 7 of the Bankruptcy Code.  Therefore, the Debtors believe that dismissal of the Debtors' Chapter 11 Cases is not a preferable alternative to the Plan.

## VIII.  CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

The following is a summary of certain United States federal income tax consequences of the Plan to the Debtors and certain Holders of Allowed Claims.  This summary is based on the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**"), Treasury Regulations thereunder ("**Treasury Regulations**"), and administrative and judicial interpretations and practice, all as in effect on the date of this Disclosure Statement and all of which are subject to change, with possible retroactive effect.  Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below.  No opinion of counsel has been obtained and the Debtors do not intend to seek a ruling from the Internal Revenue Service as to any of the tax consequences of the Plan discussed below.  There can be no assurance that the Internal Revenue Service will not challenge one or more of the tax consequences of the Plan described below.

This summary does not apply to Holders of Allowed Claims that are not United States persons (as such term is defined in the Internal Revenue Code) or that are otherwise subject to special treatment under United States federal income tax law (including, without limitation, banks, governmental authorities or agencies, financial institutions, insurance companies, pass-through

entities, tax-exempt organizations, brokers and dealers in securities, mutual funds, small business investment companies, employees, persons holding Allowed Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale, or conversion transaction, and regulated investment companies).  Moreover, this summary does not purport to cover all aspects of United States federal income taxation that may apply to the Debtors and Holders of Allowed Claims based upon their particular circumstances.  Additionally, this summary does not discuss any tax consequences that may arise under any laws other than United States federal income tax law, including under state, local, or foreign tax law.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF ALLOWED CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

**INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE.   TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THIS DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

A.      **Certain United States Federal Income Tax Consequences to Holders of Allowed Claims**

1.      **Consequences to Holders of Allowed Class 1, Class 2, Class 3, and Class 4 Claims**

Pursuant to the Plan, Allowed Class 1, Class 2, Class 3, and Class 4 Claims will be exchanged for Cash.  A Holder who receives Cash in exchange for its Claim pursuant to the Plan generally will recognize income, gain, or loss for United States federal income tax purposes in an amount equal to the difference between (a) the amount of Cash received in exchange for its Claim and (b) the Holder's adjusted tax basis in its Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, the nature of the Claim in such Holder's hands, whether the Claim constitutes a capital asset in the hands of the Holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to its Claim.  See the discussions of "accrued interest" and "market discount" below.

### 2.    Consequences to Holders of Allowed Class 5 and 8 Claims

Pursuant to the Plan, the Debtors will liquidate and distribute certain assets to the Creditor Trust.  Each Holder of Allowed Class 5 and 8 Claims will be exchanged for their Pro Rata share of the beneficial interests in the Creditor Trust.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, pursuant to Treasury Regulation Section 301.7701-4(d) and related regulations, the Debtors believe that the Creditor Trust should be treated as a grantor trust setup for the benefit of the Holders of Class 5 and 8 Claims.  Holders that receive Creditor Trust interests will be treated for United States federal income tax purposes as receiving their pro rata share of the Creditor Trust Assets from the Debtors in a taxable exchange and then depositing them in the Creditor Trust in exchange for Creditor Trust interests.  Each such Holder should recognize gain or loss equal to the difference between (a) the fair market value of the Creditor Trust interests received in exchange for such Claims and (b) such Holder's adjusted tax basis in the Claims surrendered by such Holder.

The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, the nature of the Claim in such Holder's hands, whether the Claim constitutes a capital asset in the hands of the Holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to its Claim.  See the discussions of "accrued interest" and "market discount" below.  A Holder's tax basis in the Creditor Trust interests should equal their fair market value as of the Effective Date.  A Holder's holding period for the Creditor Trust interests should begin on the day following the Effective Date.

Holders of Class 5 and 8 Claims that receive Creditor Trust interests will be required to report in their United States federal income tax returns their share of the Creditor Trust's items of income, gain, loss, deduction, and credit in the year recognized by the Creditor Trust, which may include partnership income, gain, loss, deduction, and credit attributable to the equity consideration held by Creditor Trust.  This requirement may result in Holders being subject to tax on their allocable share of the Creditor Trust's taxable income prior to receiving any cash distributions from the Creditor Trust.

As noted above, this summary does not apply to Holders of Allowed Claims that are not United States persons, as such term is defined in the Internal Revenue Code ("**Non-U.S. Holders**").  The tax consequences to Non-U.S. Holders is complex and will vary depending on the circumstances and activities of such Holder.  Each Non-U.S. Holder of Class 5 or 8 Claims is urged to consult with its own tax advisor regarding the U.S. federal, state local and non-U.S. tax consequences of receipt of the Creditor Trust interests, including any tax consequences attributable to the equity consideration held by the Creditor Trust.

It is plausible that a Holder receiving the Creditor Trust interests could treat the transaction as an "open" transaction for United States federal tax purposes, in which case the recognition of any gain or loss on the transaction might be deferred pending the determination of the amount of the proceeds ultimately received from the Creditor Trust.  The United States federal income tax consequences of an open transaction are uncertain and highly complex, and a holder should consult with its own tax advisor if it believes open transaction treatment might be appropriate.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

### 3.     Accrued Interest

A portion of the consideration received by Holders of Allowed Claims may be attributable to accrued interest on such Claims.  Such amount should be taxable to that Holder as interest income if such accrued interest has not been previously included in the Holder's gross income for United States federal income tax purposes.  Conversely, Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest on the Claims was previously included in the Holder's gross income but was not paid in full by the Debtors.

If the fair value of the consideration is not sufficient to fully satisfy all principal and interest on Allowed Claims, the extent to which such consideration will be attributable to accrued interest is unclear.  Under the Plan, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims, if any.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for United States federal income tax purposes, while certain Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest and then as a payment of principal.  The Internal Revenue Service could take the position that the consideration received by the Holder should be allocated in some way other than as provided in the Plan.  Holders of Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED INTEREST.**

### 4.     Market Discount

Under the "market discount" provisions of the Internal Revenue Code, some or all of any gain realized by a Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim.  In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a de minimis amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

### 5.    Information Reporting and Backup Withholding

In general, information reporting requirements may apply to distributions or payments under the Plan. Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 28%) with respect to distributions or payments made pursuant to the Plan unless that Holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) timely provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided that the required information is timely provided to the Internal Revenue Service.

The Debtors, or the applicable withholding agent, will withhold all amounts required by law to be withheld from payments of interest. The Debtors will comply with all applicable reporting requirements of the Internal Revenue Service.

**THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTION CONTEMPLATED BY THE RESTRUCTURING, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

### B.    Certain United States Federal Income Tax Consequences to the Debtors

The Debtors may recognize taxable gain or loss as a result of consummation of the Plan upon the sale of its assets in an amount equal to the difference between the fair market value of the assets sold and the applicable Debtor's tax basis in such assets. Thus the amount of gain or loss recognized will depend on the value of the assets sold, which cannot be known with certainty until the Plan is consummated. It is possible the Debtors will recognize taxable income or gain in connection with consummation of the Plan and may not have sufficient net operating losses or other tax attributes to fully offset the amount of gain recognized, in which case the Debtors will be required to pay cash income taxes (federal and state) with respect to the amount of net income (and the Debtors' ability to apply net operating losses against the alternative minimum taxable income may subject to limitation) and will reduce the amount of Cash proceeds available to be distributed to Holders of the Allowed Claims.

### 1.    Cancellation of Debt Income

Under the Internal Revenue Code, a taxpayer generally recognizes cancellation of debt income ("**CODI**") to the extent that indebtedness of the taxpayer is cancelled for less than the amount owed by the taxpayer, subject to certain judicial or statutory exceptions.  The most significant of these exceptions with respect to the Debtors is that taxpayers who are operating under the jurisdiction of a federal bankruptcy court are not required to recognize such income.  In that case, however, the taxpayer must reduce its tax attributes, such as its net operating losses, general business credits, capital loss carryforwards, and tax basis in assets, by the amount of the CODI avoided.  In this case, the Debtors expect that they will recognize significant CODI from the implementation of the Plan.  As a result, the Debtors expect that their net operating losses will be reduced on account of such CODI.  However, since the Debtors intend to liquidate, any remaining net operating losses will have no ongoing value to the Debtors or to the Holders of Claims or Holdings Interests.

## IX.    RECOMMENDATION AND CONCLUSION

The Debtors believe the Plan is in the best interests of all creditors and the Estates and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots.

Dated:  December 16, 2015
       New York, New York

      Respectfully submitted,

      Advance Watch Company, Ltd.

      By:       */s/ Jeffrey L. Gregg*
          Jeffrey L. Gregg
          Chief Restructuring Officer

      Binda USA Holdings, Inc.

      By:       */s/ Jeffrey L. Gregg*
          Jeffrey L. Gregg
          Chief Restructuring Officer

      Sunburst Products, Inc.

      By:       */s/ Jeffrey L. Gregg*
          Jeffrey L. Gregg
          Chief Restructuring Officer

      GWG International, Ltd.

      By:       */s/ Jeffrey L. Gregg*
          Jeffrey L. Gregg
          Chief Restructuring Officer

**<u>EXHIBIT A</u>**
**The Plan**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                          :

In re:                                    :          Chapter 11
                                            :

ADVANCE WATCH COMPANY LTD., et al.,      :          Case No. 15-12690 (MG)
                                            :

                 Debtors.[1]                 :          Jointly Administered
                                            :

------------------------------------------------------------ x

**DEBTORS' FIRST AMENDED JOINT PLAN OF**
**LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Jeffrey S. Sabin                               Andrew J. Currie (admitted *pro hac vice*)
Rishi Kapoor                                Kendall A. Camuti (admitted *pro hac vice*)
VENABLE LLP                             VENABLE LLP
1270 Avenue of the Americas           575 7th Street, NW
New York, New York 10020             Washington, DC 20004
Telephone:     (212) 307-5500          Telephone: (202) 344-4000
Facsimile:      (212) 307-5598          Facsimile:   (202) 344-8300

*Counsel to the Debtors and Debtors in Possession*

**Dated:** December 15, 2015

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Advance Watch Company, Ltd. (8061); Binda USA Holdings, Inc. (8916); Sunburst Products, Inc. (5972); and GWG International, Ltd. (2468).

# TABLE OF CONTENTS

Section 1.    Definitions and Interpretation ................................................................. 1

  A.  Definitions ...................................................................................................... 1

  B.  Interpretation: Application of Definitions and Rules of Construction............................. 10

Section 2.    Administrative Expense and Priority Claims........................................................ 11

  2.1.    Administrative Expense Claims.......................................................................... 11

  2.2.    Compensation and Reimbursement Claims ............................................................ 12

  2.3.    Priority Tax Claims........................................................................................ 13

  2.4.    United States Trustee Fees ................................................................................ 13

  2.5.    DIP Facility Claim ........................................................................................ 13

Section 3.    Classification of Claims and Interests................................................................ 14

Section 4.    Treatment of Claims and Interest .................................................................... 15

  4.1.    Other Priority Claims (Class 1)......................................................................... 15

  4.2.    Secured Tax Claims (Class 2) .......................................................................... 16

  4.3.    Senior Secured Wells Claims (Class 3) ............................................................... 16

  4.4.    Other Secured Claims (Class 4) ........................................................................ 16

  4.5.    General Unsecured Claims (Class 5) ................................................................... 17

  4.6.    Subordinated Claims (Class 6).......................................................................... 18

  4.7.    Intercompany Claims (Class 7).......................................................................... 18

  4.8.    Litigation Claims (Class 8) .............................................................................. 18

  4.9.    Interests (Class 9)......................................................................................... 19

Section 5.    Acceptance or Rejection of the Plan ................................................................. 19

  5.1.    Impaired Classes .......................................................................................... 19

  5.2.    Acceptance by a Class ................................................................................... 20

  5.3.    Claims and Interests Not Entitled to Vote ............................................................ 20

Section 6.    Means for Implementation ........................................................................... 20

  6.1.    Limited Substantive Consolidation...................................................................... 20

  6.2.    Means for Funding the Plan ............................................................................. 21

  6.2.1.    The Plan Funding ..................................................................................... 21

  6.2.2.    The Committee Allocation Payment................................................................. 21

  6.2.3.    The Debtors Allocation Payment .................................................................... 22

  6.3.    Corporate Action.......................................................................................... 22

  6.3.1.    Transfer and Vesting of Assets ..................................................................... 22

6.3.2.     Dissolution of the Debtors .......................................................... 22

6.3.3.     Cancellation of Existing Securities and Agreements...................... 23

6.4.    Plan Transactions ............................................................................ 23

6.5.    Effectuating Documents and Further Transactions............................. 23

6.6.    Authority to Act .............................................................................. 24

6.7.    The Creditor Trust ........................................................................... 24

6.7.1.     Establishment of the Creditor Trust ........................................... 24

6.7.2.     Transfer of Creditor Trust Assets to the Creditor Trust................. 24

6.7.3.     Purpose of Creditor Trust......................................................... 24

6.7.4.     Preservation of Rights ............................................................. 25

6.7.5.     Debtors' and Purchaser's Continued Cooperation......................... 25

6.7.6.     Creditor Trustee ..................................................................... 26

6.7.7.     Trust Expenses ....................................................................... 28

6.7.8.     Privileges............................................................................... 28

6.7.9.     Retention of Documents .......................................................... 29

6.7.10.    Termination of Creditor Trust ................................................... 30

6.7.11.    Exculpation Relating to the Creditor Trust .................................. 30

6.8.    Administrative and Priority Claims Reserve ...................................... 30

Section 7.    Distributions................................................................................. 31

7.1.    Distribution Record Date .................................................................. 31

7.2.    Date of Distributions ........................................................................ 31

7.3.    Postpetition Interest on Claims ......................................................... 31

7.4.    Disbursing Agent ............................................................................ 31

7.5.    Powers of Disbursing Agent ............................................................. 32

7.6.    Surrender of Instruments................................................................... 32

7.7.    Delivery of Distributions .................................................................. 32

7.8.    Manner of Payment.......................................................................... 32

7.9.    Setoffs ........................................................................................... 33

7.10.   Minimum Distributions..................................................................... 33

7.11.   Allocation of Distributions Between Principal and Interest .................. 33

7.12.   Distributions Free and Clear ............................................................. 33

Section 8.    Procedures for Disputed Claims ...................................................... 33

8.1.    Allowance of Claims and Interests ..................................................... 33

8.2.    Objections to Claims........................................................................ 34

ii

8.3.    Estimation of Claims..................................................................................... 34

8.4.    Distributions Relating to Disputed Claims ................................................... 34

8.5.    Distributions after Allowance ...................................................................... 35

8.6.    Preservations of Rights to Settle Claims...................................................... 35

8.7.    Disallowed Claims ........................................................................................ 35

Section 9.    Executory Contracts and Unexpired Leases ......................................... 35

9.1.    General Treatment ........................................................................................ 35

9.2.    Rejection Damages Claims ........................................................................... 36

9.3.    Insurance Policies ......................................................................................... 36

9.4.    Reservation of Rights .................................................................................... 37

Section 10.    Conditions Precedent to Effective Date ............................................... 37

10.1.    Conditions Precedent .................................................................................... 37

10.2.    Waiver of Conditions .................................................................................... 37

10.3.    Effect of Failure of Conditions .................................................................... 38

Section 11.    Effect of Confirmation .......................................................................... 38

11.1.    Effect of Failure of Conditions .................................................................... 38

11.2.    Binding Effect............................................................................................... 38

11.3.    Discharge of Claims and Termination of Interests ...................................... 38

11.4.    Compromise and Settlement of Claims, Interests, and Controversies................. 39

11.5.    Injunction ...................................................................................................... 39

11.6.    Term of Injunction or Stays ......................................................................... 40

11.7.    Injunction Against Interference with Plan ................................................... 40

11.8.    Debtor Releases ............................................................................................ 40

11.9.    Releases by Holders of Claims and Interests............................................... 41

11.10.    Exculpation ................................................................................................... 42

11.11.    Release of Liens ........................................................................................... 42

11.12.    Dissolution of Committee ............................................................................. 42

Section 12.    Retention of Jurisdiction ....................................................................... 43

Section 13.    Miscellaneous Provisions....................................................................... 45

13.1.    Payment of Statutory Fees ........................................................................... 45

13.2.    Substantial Consummation ........................................................................... 45

13.3.    Operations between the Confirmation Date and the Effective Date................... 45

13.4.    Tax Treatment of the Creditor Trust ............................................................ 45

13.5.    Determination of Tax Liabilities.................................................................. 45

iii

13.6.    Amendments ................................................................................................ 46

13.6.1.    Modifications to Plan and Plan Supplement ................................. 46

13.6.2.    Other Amendments ........................................................................ 46

13.7.    Revocation or Withdrawal of the Plan .................................................... 46

13.8.    Continuing Exclusivity of Debtors' Right to Propose Plan .................................. 46

13.9.    Severability ................................................................................................ 46

13.10.    Governing Law ....................................................................................... 47

13.11.    Time ......................................................................................................... 47

13.12.    Binding Effect of Plan ............................................................................. 47

13.13.    Entire Agreement .................................................................................... 47

13.14.    Section 1125(e) Good Faith Compliance .................................................. 47

13.15.    Notices ..................................................................................................... 48

Advance Watch Company, Ltd., Binda USA Holdings, Inc., Sunburst Products, Inc., and GWG International, Ltd. (collectively, the "**Debtors**") hereby propose the following joint plan of liquidation pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"):

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### A.    Definitions

The following terms used herein shall have the respective meanings defined below:

**1.1.    Administrative and Priority Claims Reserve** means the account to be established by the Creditor Trustee in an authorized depository in the Southern District of New York and funded with the Administrative and Priority Claims Reserve Amount pursuant to Section 6.8 of this Plan.

**1.2.    Administrative and Priority Claims Reserve Amount** means Cash, in the amount of $150,000, to be funded from the Plan Funding.

**1.3.    Administrative Expense Claim** means any Claim Allowed pursuant to Bankruptcy Code §§ 503(b) and 507(a)(1) arising from actual, necessary costs or expenses of administration of the Chapter 11 Cases and preservation of the Debtors' Estates.

**1.4.    Advance Watch** means Debtor Advance Watch Company, Ltd.

**1.5.    Allowed** means, with respect to any Claim, (i) a Claim against a Debtor which has been listed on the Debtor's Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, (iii) any Claim expressly allowed by a Final Order or pursuant to this Plan, or (iv) Claims under or evidenced by the DIP Facility Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtors or the Creditor Trustee and without any further notice to or action, order or approval of the Bankruptcy Court.

**1.6.    Asset Purchase Agreement** means that certain asset purchase agreement by and between the Debtors and the Purchaser memorializing the terms and conditions of the Sale, as may be amended, modified, and/or supplemented in accordance with the terms thereof.

**1.7.    Assets** means all tangible and intangible assets of every kind and nature of the Debtors and the Estates, including, without limitation, causes of action, and all proceeds thereof.

**1.8.    Available Insurance Proceeds** means, with respect to an Insured Litigation Claim, the undistributed proceeds of each insurance policy that provides coverage with respect to such Claim.

**1.9.    Avoidance Actions** means any and all causes of action and rights to recover or avoid transfers or to avoid any lien under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including, but not limited to, §§ 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of the Debtors' or the estates' claim, counterclaim, setoff or offset rights, provided, however, that Avoidance Actions shall not include rights, claims or causes of action that arise under chapter 5 of the Bankruptcy Code against Jeffrey L. Gregg and Tadd Crane.

**1.10.    Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

**1.11.    Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.12.    Binda Italy** means Binda Italia Srl.

**1.13.    Borrowers** means Debtors Advance Watch, Sunburst Products, Ltd., and GWG International, Inc.

**1.14.    Budget** means, individually and collectively, the budgets attached as Exhibit C to the Disclosure Statement.

**1.15.    Business** means the Debtors' businesses as of the Petition Date.

**1.16.    Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

**1.17.    Cash** means legal tender of the United States of America.

**1.18.    Chapter 11 Cases** means the cases commenced in the Bankruptcy Court by the Debtors pursuant to chapter 11 of the Bankruptcy Code, which are jointly administered under Case No. 15-12690 (MG).

**1.19.    Chief Restructuring Officer** shall mean Jeffrey L. Gregg, as the Debtor's Chief Restructuring Officer pursuant to the *Order Approving Application for an Order Authorizing the Debtors to Retain Jeffrey L. Gregg as Chief Restructuring Officer for Advance Watch Company Ltd., Sunburst Products, Inc. and GWG International, Ltd., Nunc Pro Tunc to the Petition Date* [Doc. 90].[2]

---

[2]    Unless otherwise specified, all references herein to docket entries shall be to entries on the docket of Advance Watch, Case No. 15-12690 (MG).

**1.20.   Claim** means a "claim," as that term is described in Bankruptcy Code § 101(5), against any Debtor.

**1.21.   Class** means any group of Claims or Interests classified in Section 3 of this Plan pursuant to Bankruptcy Code § 1122.

**1.22.   Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee on October 8, 2015.

**1.23.   Committee Allocation Account** means the segregated account maintained by the Debtors in which the Committee Allocation Payment is held.

**1.24.   Committee Allocation Payment** means the sum of no less than $725,000 paid from the Plan Funding in accordance with Sections 6.2.1 and 6.2.2 hereof.

**1.25.   Compensation and Reimbursement Claim** means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5), including, but not limited to, Claims of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

**1.26.   Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.27.   Confirmation Order** means the order entered by the Bankruptcy Court on the docket of the Chapter 11 Cases confirming the Plan.

**1.28.   Contingent Claim** means any contingent or unliquidated Claim asserted or which may be asserted against any Debtor.

**1.29.   Creditor Trust** means the creditor recovery trust established on the Effective Date pursuant to Section 6.7 hereof.

**1.30.   Creditor Trust Agreement** means the agreement to be executed as of the Effective Date establishing the Creditor Trust pursuant to this Plan.

**1.31.   Creditor Trust Assets** means, collectively, (i) the Estate Claims and the proceeds thereof, (ii) the Committee Allocation Payment, and (iii) the remaining Plan Funding, if any, after distributions in accordance with this Plan.

**1.32.   Creditor Trustee** means the disinterested individual selected by the Committee pursuant to Section 6.7.6 hereof to act as trustee of and administer the Creditor Trust.

**1.33.   Debtors** means Advance Watch, Binda USA Holdings, Inc., Sunburst Products, Ltd., and GWG International, Inc.

**1.34.    Debtors Allocation Payment** means the sum of $500,500 paid from the Plan Funding in accordance with Sections 6.2.1 and 6.2.3 hereof.

**1.35.    Debtors in Possession** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code §§ 1101, 1107(a) and 1108.

**1.36.    DIP Credit Agreement** means the Pre-Petition Revolving Loan Agreement, as ratified and amended by the Ratification Agreement (as amended, restated, supplemented, or otherwise modified from time to time).

**1.37.    DIP Facility** means that certain senior secured superpriority debtor-in-possession revolving credit and letter of credit facility of up to $18,500,000, inclusive of revolving loans in excess of pre-petition lending formula limits of up to $4,000,000, as more specifically provided for in the DIP Credit Agreement.

**1.38.    DIP Facility Claim** means the Allowed Claim of the DIP Loan Agent and DIP Lender pursuant to the DIP Facility Order.

**1.39.    DIP Facility Order** means the *Final Order (I)Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status; (II) Modifying the Automatic Stay; (III) Authorizing the Debtors to Enter Into Agreements With Wells Fargo Bank, National Association; and (IV) Granting Related Relief* [Doc. 165].

**1.40.    DIP Lender** means Wells Fargo Bank, National Association, as lender under the DIP Credit Agreement.

**1.41.    DIP Loan Agent** means Wells Fargo Bank, National Association, as administrative agent and collateral agent under the DIP Facility, as more fully set forth in the DIP Credit Agreement.

**1.42.    Disbursing Agent** means any Entity, including any Debtor and the Creditor Trustee, which acts as a Disbursing Agent pursuant to Section 7.4 hereof.

**1.43.    Disclosure Statement** means that certain disclosure statement relating to the Plan, as amended or modified from time to time, including, among other things, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to the Bankruptcy Code.

**1.44.    Disputed Claim** means (i) either (A) a Claim in a particular Class, as to which a proof of claim has been filed or scheduled or is deemed to have been filed under applicable law, or (B) an Administrative Expense Claim, and in either case, as to which an objection has been or is filed in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order; and (ii) prior to any objection being filed, any Claim with respect to which (A) the amount of the Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the applicable Debtor in the Schedules; (B) any corresponding Claim scheduled by the applicable Debtor in the Schedules has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (C) no corresponding Claim has been scheduled by the applicable Debtor in the Schedules.

**1.45.    Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**1.46.    Distribution Record Date** means five Business Days prior to the Confirmation Date.

**1.47.    Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10.1 herein have been either satisfied or waived.

**1.48.    Effective Date Distributions** means all the Distributions required to be made on the Effective Date under this Plan to the Holders of Claims that are Allowed as of the Effective Date.

**1.49.    Entity** means an "entity" as defined in § 101(15) of the Bankruptcy Code.

**1.50.    Estate** means the estate created in each Debtor's chapter 11 bankruptcy case, containing all property and other interests of the applicable Debtor pursuant to Bankruptcy Code § 541.

**1.51.    Estate Claims** means (1) the Avoidance Actions; and (2) the Retained Third Party Claims; (3) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, mangers, employees, affiliates or Insiders of the Debtors (except Jeffrey L. Gregg and Tadd Crane), including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies (including for bad faith) maintained by the Debtors; (4) the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under § 505 of the Bankruptcy Code; and (5) all other rights, claims or causes of action not transferred to Purchaser pursuant to the Sale.

**1.52.    Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, or Bankruptcy Rule 8002(d)(1)(B), may be filed relating to such order shall not cause such order to not be a Final Order.

**1.53.    General Unsecured Claim** means any Claim asserted against any Debtor which is not included within any other specifically defined Class hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.54.    Guarantor** means Debtor Binda USA Holdings, Inc.

**1.55.    Holder** means the legal or beneficial holder of a Claim or Interest.

**1.56.    Impaired** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of the Bankruptcy Code § 1124.

**1.57.    Insider** means, with respect to each Debtor, an "insider" as defined in § 101(31) of the Bankruptcy Code.

**1.58.    Insured Litigation Claim** means (i) a Claim against a Debtor or any other insured that is the subject of litigation pending in a court of competent jurisdiction as of the Effective Date and that is covered by any liability insurance applicable to the Debtor or Debtors against which such Claim is asserted, or (ii) a Claim against a Debtor or any other insured based on any act or failure to act by Related Person and that is covered by any primary director and officer liability, employment practices liability, fiduciary liability insurance policies, or other insurance policies.

**1.59.    Intercompany Claim** means any Claim or cause of action held by any Debtor or Non-Debtor Affiliate against any Debtor which accrued before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, and any claim for contribution and expenses that were allocable between or among the Debtors and/or the Non-Debtor Affiliates.

**1.60.    Interest** means the interest of any Holder of an equity security of any Debtor, within the meaning of Bankruptcy Code § 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

**1.61.    Interim Compensation Order** means the *Order Pursuant to 11 U.S.C. Sections 105(a), 330, and 331, Fed. R. Bankr. P. 2016, and Local Rule 2016-1 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Doc. 75].

**1.62.    Lien** means a "lien" as defined in § 101(37) of the Bankruptcy Code.

**1.63.    Litigation Claim** means (i) a Claim against a Debtor that is the subject of litigation pending in a court of competent jurisdiction as of the Effective Date and is not an Insured Litigation Claim or an Other Priority Claim; or (ii) a Claim held by a Person (A) against whom the Debtors have commenced as of the Effective Date, or (B) the Debtors and/or Creditor Trustee intend as of the Effective Date, to commence litigation or object or offset, recoup, estimate, disallow or otherwise expunge, as disclosed in the Plan Supplement.

**1.64.    Local Bankruptcy Rules** means the Local Bankruptcy Rules for the Southern District of New York.

6

**1.65.    Non-Debtor Affiliates** means, collectively and individually, Binda Italy, Advance Watch Company (Far East) Limited, Advance Far East Trading (Shenzhen) Company Ltd., and Zhongshan Advance Electronics Company Limited (PRC).

**1.66.    Other Priority Claim** means any Claim entitled to priority pursuant to Bankruptcy Code § 507(a), other than an Administrative Expense Claim, Compensation and Reimbursement Claim, Priority Tax Claim, or DIP Facility Claim.

**1.67.    Other Secured Claim** means any Secured Claim other than the Senior Secured Wells Claim or a DIP Facility Claim against any of the Debtors.

**1.68.    Person** means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other Entity.

**1.69.    Petition Date** means September 30, 2015, the date on which the Debtors' chapter 11 bankruptcy petitions were filed with the Bankruptcy Court.

**1.70.    Plan** means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including, without limitation, all exhibits and schedules hereto and thereto.

**1.71.    Plan Documents** means all documents, forms of documents, schedules and exhibits to this Plan to be executed, delivered, assumed, and/or performed in conjunction with consummation of this Plan on the Effective Date.

**1.72.    Plan Funding** means the funds drawn from the DIP Facility and the Debtors' collections after the closing of the Sale in the aggregate amount of no less than $3,531,227.

**1.73.    Plan Supplement** means the compilation of all Plan Documents to be entered into as of the Effective Date and which will be filed with the Bankruptcy Court no later January 8, 2016.

**1.74.    Plan Transactions** shall have the meaning ascribed to it in Section 6.4 hereof.

**1.75.    Pre-Petition Loan Agent** means Wells Fargo Bank, National Association, as administrative agent under the Pre-Petition Revolving Loan Agreement.

**1.76.    Pre-Petition Loan Facility** means the prepetition revolving credit and letter of credit facility under the Pre-Petition Revolving Loan Agreement.

**1.77.    Pre-Petition Revolving Loan Agreement** means that certain Credit Agreement, dated as of June 21, 2013, by and among Borrowers, Guarantor, the Pre-Petition Loan

Agent, and the Pre-Petition Secured Lenders (as amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date).

**1.78. Pre-Petition Secured Lenders** means the lenders which were parties to the Pre-Petition Revolving Loan Agreement from time to time prior to the Petition Date.

**1.79. Priority Tax Claim** means any Allowed Claim of a governmental unit pursuant to Bankruptcy Code §§ 502(i) and 507(a)(8); provided, however, that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims.

**1.80. Professional** means any professional firm or professional Person retained by the Debtors or the Committee in connection with these Chapter 11 Cases pursuant to a Final Order in accordance with §§ 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to §§ 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.81. Proof of Claim or Interest** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001, describing the basis and amount of a Claim or Interest, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Bankruptcy Court.

**1.82. Pro Rata Share** means, as to a particular holder of a particular Claim, the ratio that the amount of such Claim held by such claimholder bears to the aggregate amount of all Claims in the particular Class or category.  Such ratio shall be calculated as if all Claims in the particular Class or category asserted against all Debtors are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

**1.83. Purchased Assets** means the Assets that were sold, transferred, assigned, conveyed, and delivered to the Purchaser pursuant to the Sale Order in accordance with the terms and subject to the conditions of the Asset Purchase Agreement.

**1.84. Purchaser** means Sunshine Time, Inc.

**1.85. Ratification Agreement** means that certain Ratification and Amendment Agreement dated September 30, 2015 (as amended, restated, supplemented or otherwise modified from time to time), by and among the Borrowers, the Guarantor, the DIP Loan Agent, and the DIP Lender, which ratifies and amends the Pre-Petition Revolving Loan Agreement.

**1.86. Rejection Damages Claim** means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to § 365(a) of the Bankruptcy Code by any of the Debtors, as limited, in the case of a rejected unexpired lease, by § 502(b)(6) of the Bankruptcy Code.

**1.87. Related Persons** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, officers, directors,

employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity, and any Person claiming by or through any of them.

**1.88.    Responsible Officer** means Tadd Crane, solely in his capacity as the responsible person of the Debtors pursuant to the terms of the Responsible Officer Agreement.

**1.89.    Responsible Officer Agreement** means the agreement entered into by and between Tadd Crane, the Debtors, the Committee, and the Purchaser, that outlines the terms of the employment of the Responsible Officer and which shall continue to remain in place until the later of (i) the Effective Date and (ii) the date of the filing of the Debtors' final tax returns. As set forth more fully in the Responsible Officer Agreement, and subject to the actual terms of the Responsible Officer Agreement, which are incorporated herein by reference, the Responsible Officer will be responsible for, among other things (i) administering the Debtors' Estates; (ii) directing the development, negotiation, and approval process for this Plan or any other plan of liquidation filed by the Debtors; (iii) approving cash disbursements in accordance with the terms of the Responsible Officer Agreement; (iv) overseeing and directing the wind down of the Debtors' operations; (v) performing such other services as may be reasonably required, necessary or advisable; and (vi) taking any other actions necessary to fulfill the responsibilities set forth in the Reasonable Officer Agreement.

**1.90.    Retained Third Party Claims** means any rights, claims or causes of action of the Debtors against third parties other than taxing authorities relating to assets, properties, Business or operations of the Debtors arising out of events occurring on or prior to the Closing Date, other than causes of action under chapter 5 of the Bankruptcy Code, solely to the extent of and for no other purpose than as a defense or objection to a Proof of Claim filed in the Chapter 11 Cases.

**1.91.    Sale** means the sale of substantially all of the Debtors' assets in these Chapter 11 Cases pursuant to the terms and conditions of the Asset Purchase Agreement, which was consummated on November 17, 2015.

**1.92.    Sale Order** means the *Order (I) Approving Asset Purchase Agreement Between Debtors and Buyer, (II) Approving Sale of Substantially all Assets and Assumption of Certain Liabilities Free and Clear of all Liens, Claims and Encumbrances, and Other Interests, (III) Approving Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases, and (IV) Determining Amounts Necessary to Cure Such Executory Contracts and Unexpired Leases*, entered in the Chapter 11 Cases on November 16, 2015 [Doc. 166].

**1.93.    Sale Proceeds** means the gross Cash consideration paid by or for the benefit of the Purchaser under the Sale Order.

**1.94.    Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended from time to time through the Confirmation Date.

**1.95.    Secured Claim** means a Claim (i) secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less

than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with Bankruptcy Code § 506(a); or (ii) secured by the amount of any rights of setoff of the Holder thereof under Bankruptcy Code § 553.

1.96.   **Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code § 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.97.   **Senior Secured Wells Claims** shall mean all Claims against the Debtors held by the Pre-Petition Loan Agent and the Pre-Petition Secured Lenders in connection with the Pre-Petition Loan Facility.

1.98.   **Subordinated Claim** means any Claim or portion of any Claim subject to subordination under Bankruptcy Code § 510.

1.99.   **Subordination Agreement** means that certain Subordination Agreement between the Pre-Petition Loan Agent and Binda Italy dated as of June 21, 2013.

1.100.   **Trust Expenses** means all actual and necessary fees, costs, expenses and obligations incurred by or owed to the Creditor Trustee and his or her agents, employees, attorneys, advisors and other professionals in administering this Plan and the Creditor Trust, including, without limitation, (i) reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Creditor Trustee and his or her agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, and (ii) all fees payable pursuant to Section 13.1 of this Plan.

1.101.   **Unimpaired** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code § 1124.

1.102.   **Voting Record Date** means the date first set for the hearing on preliminary approval of the Disclosure Statement.

**B.**      **Interpretation: Application of Definitions and Rules of Construction**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in § 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as

reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated, and each stated pronoun is gender neutral.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## SECTION 2.  ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

### 2.1.    Administrative Expense Claims

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash from the Plan Funding (other than the Committee Allocation Payment) (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Expense Claims that have been assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an obligation of the Debtors; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Debtors, as Debtors in Possession, in accordance with the Debtors' wind-down Budget and to the extent such obligations have not been assumed by the Purchaser, shall be paid by the Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  For the avoidance of doubt, all tax claims of governmental units arising from and after the date of the closing of the Sale have been assumed by the Purchaser and, therefore, do not constitute obligations of the Debtors under this Plan.

The Holder of an Administrative Expense Claim, other than (i) a Compensation and Reimbursement Claim, (ii) a liability incurred but not yet due and payable in the ordinary course of business by a Debtor until after the thirtieth day after the Effective Date, (iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, (iv) an expense or liability incurred in the ordinary course of business on or after the Effective Date, or (v) fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon, must file with the Bankruptcy Court and serve on the Debtors, the Creditor Trustee, and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim, together with supporting documentation, so as to be received on or before the date that is the first Business Day that is 21 days after the Effective Date.  Failure to file and serve such request for payment timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.

The Debtors estimate that the aggregate amount of Allowed Administrative Expense Claims (other than Allowed Compensation and Reimbursement Claims) does not exceed

$1.2 million.[3]  In the event Allowed Administrative Expense Claims (other than Allowed Compensation and Reimbursement Claims) exceed $1.2 million, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan.

### 2.2.    Compensation and Reimbursement Claims

All final requests for payment of Claims of a Professional through the Effective Date shall be filed on or before the later of 30 days after the Confirmation Date and fifteen days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Interim Compensation Order, the Bankruptcy Rules and the Local Bankruptcy Rules, the Allowed amounts of such accrued Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.  Except as otherwise set forth in this Section 2.2, the terms and provisions of the Interim Compensation Order shall govern all Compensation and Reimbursement Claims.

Allowed Compensation and Reimbursement Claims of the Debtors' Professionals shall be paid (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claims is entered by the Bankruptcy Court or (b) upon such other terms as agreed by the Holder of such an Allowed Compensation and Reimbursement Claims.  Allowed Compensation and Reimbursement Claims of the Debtors' Professionals (other than Debtors' chapter 11 counsel) shall be paid in an amount not to exceed $470,000 from the Plan Funding (which shall not reduce the Committee Allocation Payment) in accordance with Section 6.2.1 of this Plan and/or the Administrative and Priority Claims Reserve in accordance with Section 6.8 of this Plan.  Allowed Compensation and Reimbursement Claims of Debtors' chapter 11 counsel shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of this Plan, the Plan Funding as set forth in Section 6.2.1 of this Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.  As of the date hereof, the Debtors anticipate that the Allowed Compensation and Reimbursement Claims of its chapter 11 counsel will total approximately $1 million.

Allowed Compensation and Reimbursement Claims of the Committee's Professionals shall be paid from the Committee Allocation Payment (i) as soon as is reasonably practicable following the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claims is entered by the Bankruptcy Court or (ii) upon such other terms as agreed by the Holder of such an Allowed Compensation and Reimbursement Claims.  The Committee has advised the Debtors that, as of the date hereof, the Committee anticipates that approximately $650,000 in Allowed Compensation and Reimbursement Claims of the Committee's Professionals will be paid from the Committee Allocation Payment.

---

[3]    The Debtors estimate that fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon remaining to be paid during these Chapter 11 Cases will be approximately $25,000 as of the Effective Date.

## 2.3.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, at the option of the Debtors, in consultation with the Committee, or the Creditor Trustee, as soon as is reasonably practicable following the later of (i) the Effective Date; or (ii) the date the Allowed Priority Tax Claim becomes an Allowed Claim; (A) Cash from the Plan Funding (other than the Committee Allocation Payment) in the amount of such Allowed Priority Tax Claim, or (B) in accordance with § 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash from the Plan Funding (other than the Committee Allocation Payment) over a period ending not later than five years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim.

All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due from the Plan Funding (other than the Committee Allocation Payment). Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims and shall be subordinated to General Unsecured Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtors estimate that the aggregate amount of Allowed Priority Tax Claims does not exceed $40,000. In the event Allowed Priority Tax Claims exceed $40,000, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan.

## 2.4.    United States Trustee Fees

All fees payable pursuant to § 1930 of title 28 of the United States Code and any applicable interest thereon that are due and payable as of the Effective Date shall be paid on the Effective Date or as soon thereafter as is reasonably practicable from the Plan Funding (other than the Committee Allocation Payment). All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Creditor Trustee with funds from the Creditor Trust Assets when such fees become due and payable. All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Cases or conversion or dismissal of the Chapter 11 Cases, whichever is earlier.

## 2.5.    DIP Facility Claim

In accordance with the Sale Order and DIP Facility Order, the Sale Proceeds were distributed to the DIP Loan Agent on behalf of the DIP Lender and the Pre-Petition Loan Agent on behalf of the Pre-Petition Secured Lenders in full and final satisfaction, settlement, release, and

discharge of, and in exchange for the Allowed DIP Facility Claim and the Allowed Senior Secured Wells Claim, respectively.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in the Debtors' Estates, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with § 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan.  A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Description | Treatment | Entitled to Vote | Estimated Range of Recovery under the Plan |
|---|---|---|---|---|
| --- | Administrative Expense Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Compensation and Reimbursement Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Priority Tax Claims | Payment in full or consent to other treatment | No | 100% |
| --- | United States Trustee Fees | Payment in full or consent to other treatment | No | 100% |
| --- | DIP Facility Claim | Satisfied in full or consent to other treatment | No | 100% |
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Senior Secured Wells Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 4 | Other Secured Claims | Unimpaired | No (deemed to accept) | 100% |

14

| Class | Description | Treatment | Entitled to Vote | Estimated Range of Recovery under the Plan |
|---|---|---|---|---|
| 5 | General Unsecured Claims | Impaired | Yes | <1% - 5%[4] |
| 6 | Subordinated Claims | Impaired | No | 0%[5] |
| 7 | Intercompany Claims | Impaired | Yes | 0% |
| 8 | Litigation Claims | Impaired | Yes | TBD[6] |
| 9 | Interests | Impaired | No (deemed to reject) | 0% |

## SECTION 4.  TREATMENT OF CLAIMS AND INTEREST

### 4.1.    Other Priority Claims (Class 1)

Except to the extent that a Holder of an Allowed Other Priority Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash from the Plan Funding (other than the Committee Allocation Payment) in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors or Creditor Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

The Debtors estimate that the aggregate amount of Allowed Other Priority Claims does not exceed $60,000.  In the event Allowed Other Priority Claims exceed $60,000, the only recourse for payment of such excess amounts shall be from the Plan Funding (other than the Committee

---

[4]    The estimated recoveries on account of Claims in Classes 5 through 8 are estimates only.  Actual distributions on account of such Claims may vary significantly from the stated estimates depending on, among other things, amounts actually recovered by the Creditor Trust after the Effective Date and final resolution of Contingent Claims, Subordinated Claims, Intercompany Claims, Litigation Claims and Insured Litigation Claims.  All rights of the Debtors, the Committee and the Creditor Trust with respect to the classification of Claims and Interests, estimated recoveries, and/or allowance or disallowance of Claims and Interests, are hereby reserved.

[5]    Holders of Allowed Subordinated Claims shall recover on account of such Claims solely from the Creditor Trust Assets and only after all other Classes of Allowed Claims have been satisfied in full.  Given that the estimated recoveries on account of the other Classes of Claims is less than recovery in full, at this time, the Debtors do not anticipate any recoveries on account of Allowed Subordinated Claims.

[6]    To the extent that an Allowed Litigation Claim is an Insured Litigation Claim, the Holder of such Claim shall recover solely from Available Insurance Proceeds.  All other Allowed Litigation Claims will recover solely from the Creditor Trust Assets and be treated as Class 5 General Unsecured Claims for purposes of Distributions under the Plan.  It is impossible to determine at this time the number or amount of Allowed Litigation Claims, the number or amount of such Claims which are also Insured Litigation Claims, or the amount of Available Insurance Proceeds.  Consequently, it is not possible to provide an estimated range of recovery to Holders of Class 8 Claims at this time.

Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan.

Class 1 is Unimpaired and is deemed to accept this Plan.

### 4.2.    Secured Tax Claims (Class 2)

On the Effective Date or as soon thereafter as is reasonably practicable, and only to the extent that any such Allowed Secured Tax Claim has not been paid in full prior to the Effective Date, each Holder of an Allowed Secured Tax Claim shall receive, at the option of the Debtors or the Creditor Trustee, (i) the proceeds of the sale or disposition of the collateral securing such Allowed Secured Tax Claim to the extent of the value of the Holder's secured interest in the Allowed Secured Tax Claim; (ii) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the Holder of such Allowed Secured Tax Claim is entitled; or (iii) such other Distribution as necessary to satisfy the requirements of the Bankruptcy Code.  In the event the Debtors or the Creditor Trustee treat a Claim under clause (i) of this Section 4.2, the Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  The Debtors and the Creditor Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Tax Claims.  The Debtors do not anticipate that there will be any Allowed Secured Tax Claims.  In the event any Secured Tax Claims are Allowed, the only recourse for payment of such Claims shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan.

Class 2 is Unimpaired and is deemed to accept this Plan.

### 4.3.    Senior Secured Wells Claims (Class 3)

In accordance with the Sale Order and DIP Facility Order, the Sale Proceeds were distributed to the DIP Loan Agent on behalf of the DIP Lender and the Pre-Petition Loan Agent on behalf of the Pre-Petition Secured Lenders in full and final satisfaction, settlement, release, and discharge of, and in exchange for the Allowed DIP Facility Claim and the Allowed Senior Secured Wells Claim, respectively.

Class 3 is Unimpaired and is deemed to accept the Plan.

### 4.4.    Other Secured Claims (Class 4)

Except to the extent that a Holder of an Allowed Other Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, each such Holder, at the option of the Debtors, in consultation with the Committee, or the Creditor Trustee, shall (i) be paid in full in Cash from the Plan Funding (other than the Committee Allocation Payment); (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent

required under § 506(b) of the Bankruptcy Code; or (iii) receive other treatment rendering such Claim Unimpaired in accordance with § 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.  In the event the Debtors or the Creditor Trustee treat a Claim under clause (i) of this Section 4.4, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  The Debtors and the Creditor Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

The Debtors estimate that the aggregate amount of Allowed Other Secured Claims will be $0.00.  In the event Allowed Other Secured Claims exceed $0.00, the only recourse for payment of the Allowed Other Secured Claims shall be from the Plan Funding (other than the Committee Allocation Payment) on the Effective Date or the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan.

Class 4 is Unimpaired and is deemed to accept this Plan.

### 4.5.    General Unsecured Claims (Class 5)

Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of the beneficial interest in the Creditor Trust and as beneficiary of the Creditor Trust shall receive, on a distribution date, their Pro Rata Share of net Cash derived from the Creditor Trust Assets available for Distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, as full and complete satisfaction of the Claims against the Creditor Trust.

The Debtors estimate that the aggregate amount of Allowed General Unsecured Claims will be approximately $7.1 million based on the Debtors' Schedules and Claims asserted against the Estates.[7]

Class 5 is Impaired and is entitled to vote to accept or reject this Plan.  Any recovery under the Plan to Holders of Allowed General Unsecured Claims is contingent upon the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the

---

[7]    This approximation of Allowed General Unsecured Claims necessarily contains an estimate of the amount of General Unsecured Claims which will ultimately become Allowed Claims.  This estimate is based solely upon the Debtors' review of its books and records and the Debtors' estimates as to additional General Unsecured Claims that have been or may be filed in these Chapter 11 Cases.  The review and reconciliation of Claims is ongoing as of the date hereof.  No order or finding has been entered by the Bankruptcy Court or any other court estimating or otherwise fixing the amount of General Unsecured Claims at this approximated amount.

Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust.

### 4.6.    Subordinated Claims (Class 6)

Holders of Allowed Subordinated Claims will not receive any Distributions on account of such Subordinated Claims unless and until all Allowed Claims in Classes 1, 2, 3, 4, 5, 7 and 8 have been satisfied in full, in which case, each Holder of an Allowed Class 6 Subordinated Claim shall receive such Holder's Pro Rata Share of the remaining beneficial interest in the Creditor Trust (after all Allowed Claims in Classes 1, 2, 3, 4, 5, 7 and 8 have been satisfied in full), and as beneficiary of the Creditor Trust, shall receive, on a distribution date, their Pro Rata Share of net Cash derived from the Creditor Trust Assets available for Distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, as full and complete satisfaction of the Claims against the Creditor Trust.

Class 6 is Impaired and is deemed to reject this Plan.

### 4.7.    Intercompany Claims (Class 7)

A Holder of an Allowed Intercompany Claim will not receive any Distribution on account of such Intercompany Claim. Each Holder of an Allowed Intercompany Claim shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Intercompany Claim. Notwithstanding the foregoing, the Debtors, with the consent of the Committee, shall be authorized to modify the treatment of a Holder of an Allowed Intercompany Claim in a manner consistent with the below: (i) subject to mutually agreeable terms between the Debtors and the Holder of such Allowed Intercompany Claim, and without further order of the Court, such Claim, together with all other Claims of such Holder against the Debtors and/or their Estates, may be discharged and released in exchange for mutual releases of all claims by the Debtors and their Estates against such Holder; (ii) be treated as a Class 5 General Unsecured Claim for all purposes, including voting and receiving Distributions under the Plan; or (iii) be treated as a Class 5 General Unsecured Claim for purposes of Distributions, and for all other purposes, including voting, as a Class 7 Intercompany Claim.

Class 7 is Impaired, and is entitled to vote to accept or reject this Plan. Any recovery under the Plan to Holders of Allowed Intercompany Claims is contingent upon, among other things, the resolution of the applicable Claim, the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust or any final money judgment amount applicable to such Claims.

### 4.8.    Litigation Claims (Class 8)

Except to the extent that a Holder of an Allowed Litigation Claim has agreed to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each such Claim, each Holder of an Allowed Litigation Claim shall receive (a) on the Effective Date, the right to prosecute such Claim to judgment under applicable non-bankruptcy law, and (b) if, when and to the extent that a court of competent jurisdiction enters a Final Order (i) resolving all of the Debtors' or their Estate's (or the Creditor Trust's) counterclaims,

crossclaims, claim objections, offsets, recoupment, estimation, disallowance, expungement and defenses (as the case may be) and (ii) awarding a liquidated, non-contingent money judgment against the Debtors with respect to such Claim, such Claim shall be treated for purposes of Distributions as a Class 5 General Unsecured Claim in the amount of the money judgment awarded; provided, however, that if an Allowed Litigation Claim is an Insured Litigation Claim, the Holder of such Claim shall receive from Available Insurance Proceeds the lesser of (x) the amount of such judgment and (y) such Holder's Pro Rata Share of Available Insurance Proceeds with respect to such Claim.  Other than as set forth in the preceding sentence, each such Holder of a Insured Litigation Claim shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Insured Litigation Claims.

Class 8 is Impaired and is entitled to vote to accept or reject this Plan.  Any recovery under the Plan to Holders of Allowed Litigation Claims is contingent upon, among other things, the resolution of the applicable Claim, the continued investigative efforts of the Committee and any recoveries by the Creditor Trust on account of the Estate Claims transferred to the Creditor Trust. It is impossible to estimate at this time the amount, if any, of recoveries by the Creditor Trust or any final money judgment amount applicable to such Claims.

### 4.9.    Interests (Class 9)

Each Holder of an Interest in any Debtor will not receive any Distribution on account of such Interest. Each such Interest shall not receive or retain an interest in the Debtors, the Creditor Trust, the Estates, or other property or interests of the Debtors or Creditor Trust on account of such Interests.  Each such Interest will be cancelled as of the Effective Date.

Class 9 is Impaired and is deemed to reject this Plan.

## SECTION 5.  ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1.    Impaired Classes

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan. Each Holder of an Allowed Claim in an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject this Plan.

Class 9 is not entitled to receive or retain any Distributions or property under this Plan and is, therefore, conclusively presumed to have rejected this Plan pursuant to § 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Plan.  Class 8 is entitled only to the contingent right to receive Distributions after satisfaction in full of all other Classes of Allowed Claims, as set forth in Section 4.6 of this Plan, which contingency may never occur.  As such, Class 8 is deemed to have rejected this Plan in accordance with § 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Plan.  Classes 5, 7, and 8 are Impaired and are the only Classes of Claims or Interests entitled to vote on this Plan.

### 5.2. Acceptance by a Class

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan. Classes 1, 2, 3, and 4 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to § 1126(f) of the Bankruptcy Code.

### 5.3. Claims and Interests Not Entitled to Vote

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed; (b) is the subject of a pending objection; or (c)(i) was not listed on the Debtors' Schedules or was listed on the Debtors' Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim. Insiders are entitled to vote on the Plan subject to and in accordance with the Bankruptcy Code.

## SECTION 6. MEANS FOR IMPLEMENTATION

### 6.1. Limited Substantive Consolidation

This Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Plan, including voting on this Plan by the Holders of Claims and making any Distributions to Holders of Claims. The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of entity-specific Claims and Interests for which there would be no impact on distributions. On the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged; (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors; (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors; (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled; (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any Debtor hereunder will be deemed to be made by or on behalf of all of the Debtors; and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.

Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to their share of Cash available for Distribution on account of such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Plan) affect the legal and corporate structures of the Debtors.

## 6.2.    Means for Funding the Plan

### 6.2.1.    The Plan Funding

The following payments shall be paid from the Plan Funding at the following times and in the following order of priority: (a) the Committee Allocation Payment, on or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court; (b) the Debtors Allocation Payment, on or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court; (c) $185,274 to Debtors' chapter 11 counsel in payment of its Allowed and unpaid Compensation and Reimbursement Claims, on the Effective Date or as soon thereafter as is reasonably practicable; (d) to Holders of Allowed and unpaid Administrative Expense Claims and Allowed and unpaid Compensation and Reimbursement Claims (other than the Compensation and Reimbursement Claims of the Committee's Professionals in these Chapter 11 Cases, which Claims shall be funded from the Committee Allocation Payment), on the Effective Date or as soon thereafter as is reasonably practicable; (e) to Holders of Allowed and unpaid Priority Tax Claims and Other Priority Claims, if any, on the Effective Date or as soon thereafter as is reasonably practicable; (f) the Administrative and Priority Claims Reserve Amount, on the Effective Date or as soon thereafter as is reasonably practicable; and (g) to Holders of Allowed and unpaid Secured Claims, if any, on the Effective Date or as soon thereafter as is reasonably practicable.  Any Plan Funding remaining after all distributions in accordance with the preceding sentence have been made shall be distributed to the Creditor Trust and utilized in accordance with Sections 6.2.2 and 6.2.3 and the other provisions of this Plan.  The Debtors and the Committee reserve all rights with respect to the priority of payment and final allocation of Plan Funding under Section 6.2.1(c)-(g) of this Plan.

### 6.2.2.    The Committee Allocation Payment

On or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court, the Debtors shall transfer the Committee Allocation Payment to counsel for the Committee in these Chapter 11 Cases.  Committee's counsel shall thereafter hold the Committee Allocation Payment in escrow and shall not disburse any of the Committee Allocation Payment except as provided in this Section 6.2.2 or Section 10.3 of this Plan.  Counsel for the Committee shall either (i) turn the Committee Allocation Payment over to the Creditor Trust on the Effective Date, or (ii) in the event this Plan is not confirmed, hold the Committee Allocation Payment in escrow pending further order of the Bankruptcy Court.  Prior to the Effective Date, the Committee Allocation Payment may be utilized by the Committee solely to satisfy the Committee's Professionals fees and expenses in accordance with the terms of the Interim Compensation Order.  On and after the Effective Date, the Committee Allocation Payment shall be utilized by the Creditor Trustee solely to (a) satisfy the Allowed Compensation and Reimbursement Claims of the Committee's Professionals incurred through the Effective Date of the Plan; (b) administer the Creditor Trust Assets for the benefit of Holders of Allowed General Unsecured Claims, including payment of all Trust Expenses; and (c) to the extent available after satisfaction of or establishing the one or more reserves for payment of the amounts set forth in clauses (a) and (b) of this Section 6.2.2, to fund a Distribution to Holders of Allowed General Unsecured Claims.

### 6.2.3.  The Debtors Allocation Payment

On or as soon as is reasonably practicable following conditional approval of the Disclosure Statement by the Bankruptcy Court, the Debtors shall transfer the Debtors Allocation Payment to counsel for the Debtors in these Chapter 11 Cases.  Debtors' chapter 11 counsel shall thereafter hold the Debtors Allocation Payment in escrow and shall not disburse any of the Debtors Allocation Payment except as provided in this Section 6.2.3 or Section 10.3 of this Plan.  Counsel for the Debtors in these Chapter 11 Cases shall apply the Debtors Allocation Payment solely to (a) satisfy its Allowed Compensation and Reimbursement Claims incurred through the Effective Date of the Plan; (b) pay the fees and expenses set forth in Sections 6.4 and 8.2 hereof; and (c) reimburse Debtors' chapter 11 counsel for the first $25,000 of Production Costs (as defined in Section 6.7.8 hereof) incurred.  Any of the Debtors Allocation Payment remaining after all of the distributions in accordance with the preceding sentence have been made shall be distributed to the Creditor Trust.  Prior to the Effective Date, the Debtors Allocation Payment may be utilized by the Debtors' chapter 11 counsel solely to satisfy the Debtors' Professionals fees and expenses in accordance with the terms of the Interim Compensation Order.

## 6.3.    Corporate Action

### 6.3.1.  Transfer and Vesting of Assets

On the Effective Date, except as otherwise expressly provided in the Plan, title to the Creditor Trust Assets (including specifically the Committee Allocation Payment, the rights to collect under the Debtors' existing insurance policies, including the primary director and officer liability, employment practices liability, or fiduciary liability insurance policies and any claims arising thereunder, and all Estate Claims) shall vest in the Creditor Trust free and clear of all Liens, encumbrances, or interests of any kind.  The Debtors are a party to the Asset Purchase Agreement.  Except as otherwise provided in the Plan, and except to the extent inconsistent with the Plan, and otherwise subject to the terms of the Plan, the Creditor Trust shall succeed to all rights and interests provided to the Debtors and the Estates under the Asset Purchase Agreement to the extent permitted under the Asset Purchase Agreement.

The Committee shall have the power and authority to enter into the Creditor Trust Agreement on the Effective Date.

### 6.3.2.  Dissolution of the Debtors

On the Effective Date and upon (i) the Debtors, or such entity designated by the Debtors, making the Effective Date Distributions, (ii) the Debtors causing the Creditor Trust Assets to be transferred to the Creditor Trust in accordance with Section 6.3.1 of this Plan, and (iii) the Debtors' material completion of all other duties and functions set forth herein as soon as practicable after the Effective Date,  the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned.  Upon completion of the Debtors' final tax return by the Responsible Officer and the entry of a final decree closing the Chapter 11 Cases, each of the Debtors shall be deemed dissolved for all purposes in accordance with applicable state law.

### 6.3.3.    Cancellation of Existing Securities and Agreements

Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed and assigned by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Plan (if any), on the Effective Date in accordance with the Plan, all instruments evidencing any Claims against the Debtors or Interest in the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors thereunder shall be discharged.  For the avoidance of doubt, all Claims and Interests in the Debtors, if any, held by Binda Italy shall be canceled.

### 6.4.    Plan Transactions

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors and the Creditor Trustee may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary or appropriate to effectuate this Plan (the "**Plan Transactions**"), including, but not limited to, (i) the execution and delivery of appropriate agreements or other documents of financing, merger, consolidation, restructuring, conversion, disposition, transfer, or dissolution, containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (ii) the execution and delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, duty or obligation on terms consistent with this Plan; (iii) the filing of appropriate dissolution documents or other corporate filings with the appropriate governmental authorities pursuant to applicable law; and (iv) any and all other actions that the Debtors or Creditor Trustee determine are necessary or appropriate.  All fees and expenses of the Debtors and their professionals incurred on and after the Effective Date in connection with the Plan Transactions in accordance with this Section 6.4 shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of this Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.

### 6.5.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors and the Creditor Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtors or Creditor Trustee, as applicable, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 6.6.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the states or jurisdictions in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### 6.7.    The Creditor Trust

#### 6.7.1.    Establishment of the Creditor Trust

On the Effective Date, the Creditor Trust will be established pursuant to the Creditor Trust Agreement, which will be filed with the Bankruptcy Court on or before January 8, 2016.  Upon establishment of the Creditor Trust, all Creditor Trust Assets shall be deemed transferred to the Creditor Trust on the Effective Date without any further action of any of the Debtors or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.  The Creditor Trustee may elect for the Creditor Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Creditor Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the beneficiaries of the Creditor Trust.

#### 6.7.2.    Transfer of Creditor Trust Assets to the Creditor Trust

Pursuant to Bankruptcy Code § 1141, all transfers and contributions made pursuant to this Section 6 shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Upon completion of the transfer of the Creditor Trust Assets to the Creditor Trust, the Debtors will have no further interest in, or with respect to, the Creditor Trust Assets, or the Creditor Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee and the Creditor Trust's beneficiaries) will treat the transfer of the Creditor Trust Assets to the Creditor Trust in accordance with the terms of this Plan, as a transfer to the Creditor Trust's beneficiaries, followed by a transfer by such Creditor Trust's beneficiaries to the Creditor Trust, and the Creditor Trust's beneficiaries will be treated as the grantors and owners thereof.

#### 6.7.3.    Purpose of Creditor Trust

The Creditor Trust shall be established for the purpose of liquidating the Creditor Trust Assets, prosecuting any Estate Claims transferred to the Creditor Trust to maximize recoveries for the benefit of the Creditor Trust's beneficiaries, and making Distributions in accordance with this Plan to the Creditor Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Creditor Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Creditor Trust's beneficiaries treated as grantors and owners of the trust.

### 6.7.4.  Preservation of Rights

Under the Plan, the Creditor Trustee retains any and all rights of, and on behalf of, the Debtors, the Estates, and the Creditor Trust to commence and pursue any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Plan, Disclosure Statement, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Plan or the Confirmation Order act as *res judicata* or limit any of such rights of Creditor Trustee to commence and pursue any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, to the extent the Creditor Trustee deems appropriate.  Any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, may, but need not, be pursued by the Debtors prior to the Effective Date and by the Creditor Trustee after the Effective Date, to the extent warranted.

Unless an Estate Claim against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, including the Sale Order, the Debtors expressly reserve any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, for later enforcement and prosecution by the Creditor Trustee (including, without limitation, any Estate Claims set forth in the Plan Supplement, or not specifically identified herein, in the Disclosure Statement, or otherwise, or which the Debtors may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order.  In addition, the Creditor Trust expressly reserves the right to pursue or adopt any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

The Debtors and the Creditor Trustee do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Estate Claims, including, without limitation, setoff, offset and recoupment rights, have not yet been pursued by the Debtors or are not set forth herein, in the Disclosure Statement, or otherwise, that any and all Estate Claims, including, without limitation, setoff, offset and recoupment rights, has been waived or expunged.

### 6.7.5.  Debtors' and Purchaser's Continued Cooperation

On or after the Effective Date, in accordance with the terms of the Responsible Officer Agreement and Asset Purchase Agreement (as applicable), the Debtors' Responsible Officer and the Purchaser shall provide reasonable and timely cooperation to effectuate the provisions of the Plan as the Creditor Trustee might otherwise reasonably request, including, but not limited to, executing such documents to carry out the terms of the Plan.

### 6.7.6. Creditor Trustee

i.      Retention of Creditor Trustee.  The Creditor Trustee will be a disinterested Person designated by the Committee no later than the January 8, 2016.  The Creditor Trustee shall file with the Bankruptcy Court an affidavit of disinterestedness.  The Creditor Trustee shall carry out the duties as set forth in this Section 6.7.6 and in the Creditor Trust Agreement. Pursuant to Bankruptcy Code § 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Estate Claims in accordance with the best interests of and for the benefit of the Creditor Trust's beneficiaries.  In the event that the Creditor Trustee resigns, is removed, terminated or otherwise unable to serve as the Creditor Trustee, then a successor shall be appointed as set forth in the Creditor Trust Agreement.  Any successor Creditor Trustee appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Creditor Trust Agreement.

ii.      Responsibilities and Authority of Creditor Trustee.  The responsibilities and authority of the Creditor Trustee shall include: (a) establishing  reserves and investing Cash; (b) selling or otherwise liquidating non-Cash assets of the Creditor Trust; (c) retaining and paying professionals as necessary to carry out the purposes of the Creditor Trust; (d) preparing and filing tax returns for the Creditor Trust; (e) preparing and filing reports and other documents necessary to conclude and close these Chapter 11 Cases; (f) objecting to, reconciling, seeking to subordinate, compromising or settling any or all Claims and administering Distributions on account of Claims; (g) evaluating, filing, litigating, settling, or otherwise pursuing any Estate Claims; (h) abandoning any property of the Creditor Trust that cannot be sold or distributed economically; (i) making interim and final distributions of Creditor Trust Assets; (j) winding up the affairs of the Creditor Trust and dissolving it under applicable law; (k) destroying records; and (l) such other responsibilities as may be vested in the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

iii.      Powers of the Creditor Trustee.  The Creditor Trustee shall have the power and authority to perform the acts described in the Creditor Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Creditor Trustee to act as specifically authorized by any other provision of this Plan, the Creditor Trust Agreement, and/or any applicable law, and to act in such manner as the Creditor Trustee may deem necessary or appropriate to take any act deemed appropriate by the Creditor Trustee, including, without limitation, to discharge all obligations assumed by the Creditor Trustee or provided herein and to conserve and protect the Creditor Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.  The Creditor Trustee shall have the power and authority without further approval by the Court to liquidate the Creditor Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Estate Claims, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with § 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Creditor Trust from funds held by the Creditor

Trustee in accordance with this Plan and Creditor Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Creditor Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Estate Claims on behalf of the Creditor Trust without prior Bankruptcy Court approval but in accordance with the Creditor Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Creditor Trustee pursuant to this Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan.  Except as expressly set forth in this Plan and in the Creditor Trust Agreement, the Creditor Trustee, on behalf of the Creditor Trust, shall have absolute discretion to pursue or not to pursue any Estate Claims as it determines is in the best interests of the Creditor Trust's beneficiaries and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  The Creditor Trustee may incur any reasonable and necessary expenses in liquidating and converting the Creditor Trust Assets to Cash.  Subject to the other terms and provisions of this Plan, including but not limited to Section 6.7.8 concerning the Retained Privileges and the releases set forth in Section 11.8 (including the releases of Jeffrey L. Gregg and Tadd Crane), the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Estate Claims and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.  Notwithstanding the preceding sentence or anything else in this Plan to the contrary, consistent with the releases contained in Section 11.8, the Creditor Trustee shall not make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based on any act or failure to act by Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively.

     iv. <u>Enforcement of Any Avoidance Actions and Other Causes of Action</u>.  Pursuant to Bankruptcy Code § 1123(b), the Creditor Trustee, on behalf of and for the benefit of the Creditor Trust's beneficiaries, shall be vested with and shall retain and may enforce any Avoidance Actions and other Estate Claims transferred to the Creditor Trust that were held by, through, or on behalf of the Debtors and/or the Estates against any other Person (except Jeffrey L. Gregg or Tadd Crane), arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Avoidance Actions and other Estate Claims are specifically identified in the Disclosure Statement accompanying this Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.  For the avoidance of doubt, this Plan preserves and transfers to the Creditor Trust all Avoidance Actions that exist as of the Effective Date and that were not transferred to the Purchaser in connection with the Sale.  The recoveries from any Avoidance Actions and other Estate Claims transferred to the Creditor Trust will be deposited into the Creditor Trust and distributed in accordance with the Creditor Trust Agreement and the Plan.

     v. <u>Valuation of Assets</u>.  As soon as practicable after the Effective Date, the Creditor Trustee shall apprise the Creditor Trust's beneficiaries of the estimated

27

value of the Creditor Trust Assets. The valuation shall be used consistently by all parties (including the Creditor Trustee and the Creditor Trust's beneficiaries) for all federal income tax purposes.

vii.    <u>Compensation of Creditor Trustee</u>. The Creditor Trustee shall be compensated as set forth in the Creditor Trust Agreement. The Creditor Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Confirmation Order and the Creditor Trust Agreement. The Creditor Trustee shall not be required to file a fee application to receive compensation.

viii.    <u>Retention and Payment of Professionals</u>. The Creditor Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Creditor Trustee in the performance of his or her duties and compensate such professionals from the Creditor Trust Assets as set forth in the Creditor Trust Agreement.

ix.    <u>Limitation of Liability of the Creditor Trustee</u>. The Creditor Trust shall indemnify the Creditor Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Creditor Trustee or his or her professionals may incur or sustain by reason of being or having been a Creditor Trustee or professionals of the Creditor Trustee for performing any functions incidental to such service; <u>provided</u>, <u>however</u>, the foregoing shall not relieve the Creditor Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

### 6.7.7.  Trust Expenses

The Creditor Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Trust Expenses. All Trust Expenses shall be charged against and paid from the Creditor Trust Assets.

### 6.7.8.  Privileges

Other than the Retained Privileges (defined below), on and subject to the terms of this Plan, all of the Debtors' privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to the Estate Claims, in each instance arising on or after the later of (i) two (2) years prior to the Petition Date and (ii) the applicable statute of limitations governing any such Estate Claim (but in no event more than six (6) years prior to the Petition Date) (the "**Transferred Privileges**"), shall be transferred, assigned and delivered to the Creditor Trust, without waiver, limitation or release, and shall vest with the Creditor Trust on the Effective Date and be jointly held by the Debtors and the Creditor Trust on and after the Effective Date; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to (a) any rights, claims, or causes of action sold to the Purchaser, (b) the preparation, filing or prosecution of these Chapter 11 Cases, (c) any negotiations with the

28

Purchaser, the Committee, the DIP Lender, or the DIP Loan Agent, or (d) any Claims against Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively; provided further, that to the extent any Privileges (other than Retained Privileges) are jointly held by one or more Debtors and a non-Debtor other than the Creditor Trust, such Privileges shall not be considered Transferred Privileges and shall not be transferred, assigned and delivered to the Creditor Trust unless and until the Creditor Trustee obtains written consent from the non-Debtor holder of such joint privilege.

The Creditor Trust and Debtors shall each hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges. No Privilege shall be waived by disclosures to the Creditor Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Debtors and the Creditor Trust.

Notwithstanding the foregoing or anything else in the Plan or otherwise to the contrary, no Privileges other than the Transferred Privileges (all Privileges other than the Transferred Privileges being the "**Retained Privileges**") shall be transferred, assigned or delivered to the Creditor Trust and such Retained Privileges shall not vest with the Creditor Trust. The Creditor Trust shall not hold nor be the beneficiary of any Retained Privileges or entitled in any way to assert any Retained Privileges, which shall be held solely by the Debtors.

The Creditor Trustee shall have until two (2) years after the Effective Date to request documents or information subject to the Transferred Privileges (each an "**Information Request**"); provided, however, that with respect to any action involving Transferred Privileges filed on or before two (2) years after the Effective Date, the Creditor Trustee may make an Information Request subject to the Transferred Privileges involved in such action until the final resolution of such action, including any appeals. The reasonable costs and expenses incurred by the Debtors and/or their chapter 11 counsel, as applicable, in responding to or complying with any Information Requests from the Committee or the Creditor Trustee (the "**Production Costs**") shall be paid, without further order, as follows: (i) the first $25,000 of Production Costs shall be immediately paid from the following sources, if and when available, (A) the Debtors Allocation Payment, (B) the Administrative and Priority Claims Reserve, and (C) any recovery by the Creditor Trust, up to 10% of such recovery, on account of any and all Estate Claims to which the Information Requests relate after the Debtors and/or their chapter 11 counsel, as applicable, provide the Creditor Trustee with a statement setting forth the Production Costs to be reimbursed; and (ii) in all cases, all Production Costs after the first $25,000 shall be paid by the Creditor Trustee from the Creditor Trust Assets promptly, but in no event later than 10 Business Days, following the Debtors and/or their counsel, as applicable, providing the Creditor Trust with the documents or information subject to the Information Requests giving rise to such Production Costs.

To the extent of any conflict between this Section 6.7.8 of the Plan and any other provision of the Plan relating to Privileges, this Section 6.7.8 shall control.

### 6.7.9.    Retention of Documents

The Creditor Trust will retain those documents maintained by the Debtors in the ordinary course of business which were not otherwise transferred to the Purchaser in connection with the

Sale. Following the Effective Date, the Creditor Trustee shall be authorized to destroy any documents it deems necessary or appropriate in its reasonable judgment; provided, however, that the Creditor Trustee shall not destroy any documents, including but not limited to tax documents, that the Creditor Trust is required to retain under applicable law.

### 6.7.10. Termination of Creditor Trust

The Creditor Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Creditor Trust's beneficiaries and the third anniversary of the creation of the Creditor Trust, provided that the Creditor Trustee shall, in its sole discretion, be authorized to extend the dissolution date to the fifth anniversary of the creation of the Creditor Trust with prior Bankruptcy Court approval. If warranted by the facts and circumstances involved in resolving any Estate Claims, upon application to, and if approved by, the Bankruptcy Court upon a finding such further extension is necessary for purposes of resolving such Estate Claims and distributing the proceeds to Creditor Trust's beneficiaries, the term of the Creditor Trust may be further extended by the Creditor Trustee for a specified, finite term. Notwithstanding the foregoing, the Creditor Trust shall be automatically terminated in the event that the Chapter 11 Cases are converted or dismissed.

### 6.7.11. Exculpation Relating to the Creditor Trust

No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any claim or cause of action against the Creditor Trustee, the Creditor Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan or the Creditor Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

### 6.8.    Administrative and Priority Claims Reserve

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors shall turn over to the Creditor Trust the Administrative and Priority Claims Reserve Amount and the Creditor Trustee shall establish the Administrative and Priority Claims Reserve with an authorized depository in the Southern District of New York in the amount of the Administrative and Priority Claims Reserve Amount. Funds in the Administrative and Priority Claims Reserve shall be used by the Creditor Trustee only for the payment of Administrative Expense Claims Allowed after the Effective Date, Compensation and Reimbursement Claims Allowed after the Effective Date (other than the Compensation and Reimbursement Claims of the Committee's Professionals, which Claims shall be funded from the Committee Allocation Payment), Priority Tax Claims Allowed after the Effective Date, Other Priority Claims Allowed after the Effective Date, Secured Tax Claims Allowed after the Effective Date, Other Secured Claims Allowed after the Effective Date, Production Costs (as set forth in Section 6.7.8 hereof), and the fees and expenses of the Debtors and their Professionals permitted under this Plan, to the extent that the foregoing Claims have not been paid in full on or prior to the Effective Date or otherwise in accordance with this Plan. On the date that is the later of (i) 90 days after the Effective Date and (ii) the date the foregoing Claims are resolved by Final Orders entered by the Bankruptcy Court, if and to the extent any funds remain

in the Administrative and Priority Claims Reserve after all of the foregoing Allowed Claims have been paid or otherwise satisfied in full, then such remaining funds shall be distributed to the Creditor Trustee for the benefit of the Creditor Trust and its beneficiaries in accordance with the Plan.

## SECTION 7.  DISTRIBUTIONS

### 7.1.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Debtors or the Creditor Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtors, the Creditor Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under this Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 7.2.    Date of Distributions

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.3.    Postpetition Interest on Claims

Except as may be otherwise expressly provided herein, including in Section 2.4 hereof, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of any such Claim against the Debtors shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

### 7.4.    Disbursing Agent

All Distributions hereunder shall be made by the Debtors, the Creditor Trustee, or their named successor or assign, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  For the avoidance of doubt, (i) the Debtors, or such other entity designated by the Debtors, shall act as Disbursing Agent with respect to all Effective Date Distributions, and (ii) the Creditor Trustee, or such other entity designated by the Creditor Trustee, shall act as Disbursing

Agent with respect to all General Unsecured Claims.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

### 7.5.    Powers of Disbursing Agent

The Disbursing Agent may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (ii) make all Distributions contemplated hereby; and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### 7.6.    Surrender of Instruments

Pursuant to Bankruptcy Code § 1143, as a condition precedent to receiving any Distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Confirmation Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution hereunder.

### 7.7.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees.  If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified, in writing, by the Holder of the current address of such Holder within 90 days of such Distribution, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of 90 days from the Distribution.  After such date, all unclaimed property or interest in property shall revert to the Creditor Trust to be distributed in accordance with the terms of the Creditor Trust Agreement and this Plan, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 7.8.    Manner of Payment

Any Distributions to be made by or on behalf of the Debtors pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtors or the Creditor Trustee, as applicable, or by wire transfer if circumstances justify, at the option of the Debtors or the Creditor Trustee, as applicable.

### 7.9.    Setoffs

The Debtors and the Creditor Trustee, pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court and upon no less than three days' notice to the applicable Holder of a Claim or Interest, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtors may have against the Holder of such Allowed Claim or Interest, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Debtors or the Creditor Trustee of any such claim the Debtors may have against the Holder of such Claim or Interest.

### 7.10.    Minimum Distributions

No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Creditor Trust Agreement.  If the Cash available for the final Distribution is less than $15,000, and the Creditor Trustee, in his or her sole discretion, determines that it would cost more than $5,000 to distribute such funds, the Creditor Trustee may donate such funds to the charity of his or her choice.

### 7.11.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.12.    Distributions Free and Clear

Except as otherwise provided in this Plan, any Distribution or transfer made under this Plan, including, without limitation, Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS

### 8.1.    Allowance of Claims and Interests

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.  On or after the Effective Date,

the Creditor Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### 8.2. Objections to Claims

On and after the Effective Date, the Debtors, solely with respect to Claims other than General Unsecured Claims, and the Creditor Trustee, with respect to all Claims and Interests, shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests, including Claims listed on the Debtors' Schedules, under this Plan, or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) 180 days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object. All fees and expenses of the Debtors and their professionals incurred on and after the Effective Date in connection with the filing and prosecuting of objections to Claims (other than General Unsecured Claims) in accordance with this Section 8.2 shall be paid from the Debtors Allocation Payment as set forth in Section 6.2.3 of this Plan, the Administrative and Priority Claims Reserve as set forth in Section 6.8 of this Plan, or otherwise in accordance with the Final Orders entered in the Chapter 11 Cases.

### 8.3. Estimation of Claims

Before the Effective Date, the Debtors and Committee, and, on or after the Effective Date, the Creditor Trustee, may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim. Before the Effective Date, the Debtors, and, on or after the Effective Date, the Creditor Trustee, are further authorized to file a Proof of Claim or Interest as provided under § 501(c) of the Bankruptcy Code.

### 8.4. Distributions Relating to Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims in the same Class.

### 8.5. Distributions after Allowance

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

### 8.6. Preservations of Rights to Settle Claims

Except as otherwise expressly provided herein, including in Section 11.8 of this Plan, nothing contained in this Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have or which the Creditor Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates. This Section shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under this Plan or pursuant to a Final Order, expressly including the Sale Order.  Except as expressly provided in this Plan, nothing contained in this Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense.  No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Creditor Trustee, as applicable, will not pursue any and all available causes of action against them. The Debtors and the Creditor Trustee expressly reserve all rights to prosecute any and all causes of action against any Person or Entity, except as otherwise expressly provided in this Plan.

### 8.7. Disallowed Claims

All Claims held by Persons or Entities against whom or which any Debtor has commenced a proceeding asserting a cause of action under §§ 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under § 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed Claims pursuant to § 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan.  Claims deemed disallowed pursuant to this Section 8.7 shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Creditor Trustee from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1. General Treatment

All executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected as of the Effective Date except for an executory contract or unexpired lease that

(i) previously has been assumed pursuant to Final Order of the Bankruptcy Court; (ii) is specifically designated as an executory contract or unexpired lease to be assumed in this Plan or in any Plan Supplement; or (iii) is the subject of a separate assumption notice or other motion filed by the Debtors under § 365 of the Bankruptcy Code prior to the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to this Plan or otherwise shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person or Entity.

### 9.2.    Rejection Damages Claims

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in a Rejection Damages Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Damages Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Creditor Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Creditor Trustee on or before the date that is 30 days after the Effective Date or such later rejection date that occurs in accordance with Section 9.4 herein. All Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to the terms of this Plan.

### 9.3.    Insurance Policies

To the extent that any and all of the Debtors' insurance policies that were not transferred to the Purchaser pursuant to the Asset Purchase Agreement, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies, shall be deemed assumed and assigned to the Creditor Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract and was not transferred to the Purchaser pursuant to the Asset Purchase Agreement, and all rights under any other insurance policies that were not transferred to the Purchaser pursuant to the Asset Purchase Agreement and under which the Debtors may be beneficiaries, shall be preserved and shall vest with the Creditor Trust and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such insurance policies. Further, for the avoidance of any doubt, the Creditor Trustee may bring or assert Estate Claims under the any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as insolvency trustees, receivers, examiners,

36

conservators, liquidators, rehabilitators or similar officials, as those terms are used in the policies. Notwithstanding the preceding sentence or anything else in this Plan to the contrary, consistent with the releases contained in Section 11.8, the Creditor Trustee shall not make a claim under any insurance policies, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, based on any act or failure to act by Jeffrey L. Gregg or Tadd Crane, individually or as Chief Restructuring Officer and Responsible Officer, respectively.

### 9.4.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in this Plan or Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Creditor Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, provided that, notwithstanding anything to the contrary herein, any such dispute shall be resolved prior to the Confirmation Date.

## SECTION 10.        CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 10.1.    Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

    (i)        the Confirmation Order in form and substance satisfactory to the Debtors and Committee shall have been entered by the Bankruptcy Court and shall be a Final Order;

    (ii)       all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement any Plan Transactions, shall have been effected or executed;

    (iii)      the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions; and

    (iv)      there shall have been no modification or stay of the Confirmation Order or entry of other court order prohibiting transactions contemplated by the Plan from being consummated.

### 10.2.    Waiver of Conditions

Unless otherwise specifically provided in this Plan, the conditions set forth in Section 10.1 of this Plan may be waived in whole or in part by the Debtors, in consultation with the Committee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 10.3. Effect of Failure of Conditions

If the conditions precedent specified in Section 10.1 hereof have not been satisfied or waived by the Debtors within 120 days after the Confirmation Date, which period may be extended by the Debtors with the consent of the Committee, then (i) the Confirmation Order shall be vacated; (ii) no Distributions under this Plan shall be made; (iii) the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any other Person or Entity in any further proceedings involving the Debtors or otherwise.

Notwithstanding the foregoing, in the event conditions precedent specified in Section 10.1 hereof have not been satisfied or waived, the Committee's counsel shall be permitted to continue holding the Committee Allocation Payment in escrow, which shall be used to (i) satisfy the allowed fees and expenses of the Committee's Professionals incurred through the dismissal or conversion of these Chapter 11 Cases; and (ii) effectuate and fund distributions to Holders of General Unsecured Claims through a structured dismissal or another mechanism to be proposed by the Committee.

Additionally, notwithstanding the foregoing, in the event conditions precedent specified in Section 10.1 hereof have not been satisfied or waived, the Debtors' chapter 11 counsel shall be permitted to continue holding the Debtors Allocation Payment in escrow, which shall be used to (i) satisfy the allowed fees and expenses of the Debtors' Professionals incurred through the dismissal or conversion of these Chapter 11 Cases; and (ii) effectuate and fund distributions to Holders of General Unsecured Claims through a structured dismissal or another mechanism to be proposed by the Committee.

## SECTION 11.        EFFECT OF CONFIRMATION

### 11.1. Effect of Failure of Conditions

On the Effective Date, except as otherwise provided in this Plan, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, subject to the rights and interests of the Creditor Trust's beneficiaries.

### 11.2. Binding Effect

On the Effective Date, and effective as of the Effective Date, this Plan shall be binding upon the Debtors, the Committee, and all present and former Holders of Claims against and Interests in any Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Plan.

### 11.3. Discharge of Claims and Termination of Interests

To the fullest extent provided under § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Estates, the Debtors, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Plan. This Plan is a liquidating plan and, as provided in § 1141(d)(3) of the Bankruptcy Code, the confirmation of a plan does not discharge a debtor if the plan provides for the liquidation of all or substantially all of the property of the estate.

### 11.4.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

After the Effective Date, the Creditor Trustee, on behalf of the Debtors, may, and shall have the exclusive right to, compromise and settle any Claims and any Estate Claims against any other Person or Entity without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtors as of the Effective Date.

### 11.5.    Injunction

**Except as otherwise expressly provided in this Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the**

39

**enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors or the Creditor Trust on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are retained pursuant to this Plan. Such injunction shall extend to successors of the Debtors, including, without limitation, the Creditor Trust and its properties and interests in property.**

### 11.6.    Term of Injunction or Stays

Except as otherwise provided in this Plan, to the extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan, (a) all injunctions with respect to or stays against an action against property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under §§ 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtors' Estates; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under §§ 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.

### 11.7.    Injunction Against Interference with Plan

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtors, the Creditor Trust, the Creditor Trustee, and their respective affiliates, employees, advisors, officers and directors, agents, and other Related Persons.

### 11.8.    Debtor Releases

**EXCEPT AS OTHERWISE PROVIDED FOR IN THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE DEBTORS (ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE ESTATES), AS APPLICABLE, SHALL BE DEEMED TO HAVE RELEASED EACH OF (I) THEIR CHIEF RESTRUCTURING OFFICER; (II) THEIR RESPONSIBLE OFFICER; (III) THE COMMITTEE AND MEMBERS OF THE COMMITTEE IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE; (IV) THE DIP LENDER AND THE DIP LOAN AGENT AND THEIR RELATED PERSONS; AND (V) THE PROFESSIONALS AND THEIR RELATED PERSONS FROM ANY AND ALL CLAIMS, CAUSES OF ACTIONS, AND OTHER LIABILITIES ARISING DURING THESE CHAPTER 11 CASES BEFORE THE EFFECTIVE DATE FROM ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THESE**

CHAPTER 11 CASES AND RELATED PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, FILING OF THESE CHAPTER 11 CASES, ADMINISTRATION OF THESE CHAPTER 11 CASES, THE SALE, FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, APPROVAL, EXECUTION, ADMINISTRATION, CONFIRMATION, IMPLEMENTATION, OR CONSUMMATION OF, AS WELL AS THE SOLICITATION OF VOTES FOR, THE PLAN (INCLUDING ALL DISTRIBUTIONS THEREUNDER), THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE DEBTORS (ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE ESTATES) SHALL NOT BE DEEMED TO HAVE RELEASED ANY SUCH ENTITY FROM LIABILITY FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

ADDITIONALLY, ON THE EFFECTIVE DATE, JEFFREY L. GREGG AND TADD CRANE SHALL BE RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AVOIDANCE ACTIONS AND LIABILITIES WHICH THE DEBTORS OR THE CREDITOR TRUSTEE MAY OTHERWISE BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR THEREAFTER ARISING, BASED IN WHOLE OR IN PART UPON ANY, ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NEITHER JEFFREY L. GREGG NOR TADD CRANE SHALL BE RELEASED FROM ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES BASED UPON GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

11.9.    Releases by Holders of Claims and Interests

EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTORS (WHETHER OR NOT ALLOWED), AND EACH PERSON OR ENTITY PARTICIPATING IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THIS PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST THE (I) DEBTORS; (II) THEIR CHIEF RESTRUCTURING OFFICER; (III) THEIR RESPONSIBLE OFFICER; (IV) THE COMMITTEE AND MEMBERS OF THE COMMITTEE IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE; (V) THE DIP LENDER AND THE DIP LOAN AGENT AND THEIR RELATED PERSONS; AND (VI) THE PROFESSIONALS AND THEIR RELATED PERSONS ARISING PRIOR TO THE EFFECTIVE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.

FURTHER, NOTHING IN THIS PLAN SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL

**LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY, NOR SHALL ANYTHING IN THIS PLAN ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDING AGAINST THE PARTIES REFERRED TO HEREIN FOR ANY LIABILITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY, NOR SHALL ANYTHING IN THIS PLAN EXCULPATE ANY PARTY FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY FOR LIABILITIES ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE PARTIES REFERRED TO HEREIN.**

### 11.10.  Exculpation

**Except as otherwise provided for in the Plan, none of (i) the Debtors, their Chief Restructuring Officer and Responsible Officer; (ii) the Committee and members of the Committee in their capacity as members of the Committee; (iii) the Creditor Trust and Creditor Trustee; or (iv) Professionals shall have or incur any liability to any Holder of any Claim or Interest, or any other Entity, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases and related proceedings, including, but not limited to, filing of the Chapter 11 Cases, administration of the Chapter 11 Cases, the Sale, formulation, negotiation, preparation, dissemination, approval, execution, administration, confirmation, implementation, or consummation of, as well as the solicitation of votes for, the Plan (including all Distributions thereunder), the Disclosure Statement, or the Plan Supplement; <u>except</u> for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice; and, in all respects, the Debtors, the Committee and its members, the Creditor Trust, the Creditor Trustee, and each of their respective members, officers, directors, employees, advisors, professionals, attorneys, agents, and other Related Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

### 11.11.  Release of Liens

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged.

### 11.12.  Dissolution of Committee

On the first (1st) Business Date following the Effective Date, and provided that the Creditor Trust has become effective pursuant to the Plan, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with Bankruptcy Code § 1103 will be released and discharged from their respective fiduciary

obligations, duties, and responsibilities arising from or related to the Chapter 11 Cases, except with respect to (i) prosecuting applications for professionals' compensation or reimbursement of expenses incurred as a member of the Committee; (ii) asserting, disputing and participating in the resolution of Compensation and Reimbursement Claims; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.  Upon the conclusion of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged.  The Professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the first (1st) Business Day on behalf of the Committee following the Effective Date, except for services rendered and expenses incurred, as approved by the Court, in connection with (i) prosecuting applications for professionals' compensation; (ii) asserting, disputing and participating in the resolution of Compensation and Reimbursement Claims or reimbursement of expenses incurred as a member of the Committee; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

## SECTION 12.      RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(i)      to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(ii)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date by the Debtors, Committee or Creditor Trustee;

(iii)    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(iv)     to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(v)      to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(vi)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(vii)    to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of

43

the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(viii)    to hear and determine all applications under §§ 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(ix)    to hear and determine all requests for payment of Administrative Expense Claims;

(x)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(xi)    to hear, determine and adjudicate any litigation involving the Estate Claims;

(xii)    to consider requests for extensions of the term of the Creditor Trust as provided in the Plan;

(xiii)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(xiv)    to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve, personal injury, employment litigation, and similar claims pursuant to § 105(a) of the Bankruptcy Code;

(xv)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xvi)    to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under § 505(b) of the Bankruptcy Code);

(xvii)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(xviii)    to enter a final decree closing the Chapter 11 Cases;

(xix)    to recover all assets of the Debtors and property of the Debtors' wherever located; and

(xx)    to hear and determine any rights, claims, or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

**SECTION 13.         MISCELLANEOUS PROVISIONS**

### 13.1.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930 and any applicable interest thereon that are due and payable as of the Effective Date shall be paid by the Debtors on the Effective Date or as soon thereafter as is reasonably practicable from the Plan Funding.  All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Creditor Trustee from the Creditor Trust Assets when such fees become due and payable.  All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Cases or conversion or dismissal of the Chapter 11 Cases, whichever is earlier.

### 13.2.    Substantial Consummation

This Plan shall be deemed to be substantially consummated within the meaning of § 1101 and pursuant to § 1127(b) of the Bankruptcy Code upon the commencement of Effective Date Distributions to be made under this Plan on the Effective Date.

### 13.3.    Operations between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as Debtors in Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.  After the Effective Date, the Creditor Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the 15th day of January, April, July, and October as appropriate, and in accordance with the provisions of Rule 3021-1 of the Local Bankruptcy Rules, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

### 13.4.    Tax Treatment of the Creditor Trust

The Creditor Trust is intended to qualify as a Creditor Trust for U.S. federal income tax purposes that will be treated as a pass-through entity.  All parties must treat the transfer of the Creditor Trust Assets to the Creditor Trust as a transfer of such assets directly to the beneficiaries of the Creditor Trust, followed by the transfer of such assets by each beneficiary to the Creditor Trust.  Consistent therewith, all parties must treat the Creditor Trust as a grantor trust of which the Creditor Trust's beneficiaries are the owners and grantors.  Assuming the Creditor Trust is treated as a Creditor Trust, the beneficiaries of Creditor Trust generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Creditor Trust Assets. The Creditor Trustee will determine the fair market value of the Creditor Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

### 13.5.    Determination of Tax Liabilities

The Debtors through the Responsible Officer shall, pursuant to § 505(b) of the Bankruptcy Code, have the right to request an expedited determination of any unpaid liability of the Debtors' Estates for any tax incurred during the administration of the Chapter 11 Cases. As of the Effective Date, the Responsible Officer will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates; provided, however, that the Responsible Officer shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be canceled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.

### 13.6.    Amendments

### 13.6.1. Modifications to Plan and Plan Supplement

This Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Debtors in the manner provided for by § 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to § 1125 of the Bankruptcy Code, provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Plan or the Plan Supplement. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Supplement, or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

### 13.6.2. Other Amendments

The Debtors may make appropriate technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 13.7.    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date. Any such action may only be taken if it is in the exercise of the Debtors' fiduciary duty to their creditors. If the Debtors take such action, this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

### 13.8.    Continuing Exclusivity of Debtors' Right to Propose Plan

The Debtors are currently operating within the exclusivity period under Bankruptcy Code § 1121. Accordingly, the Debtors retain, and the Debtors have, the exclusive right to amend or modify this Plan and to solicit acceptances of such amended or modified Plan.

### 13.9.    Severability

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request

of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.10.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 13.11.  Time

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.12.  Binding Effect of Plan

Upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Committee, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests failed to vote to accept or reject this Plan, voted to accept or reject this Plan, or are deemed to accept or reject this Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, and injunctions described in this Plan, each Person or Entity acquiring or retaining property under this Plan, and any and all non-Debtor parties to executory contracts and unexpired lease with the Debtors.

### 13.13.  Entire Agreement

On the Effective Date, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 13.14.  Section 1125(e) Good Faith Compliance

The Debtors and each of their respective Related Persons shall be deemed to have acted in good faith under § 1125(e) of the Bankruptcy Code.

### 13.15.  Notices

All notices, requests, and demands to or upon the Debtors or the Committee in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

(i)      If to the Debtors, to:

Venable LLP
1270 Avenue of the Americas
New York, New York 10020
Attn:   Rishi Kapoor
Telephone:     (212) 307-5500
Facsimile:     (212) 307-5598


with a copy to:

Venable LLP
575 7th Street, NW
Washington, DC 20004
Attn:   Andrew J. Currie
Telephone:     (202) 344-4586
Facsimile:     (202) 344-8300

(ii)     If to the Committee or the Creditor Trust, to:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Attn:   Robert M. Hirsh
            George Angelich
            Jordana Renert
Telephone:     (212) 457-5430
Facsimile:     (212) 484-3990

Dated: December 15, 2015
       New York, New York

                          Respectfully submitted,

                          Advance Watch Company, Ltd.

                          By: _____ */s/ Jeffrey L. Gregg*_____
                                Jeffrey L. Gregg
                                Chief Restructuring Officer

                          Binda USA Holdings, Inc.

                          By: _____ */s/ Jeffrey L. Gregg*_____
                                  Jeffrey L. Gregg
                                Chief Restructuring Officer

                          Sunburst Products, Inc.

                          By: _____ */s/ Jeffrey L. Gregg*_____
                                  Jeffrey L. Gregg
                                Chief Restructuring Officer

                          GWG International, Ltd.

                          By: _____ */s/ Jeffrey L. Gregg*_____
                                  Jeffrey L. Gregg
                                Chief Restructuring Officer

**<u>EXHIBIT B</u>**
**Liquidation Analysis**

Advance Watch Co. Ltd.

**Hypothetical Chapter 7 Liquidation Analysis as of 9/30/2015**

| | Book Values as of 9/30 | Estimated Recovery % Lower | Higher | | Total Estimated Recovery Lower | | Higher |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| Current Assets | | | | | | | |
| Cash | $  392,181 | 100.0% | 100.0% | $  392,181 | $  392,181 | | |
| Accounts Receivable | 9,262,097 | 43.2% | 63.2% | 4,003,177 | 5,855,504 | | |
| Gross Inventory | 15,150,770 | 59.1% | 69.0% | 8,948,732 | 10,448,732 | | |
| Inventory Reserve | (849,173) | | | - | - | | |
| Net Inventory | 14,301,597 | 62.6% | 73.1% | 8,948,732 | 10,448,732 | | |
| Other Current Assets | 2,333,484 | 0.0% | 1.0% | - | 22,780 | | |
| **Total Current Assets** | 26,289,360 | | | 13,344,091 | 16,719,198 | | |
| PP&E | 13,200,809 | | | | | | |
| Accumulated Depreciation | (5,681,305) | | | | | | |
| Total PP&E | 7,519,504 | 1.3% | 1.3% | 97,807 | 97,807 | | |
| Other Long Term Assets | 205,683 | 0.0% | 0.0% | - | - | | |
| **Total Assets** | $  34,014,546 | | | $  13,441,898 | $  16,817,005 | | |
| **Costs to Liquidate** | | | | | | | |
| Accrued Salaies, Wages and Commissions | $  (311,425) | | | $  (311,425) | $  (311,425) | | |
| Inventory Liquidation Costs | | | | (1,847,000) | (1,847,000) | | |
| Acct. Rec. Collections Costs | | | | (490,279) | (675,512) | | |
| Operating Costs | | | | (3,768,540) | (3,843,540) | | |
| **Total Proceeds before Admin Expenses** | | | | $  7,024,653.3 | $  10,139,527.6 | | |
| Admin Costs | | | | $  (765,739.6) | $  (859,185.8) | | |
| **Total Proceeds** | | | | $  6,258,913.7 | $  9,280,341.8 | | |

**Hypothetical Chapter 7 Liquidation Proceeds**

| | | Mid Point | | | 363 Sale Proceeds 11/17/2015 | |
|---|---|---|---|---|---|---|
| Proceeds | | $  7,769,628 | | | $  15,000,000 | |
| Less Senior Lender Claim | | $  (13,359,095) | | | $  (15,175,000) | |
| | | $  (5,589,467) | | | $  (175,000) | |
| Senior Lender Claim | A | $  13,359,095 | | | $  15,175,000 | |
| % Recovery on Senior Debt | | 58% | | | 99% | |
| Settlement with UCC | | $  - | | B | $  350,000 | |
| Cure Proceeds | | $  - | | C | $  2,600,000 | |
| | | $  - | | | $  2,950,000 | |
| Unsecured Claims | D | $  63,982,095 | | D | $  63,982,095 | |
| % Recovery on Unsecured Creditors | | 0% | | | 5% | |

*Notes:*
*A - Includes Doc. LC and Standby LC $1,821,235.56*
*B - Assumed distribution from $725,000 Committee Allocation Payment*
*C - Per APA, Assumed Liabilities and Cures*
*D - Unsecured claims includes non-debtor foreign affiliate claims*
*The Debtor reserves all its rights and is not opining on any estimates represented in this analysis.*

## **EXHIBIT C**
### **The Budget**

**Exhibit C**
**Funded Plan Payment**

| | Projected | Actual Wk 1 11/20/2015 | Actual Wk 2 11/27/2015 | Proposed Wk 3 12/4/2015 | Balance | Notes |
|---|---|---|---|---|---|---|
| *(i) Allowed Administrative Expense Claims* | | | | | | |
| Venable - Debtor Allocation Payment | 500,500 | | | | 500,500 | A, B |
| 503(b) 9 Claims | 25,000 | | | | 25,000 | |
| Chief Restructuring Officer | (50,000) | | | | (50,000) | A |
| Otterbourg | 200,000 | 200,000 | | | - | |
| Imperial Capital | 390,130 | | | | 390,130 | A |
| Claims Agent | 120,000 | | | | 120,000 | |
| Trustee Fees | 25,000 | | | | 25,000 | |
| Responsible Officer | 32,000 | | | | 32,000 | |
| *Subtotal - Restructuring* | *1,242,630* | *200,000* | *-* | *-* | *1,042,630* | |
| | | | | | | |
| *Post-petition Operating Expenses - Admin Claims* | *1,313,953* | *400,816* | *52,753* | *249,644* | *610,740* | |
| | | | | | | |
| *(ii) Allowed Priority Claims* | | | | | | |
| Shippers/ Utility/Tax/Admin Claims | **100,000** | | | | 100,000 | |
| *Total* | *100,000* | *-* | *-* | *-* | *100,000* | |
| | | | | | | |
| *(iii) Committee Allocation Payment* | | | | | | |
| UCC - Allocation Payment | **725,000** | | | | 725,000 | |
| Additional Funds | | | | | | |
| *Total Funded Plan Payments* | *3,381,583* | *600,816* | *52,753* | *249,644* | *2,478,370* | |

**Notes**
**A**    Exclusive of the application of retainers
**B**    $1.05mm total fees per bankruptcy court approved DIP budget.
The above numbers represent the Debtor's best estimate of the total allowable Administrative and Priority Claims that have not been paid.
The actual amount due to be paid prior to the comfimation of the Plan may be different.